UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
Huntington Division

**CASIE JO MCGEE and SARAH
ELIZABETH ADKINS; JUSTIN
MURDOCK and WILLIAM GLAVARIS;
and NANCY ELIZABETH MICHAEL and
JANE LOUISE FENTON,**
individually and as next friends of A.S.M.,
minor child,

    **Plaintiffs,**

v.                                                               Civil Action No. 3:13-CV-24068
                                                                                          Honorable Robert Chambers

**KAREN S. COLE, in her official capacity as
CABELL COUNTY CLERK; and VERA J.
MCCORMICK, in her official capacity as
KANAWHA COUNTY CLERK,**

    **Defendants.**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VERA J. MCCORMICK'S
<u>MOTION TO DISMISS</u>**

**COMES NOW**, the Defendant Vera J. McCormick, in her official capacity as Kanawha County Clerk, by counsel, Bailey & Wyant, PLLC, Charles R. Bailey and Michael W. Taylor, pursuant to Rules 12(b)(1) and (6) of *Federal Rules of Civil Procedure*, and hereby submits the following memorandum of law in support of her Motion to Dismiss. In support thereof, Defendant McCormick states as follows:

                             **I.     FACTUAL BACKGROUND**

The Clerk of the County Commission, in accordance with the provisions of Chapter 48 of the *West Virginia Code*, is the sole official in each county who is authorized to issue a marriage license to applicants. *West Virginia Code* § 48-2-101. In order to issue a marriage license, *West Virginia*

*Code* §§ 48-2-104; 48-2-105; and 48-2-106 regulate the contents and requirements in order for a couple to successfully apply for a marriage license. Once the application requirements are met, the Clerk of the County Commission has no discretion as to the next step, as the Clerk "shall record the application . . ." and issue a license to marry. *West Virginia Code* § 48-2-107. Should a Clerk of the County Commission knowingly issue a marriage license contrary to law, the Clerk for the County Commission is guilty of a misdemeanor and is subject to a fine of no more than $500 and/or be confined to jail for not more than six months. *West Virginia Code* § 48-2-502.

In this instance, Plaintiffs' Nancy Michael and Jane Fenton assert that they went to the Clerk of the County Commission for Kanawha County, West Virginia. *See* Compl. at ¶ 24. Jointly, as a same-sex couple, these Plaintiffs requested an application for marriage. *See* Compl. at ¶ 24. These Plaintiffs, under the law of this State, could not successfully meet the requirements to be issued a license to marry and if Defendant McCormick issued a marriage license, she would be guilty of a misdemeanor. It is important to note that Defendant McCormick is employed by Kanawha County, West Virginia and not the State of West Virginia. *See* Compl. at ¶ 19. Moreover, as a county employee, Defendant McCormick did not pass or otherwise create the challenged marriage statutes, as these statutes were passed by the *West Virginia Legislature*. Finally, the Complaint is devoid of any factual allegations wherein Kanawha County, West Virginia has passed, declared or issued any ordinances, statutes or codes related to defining marriage as between a man and a woman.

## II. ARGUMENT

### A. THIS COURT SHOULD ABSTAIN FROM ISSUING A RULING ON THIS MATTER AT THIS TIME

The determination of whether *West Virginia Code* §§ 48-2-104; 48-2-401; and 48-2-603 violates the Equal Protection Clause contained in the *United States Constitution* is an issue of first

impression in West Virginia. Because of such, this Court must presently decline jurisdiction over this matter under the doctrine of abstention and comity. The United States Supreme Court has recognized and described comity as:

> a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Younger v. Harris*, 401 U.S. 37, 44 (U.S. 1971). In addition, while the Federal Government is not expected to give blind deference to States' rights, the concept:

> does represent [a] system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Id.* (emphasis added).[1]

Arising out of this principle of comity is the doctrine of abstention. While the United States Supreme Court has recognized a number of abstention doctrines, such as the *Pullman* doctrine and *Rooker-Feldman* doctrine, applicable to the case at bar is the *Burford* abstention doctrine. The *Burford* abstention doctrine allows a federal court to decline to exercise jurisdiction over a matter when the case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar or whose adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *First Penn-Pacific Life Ins. Co. v. William R. Evans, Chtd.*, 304 F.3d 345, 348 (4th Cir. 2002) (internal quotations omitted) (citing *New Orleans Pub. Serv., Inc.*

---

1 The language from *Younger* is referenced only for context as to the development of the doctrine of comity and not as the basis for dismissal. The United States Supreme Court has held that the doctrine announced in *Younger* is not applicable when there is no state court proceeding currently pending. *Ankenbrandt v. Richards,* 504 U.S. 689, 705 (U.S. 1992). However, the *Burford* doctrine has been applied when there is no state court proceeding concurrently pending.

3

*v. Council of New Orleans*, 491 U.S. 350, 361 (1989)).

