UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
Huntington Division

CASIE JO MCGEE and SARAH ELIZABETH
ADKINS; JUSTIN MURDOCK and WILLIAM
GLAVARIS; and NANCY ELIZABETH
MICHAEL and JANE LOUISE FENTON,
individually and as next friends of A.S.M.,
a minor child,

      *Plaintiffs*,

v.

KAREN S. COLE, in her official capacity as
CABELL COUNTY CLERK; and VERA J.
MCCORMICK, in her official capacity as
KANAWHA COUNTY CLERK,

      *Defendants*,

And

STATE OF WEST VIRGINIA,

      *Defendant-Intervenor.*

Civil Action No. 3:13-cv-24068
The Hon. Robert C. Chambers

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT-INTERVENOR STATE OF WEST VIRGINIA'S MOTION TO DISMISS

**COME NOW**, Plaintiffs, Casie Jo McGee and Sarah Elizabeth Adkins, Justin Murdock and William Glavaris, and Nancy Elizabeth Michael and Jane Louise Fenton (individually and as next friends of A.S.M.) (collectively, "Plaintiffs"), by counsel, and hereby submit the following memorandum of law in opposition to Defendant-Intervenor State of West Virginia's Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and its Integrated Memorandum of Law In Support thereof ("Motion," Dkt. 34).

## INTRODUCTION

Plaintiffs are three loving and devoted same-sex couples ("Adult Plaintiffs"), and a child of one of the couples ("Child Plaintiff") (collectively, "Plaintiffs"), who have been excluded from civil marriage by state law. As the Complaint alleges (Dkt. 1, ¶¶ 5, 25, 29, 31), and as the Supreme Court recently reaffirmed, civil marriage confers "a dignity and status of immense import," and "enhance[s] the recognition, dignity, and protection of [same-sex couples] in their own community." *United States v. Windsor*, 133 S. Ct. 2675, 2692 (2013). Plaintiffs seek in this lawsuit to be granted equal access to marriage, along with the associated panoply of protections, benefits, and responsibilities that are intended to secure couples' commitment to each other and to safeguard their families. (Complaint ¶¶ 27–28, 33, 36)

Plaintiffs are excluded from marriage by the joint operation of several West Virginia statutes, *see* W. Va. Code §§ 48-2-104; 48-2-401, and 48-2-603 (collectively, the "marriage ban" or "the ban"). First, West Virginia law precludes Adult Plaintiffs from marrying within the State. W. Va. Code § 48-2-401. Second, West Virginia law bars Adult Plaintiffs from being married within the State by preventing them from recording a valid out-of-state marriage with their local county clerk (here, Defendant Cole or McCormick, respectively), and receiving respect for that out-of-state marriage, as different-sex couples are permitted to do. W. Va. Code § 48-2-603 (the "non-recognition provision"). Thus, as a result of both of these provisions, Adult Plaintiffs are barred from being married in West Virginia, and the Child Plaintiff is barred from having married parents.

Plaintiffs brought suit alleging that the ban violates their federal constitutional rights, and named as Defendants the County Clerks of Cabell and Kanawha Counties, in their official capacity, whose duties include both issuing marriage licenses and recording and indexing out-of-

2

state marriages where one or both parties are West Virginia residents. (Complaint ¶¶ 18–19) The State of West Virginia intervened in this action to defend the marriage ban. (Dkt. 28)

The State asserts that Plaintiffs lack standing to challenge only West Virginia Code § 48-2-603, the provision that bars recognition of out-of-state marriages, because Plaintiffs have not yet married outside of West Virginia. The State's assertion lacks merit for several reasons. First, Plaintiffs are not required to marry elsewhere and seek to record their marriages with Defendants Cole and McCormick (the same officials who already have turned down their applications to marry within West Virginia), in the hopes of having their marriages recorded and recognized here – because doing so would be futile. The State concedes that West Virginia would not recognize such a marriage as lawful. Standing doctrine does not require that Plaintiffs engage in futile gestures prior to bringing a facial challenge to a statute that expressly bars them access on its face. It is sufficient that Plaintiffs suffer the indignity of unequal treatment under West Virginia law—something that the State does not dispute in its motion.

