IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

**CASIE JO MCGEE and SARA ELIZABETH ADKINS; JUSTIN MURDOCK and WILLIAM GLAVARIS; and NANCY ELIZABETH MICHAEL and JANE LOUISE FENTON,** Individually and as next friends of A.S.M., minor child,

          **Plaintiffs,**

v.                                          Civil Action No. 3:13-24068

**KAREN S. COLE,** in her official capacity as **CABELL COUNTY CLERK;** and **VERA J. MCCORMICK,** in her official capacity as **KANAWHA COUNTY CLERK,**

          **Defendants,**

**and**

**STATE OF WEST VIRGINIA,**

          **Defendant-Intervenor.**

**REPLY IN SUPPORT OF
THE STATE OF WEST VIRGINIA'S MOTION TO DISMISS**

Nothing in Plaintiffs' Opposition can overcome the fundamental deficiency in their Complaint: that they alleged no facts suggesting that West Virginia Code § 48-2-603, which governs the State's non-recognition of same-sex marriages performed in other states, has a *non-speculative* and *personal* impact on them.  Plaintiffs are unmarried couples living in West Virginia who "wish[] to marry in the State."  Compl. ¶ 21.  They do not allege in the Complaint that they have valid out-of-state marriages or even that they intend to be married elsewhere.

Recognizing the fatal flaw in their Complaint, Plaintiffs advance a scattershot of different arguments, including entirely new factual allegations not found in the Complaint.  But as one court of appeals has said, "[w]hen a party comes [forward] with nine grounds [in support of its

position], that usually means there are none." *Fifth Third Mortg. Co. v. Chicago Title Ins. Co.*, 692 F.3d 507, 509 (6th Cir. 2012). Despite Plaintiffs' efforts, they cannot escape basic standing principles or the allegations they chose to plead in their Complaint. Plaintiffs fail to carry their burden to establish subject matter jurisdiction, and this Court should therefore dismiss the Complaint to the extent it challenges the constitutionality of Section 603.

**I.  PLAINTIFFS DO NOT DISPUTE THAT THEY LACK PRUDENTIAL STANDING TO CHALLENGE SECTION 603.**

Perhaps most telling is Plaintiffs' attempt to elide the issue of prudential standing. As the State demonstrated in its Motion, Plaintiffs lack standing for several prudential reasons. *See* Mot. 9-10. *First*, unmarried couples like Plaintiffs fall outside the "zone of interests . . . regulated by" a statute refusing to recognize marriages. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982) (internal quotations omitted). Even plaintiffs in a registered domestic partnership have been found to fall outside the zone of interests of a marital non-recognition statute. *Smelt v. Cnty. of Orange*, 447 F.3d 673, 686 (9th Cir. 2006). *Second*, Plaintiffs are advancing "the legal rights or interests of third parties" not before this Court—namely, same-sex couples who have been validly married in other States. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). *Third*, Plaintiffs' alleged grievance about West Virginia's non-recognition statute is so general and non-personal that it fails to distinguish them from any other member of the public. Any citizen could similarly protest that the statute denies same-sex couples the "ability to have a valid marriage from another jurisdiction recorded or recognized in West Virginia." Compl. ¶ 26.

Unable to cite a single case finding that an unmarried couple satisfies prudential standing, Plaintiffs offer no response, choosing to try to bury the issue. But as this Court is aware, prudential standing cannot simply be ignored. Like constitutional standing, the doctrine of

prudential standing imposes an independent and important limitation on judicial power. It is no less "founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Warth*, 422 U.S. at 498. This Court can and should grant the State's Motion on prudential grounds alone.