With respect to domestic relations, it has long been recognized that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Ankenbrandt v. Richards*, 504 U.S. 689, 710 (1992) (Blackmun, J., concurring). Because of such, the United States Supreme Court indicated that the *Burford* abstention doctrine may be relevant and applicable in domestic relations cases, even when the parties are not seeking a divorce, alimony or child custody. *Id.* at 705-706. The Court reasoned that, under *Burford*, "[t]his would be so when a case presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Id.* (internal quotations and citations omitted).

Here, Plaintiffs' Complaint presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar." *See First Penn-Pacific Life Ins. Co.*, 304 F.3d at 348. First, there is no dispute that this matter involves questions of State law, as Plaintiffs' Complaint challenges specific statues passed by the West Virginia Legislature. *See e.g.* Compl. at "Prayer for Relief" ¶ A. Moreover, the policies regulating marriage in this State is of substantial public import. Specifically, in discussing the importance of marriage in the State, the Supreme Court of Appeals of West Virginia stated, "[m]arriage is a relation in which the public is deeply interested and is subject to proper regulation and control by the state or sovereignty in which it is assumed or exists." *Persinger v. Persinger*, 56 S.E.2d 110, 112 (W.Va. 1949). The Court further stated, "[t]he State has a vital interest in matters surrounding a marriage and for this reason has the right to enact laws governing marriage." *State v. Austin*, 234 S.E.2d 657, 662-663 (W.Va. 1977). As a result, the policies regulating marriage in this State is of

---

*See e.g. Dunn v. Cometa*, 238 F.3d 38, 42 (1st Cir. 2001).

substantial public import. Finally, the effect of a determination by this Court regarding the relief sought by Plaintiffs will impact persons who are not parties to this suit. Specifically, each and every County Clerk will be impacted by this decision, as well as each and every same-sex couple seeking to marry in this State. Because this matter presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar", under *Burford*, it is appropriate for this Court to decline to exercise jurisdiction over this matter.

In addition, Plaintiffs' Complaint requests "adjudication in a federal forum [that] would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *See First Penn-Pacific Life Ins. Co.*, 304 F.3d at 348. First, there is no dispute that Plaintiffs' Complaint seeks adjudication in a federal forum. Next, adjudication by this Court will disrupt efforts within this State to establish a coherent policy. As it stands now, certain statutes were legally passed defining marriage to be between a man and a woman. These statutes have been in effect since at least 2001. Since that date, efforts have been made to extend certain marital rights to same-sex couples, as well as an effort to pass a constitutional amendment defining marriage. *See e.g.* "House Bill 4569", introduced February 16, 2010, attached hereto as "Exhibit A"; *see also* "Senate Joint Resolution No. 2", introduced January 11, 2012, attached hereto as "Exhibit B." There is no dispute, therefore, that this State is attempting to establish a coherent policy with respect to this issue and intervention by a federal court, at this juncture, will disrupt said efforts to establish a coherent policy regarding the definition of marriage in this State. Finally, as previously discussed, the regulation of marriage in this State is one of importance to the State, as laws regarding marriage are created by the State and not the United States. Because of such, under *Burford*, it is appropriate for this Court to decline to exercise jurisdiction over this matter.

Finally, bolstering Defendant McCormick's position of abstention is the United States

Supreme Court decision in *Baker v. Nelson*. In *Baker*, the Supreme Court of Minnesota was faced with the issue of whether a state statute defining marriage to exclude same-sex couples offended the First, Eighth, Ninth and/or Fourteenth Amendments to the United States Constitution. *See Baker v. Nelson*, 191 N.W.2d 185, 185 (Minn. 1971). The Supreme Court of Minnesota held that said statutes do not offend the First, Eighth, Ninth and/or Fourteenth Amendments to the United States Constitution. *See id.* at 187. This decision was appealed to the United States Supreme Court, which dismissed the appeal for "want of substantial federal question[]", despite the fact that the decision of the Supreme Court of Minnesota interpreted the United States Constitution. *Baker v. Nelson*, 409 U.S. 810 (1972). Clearly, the United States Supreme Court believed that issues related to the definition of marriage "belong" to the State and did not wish to impose federal jurisdiction over such an issue belonging to the State. In light of the Supreme Court's decision to decline jurisdiction, this Court should act similarly and decline jurisdiction over this matter.

In sum, matters regarding domestic relations are an area where a federal court, under *Burford*, may decline to exercise jurisdiction. As this is a matter of first impression and adjudication by this Court will have far reaching consequences beyond the case at bar, involves a matter of substantial public import, involves an area of the law that is specifically controlled and regulated by the State and will disrupt the efforts to create a coherent policy regarding the definition of marriage, abstention is appropriate by this Court to allow the State to first deal with this issue through the legislative process, particularly in light of the upcoming legislative session. Therefore, Defendant McCormick prays this Court will presently decline to exercise jurisdiction over this matter.