Second, the Complaint alleges that Plaintiffs are suffering serious injuries, both dignitary and financial, from their unequal treatment under West Virginia law. These injuries include the stigma and humiliation of having their families labeled by government as inferior to others and unworthy of marriage, and the invitation to others to discriminate against them. The non-recognition provision harms Plaintiffs in these ways just as the provision barring them from marrying in West Virginia harms them. The non-recognition provision further harms them by depriving them of self-determination to decide *where* to celebrate their marriage. If Plaintiffs were to prevail in challenging the provision denying them the ability to marry within the State, but were not permitted to challenge the non-recognition law, they and other same-sex couples uniquely would be deprived of the ability to select their place of celebration and would continue

to suffer scrutiny by state officials forced to distinguish between marriages celebrated in West Virginia and elsewhere. Those injuries demonstrate how Plaintiffs are injured by the non-recognition provision, regardless of whether they have actually married out-of-state.

Additionally, the non-recognition provision suffers from the same fatal flaw as the provision that bars Adult Plaintiffs from marrying within the State. The legislature passed these provisions as one bill whose sole purpose was to fence out West Virginia same-sex couples and their children from marriage in every respect. As the Complaint alleges, this bill was motivated by animus, and lacks any constitutionally permissible justification. (Complaint ¶25) Consequently, because the various provisions were part of one bill supported by the same constitutionally impermissible motives, the provisions cannot be severed but must be struck down together.

Finally, to the extent that the Court harbors any doubts regarding their standing to challenge West Virginia's non-recognition provision, Adult Plaintiffs have confirmed under oath their willingness to seek marriages out-of-state and have them recognized in West Virginia, to the extent that they are otherwise not permitted to marry here. Accordingly, Plaintiffs have sufficient standing to challenge West Virginia's non-recognition statute.

## ARGUMENT

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984) (quoting U.S. Const., Art. III, § 2). As the Supreme Court has articulated, a primary purpose of standing doctrine is "to ensure that [courts'] deliberations will have the benefit of adversary presentation and a full development of the relevant facts." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 540–42 (1986). In

4

order to determine whether a plaintiff has standing, the Court has established a three-part inquiry. First, the plaintiff must demonstrate that he has suffered an "injury in fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). That injury must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* Second, the plaintiff must show a causal connection between the injury and the conduct such that the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* Finally, the injury must be redressable by the court. *Id.*

### A. Plaintiff Couples Are Not Required to Engage in the Futile Gesture of Attempting to Record and Receive Recognition for an Out-Of-State Marriage Before Challenging the Non-Recognition Provision.

Plaintiffs are not barred from challenging the non-recognition provision simply because Adult Plaintiffs have not yet themselves obtained out-of-state marriages. Traveling out of state to marry would be both costly and futile, especially given that Adult Plaintiffs already have sought and been denied marriage licenses from Defendants Cole and McCormick ("Defendant Clerks"), who are the same officials responsible for recording and indexing out-of-state marriages. As set forth below, Plaintiffs are not required to undertake such a futile act solely to demonstrate their standing.

Adult Plaintiffs are not required to undertake the cost of traveling to one of the 18 states or the District of Columbia that permit same-sex couples to marry when Plaintiffs already know—based both on the text of the non-recognition provision and Defendant clerks' actions in enforcing companion provisions of the marriage ban—that Defendant Clerks would enforce the non-recognition provision. A plaintiff need not risk adverse consequences of an action that the law has already proscribed. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007); *see Sciolino v. Newport News*, 480 F.3d 642, 653 n.9 (4th Cir. 2007). Rather, as the Supreme Court

5

has noted, "the declaratory judgment procedure is an alternative" to engaging in the arguably prohibited activity. *MedImmune.* 549 U.S. at 129 (citing *Steffel v. Thompson*, 415 U.S. 452, 480 (1974)). Here, the Plaintiffs need not incur the cost of traveling elsewhere to marry, merely to challenge a law that clearly applies to them. *See, e.g., Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 160 (4th Cir. 2000) ("The Supreme Court has clearly recognized that threatened rather than actual injury can satisfy Article III's standing requirements.").