## II. PLAINTIFFS FAIL TO ESTABLISH CONSTITUTIONAL STANDING TO CHALLENGE SECTION 603.

### A. Plaintiffs Do Not Meet the Constitutional Elements of Standing.

Plaintiffs focus their Opposition on constitutional standing but fail to carry that burden as well. As the State has explained, the facts alleged in the Complaint do not establish an "injury-in-fact" caused by Section 603 and redressable by this Court. Mot. 9. Plaintiffs allege that they have not married and would do so *in West Virginia* but for the inhibition of state law. Compl. ¶¶ 14-16, 21-24. They do not allege that they have been validly married in another jurisdiction, that they intend to do so, or that they are even qualified to do so. On these facts, Section 603—a law that says nothing about *in-state* marriages and prohibits only the recognition of *out-of-state* same-sex marriages—does not have the necessary "personal" and "imminent" impact on Plaintiffs. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Nor would an order by this Court enjoining the law redress in any way the alleged legal impediment to Plaintiffs' desired marriage in this State.[1] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Plaintiffs attempt to distinguish the numerous similar cases cited by the State, *see* Mot. 7-8, but their distinctions are illusory. For example, Plaintiffs contend that "the *Smelt* plaintiffs did not lack standing because they were unmarried," but rather because it was very difficult at the time for same-sex couples to get married. Opp. 14. That assertion is belied by the *Smelt*

---

[1] As the State has noted previously, it neither represents nor concedes that *any* order in this case could accord Plaintiffs the relief they request, since there are specific state entities that enforce or otherwise execute the statutes at issue. *See* Doc. 25 at 3.

3

opinion, which unequivocally states that the couple lacked standing because "[n]o state has determined that [they] are married." 447 F.3d at 683. While the challenged law "may affect someone who has been declared married in some state," the Ninth Circuit explained, "Smelt and Hammer do not come within that category of people." *Id.* The court even went on to hold that the couple's status as a "registered legal union" did not suffice because that did not constitute marriage. *Id.* at 684. Nothing in the decision remotely suggests that the ease or difficulty of getting married had any bearing at all.

Plaintiffs also assert that *Smelt* is distinguishable because it turned on the "causation and redressability prongs of the standing analysis," not the injury prong. Opp. 15. But that, too, is demonstrably false. The Ninth Circuit clearly stated that the couple lacked standing to challenge the federal non-recognition statute because the law "simply d[id] not *injure* them." *Smelt*, 447 F.3d at 684 (emphasis added). That the couple was not married presented "an insurmountable hurdle" to establishing an "actual or imminent *injury* as opposed to a mere conjectural or hypothetical one." *Id.* at 683 (emphasis added). It should thus come as no surprise that Plaintiffs themselves explain elsewhere in their Opposition that the *Smelt* couple "lacked standing" because they could not "demonstrate some legal *injury*." Opp. 14 (emphasis added).[2]

### B. Plaintiffs' Alternative Theories Lack Merit.

Unable to establish the constitutional elements of standing, Plaintiffs advance a number of novel theories and exceptions. Among other arguments, they assert a "futility" exception, as well as the right to simply introduce new facts not alleged in the Complaint. None has merit.

---

[2] Plaintiffs' similar assertion that the *Bishop* case turned on "[r]edressability," Opp. 15 n.3, is likewise provably incorrect. The *Bishop* court specifically held that the couples there lacked standing to challenge Oklahoma's non-recognition law because they could not show the law would "imminently cause them a concrete and particularized *injury*." *Bishop v. Oklahoma ex rel. Edmondson*, 447 F. Supp. 2d 1239, 1256 (N.D. Okla. 2006) (emphasis added), *rev'd in part on other grounds*, 333 Fed. Appx. 361 (10th Cir. 2006).