**B.    PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

Defendant McCormick raises, so as not to waive, the defense that Plaintiffs' Complaint for

Declaratory and Injunctive Relief fails to state a claim upon which relief may be granted. Specifically, Defendant McCormick asserts that *West Virginia Code* §§ 48-2-104; 48-2-401; and 48-2-603 are not unconstitutional, as they are rationally related to a legitimate government interest. Moreover, as these statutes were passed through lawful and appropriate legislative process, these statutes are presumptively constitutional. *See e.g. N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 17 (U.S. 1988) ("Legislative classifications, however, are presumed to be constitutional, and the burden of showing a statute to be unconstitutional is on the challenging party, *not* on the party defending the statute . . . .") (emphasis in original)). As there is no controlling case law which would otherwise invalidate these State-enacted statutes[2], Plaintiffs do not have a claim for which relief may be granted.

Being that the Court has indicated that it "expects to convene a scheduling conference to discuss a common briefing schedule" and the constitutionality of *West Virginia Code* §§ 48-2-104; 48-2-401; and 48-2-603 will be the subject of the briefing scheduling, as this is the legal issue before the Court, Defendant McCormick will further address this matter pursuant to the briefing scheduling, should the Court decline to dismiss this matter under the doctrine of abstention.

## IV.     CONCLUSION

This Court should abstain from ruling on this matter of first impression, as the matters related to domestic relations "belong" to the State. The State of West Virginia, through its legislative process, is attempting to establish a coherent policy with respect to same-sex marriages and must be given an opportunity to do so under the *Burford* doctrine. Because of such, it is appropriate for this Court to decline to exercise jurisdiction over this matter and Defendant McCormick prays this Court

---

[2] The recent decision of *United States v. Windsor* is not binding, as that case involved the federal government's limited authority in the area of domestic relations and the Opinion specifically confined its holding to that issue. *United States v. Windsor*, 133 S. Ct. 2675, 2696 (U.S. 2013) ("This opinion and its holding are confined to those lawful marriages.").

will presently abstain from ruling on this issue, particularly in light the upcoming legislative session.

**WHEREFORE**, based upon the foregoing, Defendant McCormick prays this Court will enter an Order dismissing Defendant McCormick from this matter, under the doctrine of abstention, as well as grant her all other relief deemed just and proper.

                                                  **VERA J. MCCORMICK,**
                                                  **By Counsel,**

 **/s/ Charles R. Bailey**
**Charles R. Bailey (WV Bar #0202)**
**Michael W. Taylor (WV Bar #11715)**
**BAILEY & WYANT, PLLC**
**500 Virginia Street, East, Suite 600**
**Post Office Box 3710**
**Charleston, West Virginia 25337-3710**
**T: 304.345.4222**
**F: 304.343.3133**
cbailey@baileywyant.com
mtaylor@baileywyant.com

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
Huntington Division

**CASIE JO MCGEE and SARAH**
**ELIZABETH ADKINS; JUSTIN**
**MURDOCK and WILLIAM GLAVARIS;**
**and NANCY ELIZABETH MICHAEL and**
**JANE LOUISE FENTON,**
individually and as next friends of A.S.M.,
minor child,

    Plaintiffs,

v.                                                  Civil Action No. 3:13-CV-24068
                                                      Honorable Robert Chambers

**KAREN S. COLE, in her official capacity as**
**CABELL COUNTY CLERK; and VERA J.**
**MCCORMICK, in her official capacity as**
**KANAWHA COUNTY CLERK,**

    Defendants.

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of foregoing "MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VERA J. MCCORMICK'S MOTION TO DISMISS" was served upon the following parties through the Court's Electronic Case Filing (ECF) system on this day, November 26, 2013:

Camilla B. Taylor, Esq.
Lambda Legal Defense and Education Fund, Inc.
105 West Adams, 26th Floor
Chicago, IL  60603-6208
Email Address: ctaylor@lambdalegal.org
Attorney For: Plaintiffs

Elizabeth L. Littrell, Esq.
Lambda Legal Defense and Education Fund, Inc.
730 Peachtree Street, N.E.
Suite 1070
Atlanta, GA  30308-1210
Email Address: blittrell@lambdalegal.org
Attorney For: Plaintiffs

John H. Tinney, Jr.
Heather D. Foster Kittredge, Esq.
The Tinney Law Firm, PLLC
707 Virginia Street, East, 14th Floor
P.O. Box 3752
Charleston, WV 25337
Attorney For: Plaintiffs

Karen L. Loewy, Esq.
Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY 10005-3904
Email Address: kloewy@lambdalegal.org
Attorney For: Plaintiffs

Paul M. Smith
Lindsay C. Harrison
Luke C. Platzer
Jenner & Block
1099 New York Avenue, NW Suite 900
Washington, D.C. 20001-4412
Attorney For: Plaintiffs

Lee Murray Hall
Sarah A. Walling
Jenkins Fenstermaker, PLLC
P.O. Box 2688
Huntington, WV 25726-2688
Attorney For: Karen S. Cole

Elbert Lin
Julie Ann Warren
Office of the Attorney General
State Capitol Building 1, Room E-26
Charleston, WV 25305
Attorney For: State of West Virginia

      /s/ Charles R. Bailey_____
      **Charles R. Bailey (WV Bar #0202)**
      **Michael W. Taylor (WV Bar #11715)**
      **BAILEY & WYANT, PLLC**