It would be an absurd distortion of the standing doctrine to require Plaintiffs to marry out-of-state solely for the purpose of challenging West Virginia's non-recognition provision. As set forth in Plaintiffs' briefing in response to Defendant Clerks' Motions to Dismiss (Dkts. 26 and 31), there is simply no dispute in this case regarding the current effect of the non-recognition provision—that West Virginia law unquestionably bars recognition of any same-sex marriage performed out of state. Indeed, the State itself admits as much, noting that under Section 48-2-603, the State "shall not recognize same-sex marriages." (Memo at 2) A Plaintiff "need not engage in futile gestures before seeking an injunction; the individual must show only that an [complained-of fact] actually affects his activities in some concrete way." *Frame v. City of Arlington*, 657 F.3d 215, 236 (5th Cir. 2011); *see also Townes v. Jarvis*, 577 F.3d 543, 547 n.1 (4th Cir. 2009) ("The law does not require [] a futile act" in order to establish injury-in-fact).

In *Babbitt v. United Farm Workers Nat'l Union*, for example, plaintiffs challenged an Arizona statute regulating election procedures for agricultural employee bargaining representatives. 442 U.S. 289, 292–93 (1979). The Court found that plaintiffs had standing to challenge these election procedures even though they "admittedly [had] not invoked the Act's election procedures in the past nor [had] they expressed any intention of doing so in the future."

6

*Id.* at 299. The Court found standing in part because of "the procedures' asserted futility"—for example, the procedures entailed delays in elections that rendered them useless for agricultural employees given the short term of their employment. *Id.* at 300. Since, as the Court stated, the "challenged statute [wa]s sure to work the injury alleged," and because invoking the procedures would not provide a more substantive factual record, it saw no reason to delay adjudication. *Id.*; *see also Clements v. Fashing*, 457 U.S. 957, 962 (1982) (plaintiffs did not need to subject themselves to a law to challenge it, because their injury was not "speculative or hypothetical" when the operation of the law was "automatic"); *Int'l Bh'd of Teamsters v. United States*, 431 U.S. 324, 365–66 (1977) ("When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application."). *See also Harris v. McDonnell*, Memorandum Opinion at 13, No. 5:13-cv-77 (W.D. Va. Dec. 23, 2013) (denying State's motion to dismiss challenge to Virginia's marriage ban and rejecting argument that those plaintiffs lacked standing).

Indeed, the State's position to the contrary runs afoul of a longstanding tenet of standing in equal protection cases: that Plaintiffs challenging discriminatory practices or policies need not establish that they would have ultimately been awarded the benefit for which they are seeking to be equally considered. As the Supreme Court has held, "When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing." *Northeastern Fla. Ch. of Assoc. Gen. Contrs. of Am. v. Jacksonville*, 508 U.S. 656, 666 (1993). As the Court explained, the "injury-in-fact" in such a case is not, as the State's position would

7

suggest, "the ultimate inability to obtain the benefit"; rather, the injury "is the denial of equal treatment resulting from the imposition of the barrier." *Id.*; *see also Morrison v. Garraghty*, 239 F.3d 648, 656 (4th Cir. 2001) (plaintiff "need not prove that he would ultimately receive [sought-after] items in order to obtain an injunction from further application of the race-based aspect of the policy to him").

Finally, to the extent that the Court harbors any doubt regarding Plaintiffs' standing to challenge West Virginia's law forbidding recognition of out-of-state marriages, they have eliminated it through their declarations in support of this opposition. While, for the reasons stated in this opposition, Plaintiffs submit that this Court may find standing based solely on the allegations in the Complaint, they recognize that this Court may proceed beyond the pleadings when a factual prerequisite for subject matter jurisdiction is in dispute. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) ("If the defendant challenges the factual predicate of subject matter jurisdiction, '[a] trial court may then go beyond the allegations of the complaint and . . . determine if there are facts to support the jurisdictional allegations,' without converting the motion to a summary judgment proceeding." (quoting *Adams*, 697 F.2d at 1219)). Here, the Court may consider the declarations supplied by Plaintiffs in support of this opposition, which clearly establish their standing to challenge the state's non-recognition law. These declarations confirm under oath that, while Plaintiffs would prefer to be married in West Virginia, they seek to be married out-of-state and have that marriage recognized and recorded here, if they are otherwise unable to be married in West Virginia. Declaration of Casie Jo McGee ¶ 15; Declaration of William Glavaris ¶ 14; Declaration of Nancy Elizabeth Michael ¶ 22. Such stated intent is more than sufficient to confer standing to challenge both West Virginia's refusal to perform marriages and its refusal to recognize those validly celebrated elsewhere. *See NRA of*

8

*Am., Inc. v. McCraw*, 719 F.3d 338, 345 (5th Cir. 2013) (finding standing to challenge two laws that, "as part of a statutory scheme, combine to deprive plaintiffs of their alleged constitutional rights," although invalidation of either would grant plaintiffs the remedy they sought).