**1.** Futility. Plaintiffs first contend that the Complaint is sufficient because they "know" that an out-of-state same-sex marriage will not be recognized under West Virginia law. Opp. 5. They argue that "[t]raveling out of state to marry would be both costly and futile." *Id.* Citing several cases, they assert that "[a] plaintiff need not risk adverse consequences of an action that the law has already proscribed." *Id.*

There are at least two problems with this argument. *First*, a number of Plaintiffs' cited cases are completely inapposite, as they concern whether an individual has to risk prosecution or actually suffer harm (as opposed to the threat of harm) to establish standing. *See, e.g.*, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) ("[W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat.").[3] Those are not the circumstances here. The challenged law does not prosecute, penalize, or otherwise directly harm individuals who obtain an out-of-state same-sex marriage and seek in-state recognition.[4]

*Second*, even under their cited cases, Plaintiffs' Complaint is deficient because they failed at the very least to allege an intent to marry elsewhere and seek recognition in West Virginia. Although a plaintiff need not always subject himself to the law he seeks to challenge, he must at a minimum "demonstrate a *realistic danger* of sustaining direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298

---

[3] *Sciolino v. City of Newport News*, 480 F.3d 642, 653 (4th Cir. 2007) ("[A] plaintiff need not have suffered the full consequences of the deprivation of his liberty to have . . . standing to sue."); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 160 (4th Cir. 2000) (en banc) ("Threats or increased risk . . . constitute[] cognizable harm.").

[4] *Harris v. McDonnell* is also inapposite, as it concerned the standing of an *in-state* same-sex couple to challenge a Virginia law defining *in-state* marriage. Opp. 7 (citing Memorandum Opinion at 13, No. 5:13-cv-77 (W.D. Va. Dec. 23, 2013)).

(1979) (emphasis added). Thus, in every "futility" case that Plaintiffs cite, there were factual allegations showing at least that the challengers *would* engage in the regulated behavior and in some cases that they had already suffered concrete harm. *See, e.g., id.* at 300 (noting that the plaintiff union had not invoked the challenged election procedures pertaining to representation in collective bargaining but nevertheless had "asserted in its complaint a desire to organize [the] workers and to represent them in collective bargaining").[5] Such a requirement ensures that the claims are not purely "imaginary or speculative." *Id.* at 298 (internal quotations omitted). Here, Plaintiffs fail that requirement because the Complaint does not include any allegations suggesting even an intent to take actions subject to Section 603.[6]

**2.** <u>Non-Severability.</u> Next, Plaintiffs assert that they have standing to challenge Section 603 because "th[at] non-recognition provision was part of the same bill as the provision barring same-sex couples from marrying in West Virginia." Opp. 12; *see also id.* at 13 ("[T]he non-recognition provision cannot be severed from the other provisions of the ban."). This argument

---

[5] *See also Clements v. Fashing*, 457 U.S. 957, 962 (1982) (noting plaintiffs' allegation that "they would engage in the very acts that would trigger the enforcement of the [challenged] provision"); *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993) (holding that a plaintiff challenging an allegedly unequal contracting process need not actually bid, but requiring that the plaintiff "demonstrate that it is able and ready to bid on contracts"); *Frame v. City of Arlington*, 657 F.3d 215, 236 (5th Cir. 2011) (en banc) (holding that the plaintiffs need not have "personally encountered" every allegedly inaccessible sidewalk, but requiring a showing that each such sidewalk "actually affects [their] activities in a concrete way" such as by "forcing them to take longer and more dangerous routes to their destinations"); *Townes v. Jarvis*, 577 F.3d 543, 547 n.1 (4th Cir. 2009) (holding that prisoner need not seek relief from parole board to establish standing because he had already done so).

[6] Plaintiffs cite several cases that do not address standing and therefore are legally irrelevant. *See Arizona Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1448 (2011). But even in those cases, the plaintiffs clearly demonstrated intent to undertake the allegedly futile action. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 367 (1977) (holding that a job-seeker need not apply for a job to challenge an allegedly discriminatory policy, but noting also the plaintiff's "burden of proving that he would have applied for the job had it not been for those practices"); *Morrison v. Garnighty*, 239 F.3d 648, 656 (4th Cir. 2001) (involving a prisoner who had, in fact, sought and been denied certain Native American religious items).