Thus, given the certainty that West Virginia would simply rebuff their efforts to record and have an out-of-state marriage recognized—the State errs in suggesting that Adult Plaintiffs were required to marry before challenging the non-recognition provision.

**B.     The Recognition of Out-of-State Marriages Is an Integral Part of the Freedom to Marry and Cannot be Severed From Plaintiffs' Equal Protection and Due Process Claims.**

Plaintiffs seek in this lawsuit the right to have their relationships treated equally under West Virginia law. The Complaint alleges that Plaintiffs wish to be married and to have their marriages recognized by the State in which they live, work, and have built their families. Their lawsuit challenges Plaintiffs' exclusion from the entire statutory scheme regulating marriage in West Virginia—that is, the State's refusal to provide them with the entire spectrum of protections, benefits, rights, and responsibilities that result from marriage, including those that affect the legal and financial security of their partners and children. (Complaint ¶¶ 27–28, 33, 36) The Complaint seeks this redress for the serious injuries they suffer, including both financial and dignitary injuries arising from their unequal treatment. The breadth of their claim is illustrated by the relief sought, in that the Complaint requests that Defendants be enjoined from enforcing specific statutes as well as "any other sources of West Virginia law that exclude same-sex couples from marriage." (Complaint at 28)

That is to say, Plaintiffs' Complaint seeks access to *marriage*—not solely to obtain a marriage license or have a marriage recorded by a County Clerk. (Complaint ¶¶ 1–8, 27–36, 53–

9

55, 65–67). Plaintiffs' claims are therefore not divisible in the manner the State attempts. Under any statutory scheme regulating marriage, a couple's ability to choose where they will marry—perhaps in the place where one spouse was raised, where one spouse's parents reside, or simply on a beach that they find lovely at sunset—is a significant and integral incident of marriage. West Virginia law currently provides that option to all couples who are otherwise able to marry by respecting out-of-state marriages capable of being performed in-state. *See* W. Va. Code §§ 48-2-204, 48-2-602. West Virginia's non-recognition statute is an integral part of this statutory scheme because it causes a unique injury: if the Court were to grant the State's motion to strike relief relating to out-of-state recognition from Plaintiffs' Complaint, and Plaintiffs were also were to prevail in requiring West Virginia clerks to issue marriage licenses, West Virginia would still be depriving *solely* same-sex couples of the option to choose where to marry—thus providing them, and *only* them, a uniquely deficient "second-tier marriage," running afoul of the Supreme Court's decision in *Windsor*. 133 S. Ct. at 2693. The State can no more single out this incident of marriage and contend that Plaintiffs lack standing to challenge it than any other, because Plaintiffs' Complaint seeks equal access to marriage *writ large* (Complaint ¶¶ 27–36). Thus seen, the State's attempt to re-cast the Complaint as focusing only on specific, enumerated incidents of marriage is improper and must be rejected. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (in deciding a facial 12(b)(1) motion, district court must accept as true all well-pled factual allegations in the complaint, just as it would when evaluating a 12(b)(6) motion).

That Plaintiffs' claims regarding recognition are an integral part of their injury is perhaps best illustrated by the distinctive burden that would befall Plaintiffs if the State's Motion to Dismiss were to succeed but Plaintiffs ultimately prevailed. In such a case, the Adult Plaintiffs would be permitted to marry in this State, and Defendants would be enjoined from excluding