6

conflates the *ex ante* issue of standing with the *ex post* issue of severability. Standing must be resolved before the merits to determine whether a plaintiff has a sufficient stake in each of his asserted claims. Severability is a "question of remedy" that arises after the merits, when a court must determine if an unconstitutional provision can be excised from its larger context or not. *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328-29 (2006). Whether a particular statutory provision may be severable is a legal question that turns largely on legislative intent, *id.* at 330, and says nothing at all about an individual plaintiff's standing, which is a factual question that depends on the plaintiff's unique circumstances.

Plaintiffs cite several cases, *see* Opp. 8-9, 12-13, but none supports their novel theory that a plaintiff with standing to challenge one provision of a same-sex marriage law automatically has standing to challenge another provision of the same law. *United States v. Windsor* certainly includes no such statement, especially as that case involved only *one* provision of the federal Defense of Marriage Act. 133 S. Ct. 2675, 2682-83 (2013). *NRA of Am., Inc. v. McCraw*, 719 F.3d 338 (5th Cir. 2013), is also unavailing. That court found standing to challenge two laws because, with respect to the plaintiffs in the case, each law independently caused the *same* injury. *Id.* at 345. The case did not invent a new doctrine of severability-related standing.

**3.** <u>Restricted Geographic Choice.</u> Plaintiffs' third argument is that Section 603 "causes [the] unique injury" of limiting a West Virginia same-sex couple's "ability to choose where they will marry." Opp. 10. That statement is true enough but entirely misses the point. It is undisputed that Section 603 prohibits the recognition in West Virginia of same-sex marriages performed outside the State, which, as Plaintiffs put it, effectively limits the locations at which a West Virginia same-sex couple could marry. The problem, however, is that Plaintiffs did not allege in their Complaint any facts that suggest *they* have been personally harmed by that

7

limitation. The effect of the limitation on Plaintiffs is purely "abstract" and "hypothetical," and therefore insufficient to confer standing. *Allen v. Wright*, 468 U.S. 737, 751 (1984).

    **4.** <u>Possible Future Discrimination.</u> Similarly faulty is Plaintiffs' contention that Section 603 may impose a "distinctive burden" if "the State's Motion to Dismiss were to succeed but Plaintiffs ultimately prevailed." Opp. 10. In those circumstances, Plaintiffs assert, they would be able to marry in West Virginia but under "a cloud of uncertainty." *Id.* at 11. They speculate that "[s]ame-sex couples seeking to avail themselves of any particular incident of marriage would . . . be subject to a heightened suspicion regarding where their marriage was obtained—asked to provide documentation regarding their place of marriage . . . —based on the possibility that their marriages were invalidly contracted out-of-state." *Id.*

    This is the height of conjecture and thus also inadequate for standing. *If* the State's Motion succeeds, and *if* Plaintiffs prevail on their remaining claims, *some* person *some* day *might* subject one of the Plaintiff couples (or some other married same-sex couple) to greater suspicion than a different-sex couple, which *might* lead that person to ask for documentation. No case, including the two cited by Plaintiffs, suggests that such a hypothetical harm establishes standing. *See Adar v. Smith*, 639 F.3d 146, 150 (5th Cir. 2011) (en banc) (finding standing where the plaintiffs were actually denied a revised birth certificate); *Loa-Herrera v. Trominski*, 231 F.3d 984, 987-88 (5th Cir. 2000) (finding standing where the plaintiffs were actually issued different immigration papers that actually resulted in one plaintiff enduring "almost two hours of detention").

    **5.** <u>Dignitary Harm.</u> Plaintiffs also contend that Section 603 "inflicts stigma and dignitary injury on all same-sex couples in West Virginia and their children—regardless of whether they attempt to marry in another state and record their marriages in West Virginia—because the

provision labels these families as inferior." Opp. 12. Plaintiffs stress that they "experience this injury *just as other same-sex couples* and their children do." *Id.* (emphasis added).