same-sex couples from marriage, but the ban on recognizing marriages performed elsewhere would remain intact (if of questionable constitutionality). This would uniquely subject Adult Plaintiffs' marriages to a cloud of uncertainty, in that they would possess the only type of marriage recognized by the state of West Virginia for which recognition of foreign-performed marriages was barred. Same-sex couples seeking to avail themselves of any particular incident of marriage would thus be subject to a heightened suspicion regarding where their marriage was obtained—asked to provide documentation regarding their place of marriage in hospital rooms and their children's elementary schools, for example—based on the possibility that their marriages were invalidly contracted out-of-state. It is precisely this type of "dignitary inequit[y]," as well as private discrimination encouraged by government discrimination in marriage, that the Complaint seeks to cure. (Complaint ¶¶ 31, 35) The injury arising from this increased scrutiny is itself sufficient injury-in-fact to confer standing on Plaintiffs to challenge the State's refusal to recognize the out-of-state marriages of same-sex couples, even if they did not also independently have standing to assert a non-recognition claim (which the State does not challenge). *See Adar v. Smith*, 639 F.3d 146, 150 (5th Cir. 2011) (en banc) (practical convenience of birth certificate, compared to order of adoption, was sufficient injury to confer standing to challenge denial of issuance of birth certificate); *Loa-Herrera v. Trominski*, 231 F.3d 984, 987–88 (5th Cir. 2000) (mere threat of increased harassment from use of temporary immigration papers sufficient injury to confer standing to challenge policy requiring use of such temporary papers).

Further, as the Supreme Court has recognized, the harm caused by discriminatory marriage restrictions that single out same-sex couples includes the dignitary harm of being branded as members of inferior families, and the invitation to others to discriminate that results.

11

When government relegates same-sex couples to "second-tier" status for their relationships, government "demeans the couple," deprives them of equal dignity, and "degrade[s]" them, in addition to causing them countless tangible harms, all in violation of "basic due process and equal protection principles." 133 S. Ct. 2675, 2693-95 (2013). Similarly, *Windsor* held that by refusing to recognize a valid marriage of a same-sex couple, the federal government "humiliates tens of thousands of children now being raised by same-sex couples. The law in question makes it even more difficult for the children to understand the integrity and closeness of their own family and its concord with other families in their community and in their daily lives." *Id.* at 2694. Similarly, the non-recognition provision inflicts stigma and dignitary injury on all same-sex couples in West Virginia and their children—regardless of whether they attempt to marry in another state and record their marriages in West Virginia—because the provision labels these families as inferior and invites others to discriminate against them. Plaintiffs experience this injury just as other same-sex couples and their children do.

Additionally, because the non-recognition provision was part of the same bill as the provision barring same-sex couples from marrying in West Virginia, a bill whose sole purpose was to exclude same-sex couples from marriage, the entire bill must be struck down because it was motivated by the same animus and constitutionally impermissible justifications. S.B. 146, Reg. Sess. (W. Va. 2000). As Plaintiffs have pled in the Complaint, the non-recognition provision, like the other provisions passed in the same bill, "cannot be explained by reference to legitimate public policies that could justify the disadvantages [these provisions impose] on same-sex couples who wish to marry. Rather, the history of these enactments and their own text demonstrate that interference with the equal dignity of same-sex couples was more than a mere side effect of the various enactments – it was their essence." (Complaint ¶25) The presence of

animus is itself sufficient to render a statute unconstitutional. In each case in which the Supreme Court considered challenges to classifications that discriminate based on sexual orientation, the Court found it unnecessary to decide the appropriate level of scrutiny to apply under conventional equal protection analysis, finding instead that such laws typically are motivated by animus. Any law intended to demean lesbians and gay men and to impose a broad disability for the purpose of disadvantaging them as a class "confounds [the] normal process of judicial review." *Romer v. Evans*, 517 U.S. 620, 633-34 (1996) (noting such laws "raise the inevitable inference that the disadvantage imposed is born of animosity toward the class of persons affected"). Here, the marriage ban bears striking similarity to the "design, purpose, and effect of the [federal Defense of Marriage Act]," recently ruled unconstitutional in *United States v. Windsor*, 133 S. Ct. 2675, 2689. Subjecting the marriage ban to the same "careful consideration" required in *Windsor*, the law is similarly fatally flawed: its "principal purpose" was "to impose inequality," *Id. at* 2694. The State does not dispute Plaintiffs' standing to challenge the provisions of the bill that prevent them from marrying within West Virginia. Because Plaintiffs mount a facial challenge to the marriage ban on the ground, among others, that the bill that enacted it was motivated by unconstitutional animus, the non-recognition provision cannot be severed from the other provisions of the ban, and Plaintiffs have standing to challenge the ban in its entirety.