It is difficult to imagine a clearer admission by Plaintiffs that they lack the sufficiently individual and "personal stake in the outcome of the controversy as to warrant [*their*] invocation of federal-court jurisdiction." *Horne v. Flores*, 557 U.S. 433, 445 (2009) (internal quotations omitted). Under Plaintiffs' theory, every same-sex couple in West Virginia—even those who specifically intend never to marry—could challenge Section 603 and every other marriage statute. Their claim of dignitary harm is precisely the sort of "generalized grievance[] and "abstract question[] of wide public significance" that courts are instructed to avoid. *Valley Forge*, 454 U.S. at 475 (internal quotations omitted).

Thus, no court has ever accepted stigma and dignitary harm as a sufficient injury for constitutional standing in this context. In *Smelt*, for example, the Ninth Circuit explained that the fact that the unmarried plaintiff couple found the federal non-recognition statute "'personally offensive' . . . d[id] not suffice to give them standing." 447 F.3d at 685. The court noted the Supreme Court's instruction that "'standing is not measured by the intensity of the litigant's interest or the fervor of his advocacy.'" *Id.* (quoting *Valley Forge,* 454 U.S. at 486). Thus, "[a] party's 'moral outrage, however profoundly and personally felt, does not endow him with standing to sue.'" *Id.* (quoting *Schaffer v. Clinton*, 240 F.3d 878, 884 (10th Cir. 2001)).

**6.** <u>New Facts.</u>  As a last-ditch effort, Plaintiffs seek to "eliminate" the deficiency in their Complaint by introducing new facts through declarations stating that they would "seek to be married out-of-state . . . if they are otherwise unable to be married in West Virginia." Opp. 8. But as the case cited by Plaintiffs themselves explains, a court may go beyond the Complaint on a motion to dismiss only when the movant contends "that the jurisdictional allegations of the

9

complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (internal quotations omitted). That is not the case here. The State contends that the Complaint "fails to allege sufficient facts to support subject matter jurisdiction," and in those circumstances "the trial court must … assume the truthfulness of the facts alleged" in the Complaint. *Id*. at 193. Without such a limitation, complaints would be meaningless. Every plaintiff facing a standing challenge would feel free to correct or contradict his or her complaint as convenience dictates. Plaintiffs' new facts are therefore inadmissible.

Even if this Court could consider the new facts, they are still too speculative to cure Plaintiffs' lack of standing. Plaintiffs' declarations state that they prefer to be married in West Virginia, though they would marry in another state if West Virginia would recognize the marriage. *See* Exh. 39-1 ¶ 15; Exh. 39-4 ¶ 14; Exh. 39-5 ¶ 22. Significantly, they do not offer any facts or allegations suggesting that they would marry in another state if they could do so in West Virginia. In contrast to the Complaint, for example, Plaintiffs do not allege in their declarations that they satisfy the qualifications to be married in any other jurisdiction. Their newly asserted desire to be married out-of-state remains contingent and thus is too hypothetical to consider any injury from Section 603 "certainly impending." *Babbit*, 442 U.S. at 298.

## III. CONCLUSION

For the reasons set forth above and in the State's Motion, this Court should dismiss the Complaint to the extent that it challenges the constitutionality of Section 603.[7]

---

[7] The State takes no position as to whether the Court should dismiss with or without prejudice but notes that Plaintiffs' counsel represented at the scheduling hearing on January 6, 2014, that Plaintiffs would not add new parties if the Court grants this Motion.