Thus, because of the harm caused by the non-recognition provision, the burden of having to travel out of state to marry and the certainty that Defendant Clerks would rebuff their efforts to have their out of state marriage recorded and recognized, the State errs in suggesting that Plaintiffs were required to marry before challenging the non-recognition provision.

13

### C. The Ninth Circuit's *Smelt* Decision Is Inapposite.

In support of their Motion, the State relies on the Ninth Circuit's decision in *Smelt v. County of Orange*. (Memo at 7) In *Smelt*, the Ninth Circuit held in 2006 that an unmarried California couple did not have standing to challenge Section 2 of the so-called "Defense of Marriage" Act, 28 U.S.C. § 1738C, which purports to apply to the recognition of out-of-state marriages. 447 F.3d 673, 683 (9th Cir. 2006). *Smelt*, however, is inapposite to this Court's standing inquiry.

First, at the time *Smelt* was decided, it was essentially impossible for a California same-sex couple such as the *Smelt* plaintiffs to obtain a marriage that would implicate Section 2 of DOMA. In 2006, Massachusetts was the only U.S. state that authorized marriages of same-sex couples.[1] California couples such as the *Smelt* plaintiffs, however, were unable to obtain marriages in Massachusetts under that state's now-repealed "reverse evasion" statute, which forbade non-residents from marrying if the marriage would be prohibited under the law of the their home state. *See Cote-Whitacre v. Dep't of Pub. Health*, 844 N.E.2d 623, 631 (Mass. 2006).[2] Accordingly, the *Smelt* plaintiffs did not lack standing because they were unmarried; they lacked standing because, absent permanent relocation to Massachusetts, they were entirely unable to obtain a marriage that would permit them demonstrate some legal injury from Section

---

[1] *See In re Marriage Cases*, 183 P.3d 384, 450 n.70 (Cal. 2008) ("At this time, only six jurisdictions (Massachusetts and five foreign nations . . . ) authorize same-sex couples to marry."). That the *Smelt* plaintiffs could have obtained a same-sex marriage in other countries would not have provided standing to challenge Section 2 of DOMA, because Section 2's application is limited to domestic same-sex marriages ("No State, territory, or possession of the United States, or Indian tribe, shall be required to give effect to any public act, record, or judicial proceeding of any other *State, territory, possession, or tribe* . . . ." (emphasis added)). *See Surnamer v. Ellstrom*, No. 1 CA-CV 11-0504, 2012 WL 2864412, at *1 n.3 (Ariz. App. July 12, 2012) (declining to address DOMA Section 2 in case involving recognition of a Canadian marriage).

[2] At the time, California law clearly prohibited marriage for same-sex couples. *See* Cal. Fam. Code § 308.5 ("Only marriage between a man and a woman is valid or recognized in California."), *declared unconstitutional by In re Marriage Cases*, 183 P.3d 384, 402 (Cal. 2008).

14

2 of DOMA. Thus, the Ninth Circuit explicitly noted that the method by which the plaintiffs' situation "might change" was if they "change[d] their residence to Massachusetts." 477 F.3d at 683 & n. 27 (citing *Cote-Whitacre*, 844 N.E.2d at 635 (Spina, J., concurring)). The Plaintiffs in this case are in a materially different position: they need only cross the West Virginia–Maryland border—or travel to any one of 18 other states or the District of Columbia—in order to celebrate a valid marriage.

Second, the federal law at issue in *Smelt* was qualitatively different from the West Virginia law at issue here. Section 2 of DOMA is *permissive*, stating that "No state . . . shall be required to give effect" to a same-sex couple's marriage. 28 U.S.C. § 1738C; *see also United States v. Windsor*, 133 S. Ct. 2675, 2682 (2013) (Section 2 "allows States to refuse to recognize" out of-state marriages). Accordingly, it was far from clear in *Smelt* that Section 2 had any effect at all on the plaintiffs; the plaintiffs in that case thus could not meet the causation and redressability prongs of the standing analysis.[3] By contrast, West Virginia's law is mandatory, *requiring* that marriages of same-sex couples "shall not be given effect by this state." W. Va. Code § 48-2-603. Here, there is no question that if the Court grants Plaintiffs the relief they seek, an injury will be redressed: they will be able to decide where to celebrate their marriages, and have those marriages recognized as valid by the State they call home. Accordingly, Plaintiffs have standing to remedy the injuries they suffer from Section 48-2-603.