                Respectfully submitted,

                PATRICK MORRISEY
                ATTORNEY GENERAL

                   *s/ Elbert Lin*
                Elbert Lin (WV Bar Number: 12171)
                  *Solicitor General*
                Julie Ann Warren (WV Bar Number: 9789)
                  *Assistant Attorney General*
                Office of the Attorney General
                State Capitol Building 1, Room E-26
                Charleston, WV 25305
                Telephone: (304) 558-2021
                Fax: (304) 558-0140
                E-mail: elbert.lin@wvago.gov

                *Counsel for the State of West Virginia*

Dated: January 9, 2014

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CASIE JO MCGEE and SARA ELIZABETH
ADKINS; JUSTIN MURDOCK and WILLIAM
GLAVARIS; and NANCY ELIZABETH
MICHAEL and JANE LOUISE FENTON,
Individually and as next friends of A.S.M.,
minor child,

                  Plaintiffs,

v.                                                  Civil Action No. 3:13-24068

KAREN S. COLE, in her official capacity as
CABELL COUNTY CLERK; and VERA J.
MCCORMICK, in her official capacity as
KANAWHA COUNTY CLERK,

                  Defendants,

and

STATE OF WEST VIRGINIA,

                  Defendant-Intervenor.

## CERTIFICATE OF SERVICE

I, Elbert Lin, counsel for the Movant, hereby certify that on January 9, 2014, I electronically filed the foregoing *Reply in Support of the State of West Virginia's Motion to Dismiss* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

| | |
|---|---|
| Camilla B. Taylor<br>LAMBDA LEGAL DEFENSE &<br>EDUCATION FUND, INC.<br>Suite 2600<br>105 West Adams<br>Chicago, IL 60603<br>Email: ctaylor@lambdalegal.org | Elizabeth L. Littrell<br>LAMBA LEGAL DEFENSE &<br>EDUCATION FUND, INC.<br>Suite 1070<br>730 Peachtree Street, NE<br>Atlanta, GA 30308-1210<br>Email: blittrell@lambdalegal.org |

| | |
|---|---|
| Heather Foster Kittredge<br>THE TINNEY LAW FIRM<br>P. O. Box 3752<br>Charleston, WV 25337-3752<br>Email: heather@tinneylawfirm.com | John H. Tinney , Jr.<br>THE TINNEY LAW FIRM<br>P. O. Box 3752<br>Charleston, WV 25337-3752<br>Email: jacktinney@tinneylawfirm.com |
| Karen L. Loewy<br>LAMBDA LEGAL DEFENSE &<br>EDUCATION FUND, INC.<br>19th Floor<br>120 Wall Street<br>New York, NY 10005-3904<br>Email: kloewy@lambdalegal.org | Lee Murray Hall<br>JENKINS FENSTERMAKER<br>P. O. BOX 2688<br>Huntington, WV 25726-2688<br>Email: lmh@jenkinsfenstermaker.com |
| Lindsay C. Harrison<br>JENNER & BLOCK<br>Suite 900<br>1099 New York Avenue, NW<br>Washington, DC 20001-4412 | Sarah A. Walling<br>JENKINS FENSTERMAKER<br>P. O. Box 2688<br>Huntington, WV 25726-2688<br>Email: saw@jenkinsfenstermaker.com |
| Luke C. Platzer<br>JENNER & BLOCK<br>Suite 900<br>1099 New York Avenue, NW<br>Washington, DC 20001-4412<br>Email: lplatzer@jenner.com | Charles R. Bailey<br>BAILEY & WYANT<br>P. O. Box 3710<br>Charleston, WV 25337-3710<br>Email: cbailey@baileywyant.com |
| Paul M. Smith<br>JENNER & BLOCK<br>Suite 900<br>1099 New York Avenue, NW<br>Washington, DC 20001-4412<br>Email: psmith@jenner.com | Michael W. Taylor<br>BAILEY & WYANT<br>P. O. Box 3710<br>Charleston, WV 25337-3710<br>Email: mtaylor@baileywyant.com |
| R. Trent McCotter<br>JENNER & BLOCK<br>Suite 900<br>1099 New York Avenue, NW<br>Washington, DC 20001-4412<br>Email: rmccotter@jenner.com | |

*s/ Elbert Lin*
Elbert Lin