---

[3] Redressability similarly answers the state's citation to *Bishop v. Oklahoma ex rel. Edmondson*, 447 F. Supp. 2d 1239 (N.D. Okla. 2006). As the *Bishop* court reasoned, a civil union was insufficient to challenge DOMA Section 2 because, by its terms, Section 2 applied only to a "relationship . . . that is treated as a marriage," and a civil union was not such a relationship. *Id.* at 1247–48.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court deny the state's motion to dismiss.[4]

Dated: December 30, 2013

Respectfully submitted,

**ATTORNEYS FOR PLAINTIFFS**

/s/ John H. Tinney, Jr.
TINNEY LAW FIRM, PLLC
John H. Tinney, Jr. (WVSB #6970)
Heather Foster Kittredge (WVSB #8543)
222 Capitol Street, Suite 500
Charleston, West Virginia 25301
Phone: (304) 720-3310
Fax: (304) 720-3315
JackTinney@tinneylawfirm.com
HKittredge@tinneylawfirm.com

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
Elizabeth L. Littrell (*pro hac vice*)
730 Peachtree Street, N.E.
Suite 1070
Atlanta, Georgia 30308-1210
blittrell@lambdalegal.org
Phone: (404) 897-1880
Fax: (404) 897-1884

Karen L. Loewy (*pro hac vice*)
120 Wall Street, 19th Floor
New York, New York 10005-3904*
Phone: (212) 809-8585
Fax: (212) 809-0055
kloewy@lambdalegal.org
*Admitted only in Massachusetts

---

[4] In the alternative, however, should the Court be disposed to grant the relief sought by the state in its motion to dismiss, Plaintiffs request that such dismissal be *without* prejudice, so that they may amend their complaint remedy any deficiencies in their claim challenging the constitutionality of West Virginia Code § 48-2-603. *See Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009) ("[A] dismissal that operates with prejudice is warranted only when the trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.").

Camilla B. Taylor (*pro hac vice*)
105 West Adams, 26th Floor
Chicago, Illinois 60603-6208
Phone: (312) 663-4413
Fax: (312) 663-4307
ctaylor@lambdalegal.org

JENNER & BLOCK LLP
Paul M. Smith (*pro hac vice*)
Luke C. Platzer (*pro hac vice*)
Lindsay C. Harrison (*pro hac vice*)
R. Trent McCotter (*pro hac vice*)
1099 New York Avenue, NW Suite 900
Washington, D.C. 20001-4412
Phone: (202) 639-6000
Fax: (202) 639-6006
psmith@jenner.com
lplatzer@jenner.com
lharrison@jenner.com
tmccotter@jenner.com

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
**Huntington Division**

**CASIE JO MCGEE and SARAH
ELIZABETH ADKINS**, *et al.*,

    *Plaintiffs*,

v.

**KAREN S. COLE**, *et al.*,

    *Defendants,*

And

**STATE OF WEST VIRGINIA,**

    *Defendant-Intervenor.*

Civil Action No. 3:13-cv-24068
The Hon. Robert C. Chambers

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of December, 2013, I electronically filed the foregoing *"Memorandum of Law in Opposition to Defendant-Intervenor State of West Virginia's Motion to Dismiss"* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

Elbert Lin, Esquire
Julie Ann Warren, Esquire
Office of the Attorney General
State Capitol Building 1, Room E-26
Charleston, WV 25305
*Counsel for the State of West Virginia*

Charles R. Bailey, Esquire
Michael W. Taylor, Esquire
Bailey & Wyant, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, WV 25337-3710
*Counsel for Defendant Vera J. McCormick*

Lee Murray Hall, Esquire
Sarah A. Walling, Esquire
Jenkins Fenstermaker, PLLC
325 Eight Street
Huntington, WV 25701-2225
*Counsel for Defendant Karen S. Cole*

/s/ John H. Tinney, Jr.
John H. Tinney, Jr.