IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CASIE JO MCGEE and SARAH ELIZABETH
ADKINS; JUSTIN MURDOCK and WILLIAM
GLAVARIS; and NANCY ELIZABETH
MICHAEL and JANE LOUISE FENTON,
individually and as next friends of A.S.M.,
minor child,

       Plaintiffs,

v.            CIVIL ACTION NO.  3:13-24068

KAREN S. COLE, in her official capacity as
CABELL COUNTY CLERK; and VERA J.
MCCORMICK, in her official capacity as
KANAWHA COUNTY CLERK,

       Defendants.

and

STATE OF WEST VIRGINIA

       Intervenor Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a motion by Defendant Vera J. McCormick to dismiss the complaint (ECF No. 26), a motion by Defendant Karen S. Cole to dismiss the complaint (ECF No. 31), and a motion by Intervenor Defendant the State of West Virginia to dismiss the complaint (ECF No. 34). Also pending are a motion by Defendant McCormick and Defendant Cole (collectively "Defendant Clerks") to strike Plaintiffs' notice of supplemental authority (ECF No. 45) and a motion by Intervenor Defendant the State of West Virginia to amend the deadline to respond to Plaintiffs' motion for summary judgment (ECF No. 53).

For the reasons stated below, the motion to strike (ECF No. 45) is **GRANTED in part**; the Court will consider the two exhibits attached to Plaintiffs' notice of supplemental authority but will not consider legal argument presented in the memorandum accompanying those exhibits. The Court **DENIES in part** Defendant Clerks' motions to dismiss (ECF Nos. 26, 31) and **RESERVES** ruling as to abstention arising from the issue of whether the existing Defendants are sufficient to bind state authorities and all county clerks, should a ruling on the merits be made in favor of Plaintiffs. The Court **DIRECTS** Plaintiffs, by **February 12, 2014**, to either 1) seek joinder of whatever additional parties they deem necessary to create greater certainty as to the effect of a ruling in this case, or 2) file a responsive pleading explaining why the existing Defendants in this lawsuit are sufficient to bind state authorities and all county clerks should a ruling on the merits be made in favor of Plaintiffs and why joinder of additional parties is not necessary. Defendants may file a response within seven days of Plaintiffs taking either action, and Plaintiffs may file a reply within three days of any response from Defendants.

The Court **GRANTS** the State's motion to dismiss (ECF No. 34) and accordingly **DISMISSES** Plaintiffs' claims pertaining to West Virginia Code Section 48-2-603 (the non-recognition provision); Plaintiffs' claims as to the other portions of the marriage ban may proceed. However, the Court **ORDERS** that Plaintiffs may amend their Complaint by **February 12, 2014**. Lastly, the Court **ORDERS** that Defendants shall have 14 days from entry of this Memorandum Opinion and Order to file any responses to Plaintiffs' motion for summary judgment. The Court accordingly **DENIES** as moot the State's motion to amend the deadline (ECF No. 53).

## I.      Statement of Facts

Plaintiffs in this case seek to overturn West Virginia Code Sections 48-2-104, 48-2-401, and 48-2-603, as well as "any other sources of West Virginia law that exclude same-sex couples from marriage or from recognition of marriages entered into in another jurisdiction" (collectively called the "marriage ban"). Compl. 28, ECF No. 8.

West Virginia Code Section 48-2-104 specifies the required contents for marriage license applications. Among other requirements, "[t]he application for a marriage license must contain a statement of the full names of both the female and the male parties" and "must contain the following statement: 'Marriage is designed to be a loving and lifelong union between a woman and a man.'" W. Va. Code § 48-2-104(a) & (c). Section 48-2-401 governs persons authorized to perform marriages and states in part, "Celebration or solemnization of a marriage means the performance of the formal act or ceremony by which a man and woman contract marriage and assume the status of husband and wife." Lastly, Section 48-2-603 prohibits a same-sex marriage performed outside of West Virginia from being recognized as a valid marriage within West Virginia: "A public act, record or judicial proceeding of any other state, territory, possession or tribe respecting a relationship between persons of the same sex that is treated as a marriage under the laws of the other state, territory, possession, or tribe, or a right or claim arising from such relationship, shall not be given effect by this state."

Six of the plaintiffs are gay and lesbian West Virginians, comprising three same-sex adult couples: Casie Jo McGee and Sarah Elizabeth Adkins; Justin Murdock and William Glavaris; and Nancy Elizabeth Michael and Jane Louise Fenton. The seventh plaintiff, A.S.M., is the minor child of Ms. Michael and Ms. Fenton. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 against Karen S. Cole, in her official capacity as Cabell County Clerk, and against Vera J. McCormick, in her official capacity as Kanawha County Clerk. Defendant Clerks are responsible

3

for issuing marriage licenses and recording marriages that take place in jurisdictions outside of West Virginia. Their responsibilities include ensuring that marriage licenses and records of out-of-state marriages conform with West Virginia law, including the West Virginia marriage ban. Plaintiffs argue that Defendant Clerks are violating Plaintiffs' due process rights and equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution. Plaintiffs accordingly request that this Court declare the marriage ban to be unconstitutional and enjoin enforcement of the marriage ban.

The State of West Virginia filed a motion to intervene as a defendant, pursuant to 28 U.S.C. § 2403(b)[1] and Federal Rules of Civil Procedure 5.1(c) and 24(a), to defend the constitutionality of the marriage ban. ECF No. 25. The Court granted this motion, allowing the State to proceed as an Intervenor Defendant. ECF No. 28.

Defendant Clerks and the State have each filed a separate motion to dismiss. ECF Nos. 26, 31, 34. Plaintiffs have filed a notice of supplemental authority in opposition to Defendant Clerks' motions to dismiss. ECF No. 44. Defendant Clerks jointly move for the Court to strike the notice of supplemental authority. ECF No. 45. All of these motions are now ripe for resolution and will be addressed in this Memorandum Opinion and Order.

Plaintiffs have also filed a motion for summary judgment. ECF No. 40. Defendant Clerks and the State jointly moved to stay briefing on Plaintiffs' motion for summary judgment until

---

[1] This section provides:

"In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality."

28 U.S.C. § 2403(b).

resolution of the motions to dismiss. ECF No. 43. In an Order dated January 17, 2014, the Court directed that Defendants' responses to Plaintiffs' motion for summary judgment would be due seven days after the entry of a Memorandum Opinion and Order resolving the motions to dismiss. ECF No. 52. The State has filed a motion to amend that deadline. ECF No. 53.

In Section II, the Court discusses the motion to strike. Section III examines whether the Court should abstain from exercising jurisdiction over this matter. Section IV discusses whether Plaintiffs have failed to state a claim for relief. Section V analyzes whether Plaintiffs have standing to challenge West Virginia Code Section 48-2-603, the non-recognition statute. Section VI discusses the State's motion to extend the deadline to respond to Plaintiffs' motion for summary judgment.

## II.    Motion to Strike

On January 3, 2014, Plaintiffs filed a notice of supplemental authority in opposition to the motions to dismiss filed by Defendant Clerks. ECF No. 44. Plaintiffs attached two recent decisions to this notice that they believe should be considered by the Court in ruling on the motions to dismiss. The first is a decision by the District Court for the District of Utah in *Kitchen v. Herbert*, holding that Utah's prohibition on same-sex marriage is unconstitutional. No. 2:13-CV-217, 2013 WL 6697874 (D. Utah Dec. 20, 2013). The second is a decision by the District Court for the Southern District of Ohio in *Obergefell v. Wymyslo*, holding that Ohio must recognize valid same-sex marriages from other states on Ohio death certificates. No. 1:13-CV-501, 2013 WL 6726688 (S.D. Ohio Dec. 23, 2013).

Defendant Clerks filed a joint motion to strike this notice of supplemental authority. ECF No. 45. They argue that pursuant to Local Rule of Civil Procedure 7.1(a)(7),[2] Plaintiffs were required to seek leave of the Court before filing this supplemental memorandum, which Plaintiffs did not do. Defendant Clerks argue that, in essence, this filing is an impermissible surreply and that, even had leave to file a surreply been requested, there would be no basis to grant that leave. Defendant Clerks point out that the two cases are outside the Fourth Circuit and rely upon case law that may conflict with Fourth Circuit precedent, making the decisions of limited value here. Furthermore, Defendant Clerks suggest that Plaintiffs did not timely bring these decisions to the Court's attention. *Kitchen v. Herbert* was issued three days before Plaintiffs filed a response to Defendant Cole's motion to dismiss, and *Obergefell v. Wymyslo*—issued the same day that Plaintiffs filed their response to Defendant Cole's motion to dismiss—was available for seven days before Defendant Cole filed her reply. Plaintiffs respond that their filing is not a surreply and instead should be treated as a notice of supplemental authority, although the federal rules and local rules do not explicitly allow such a filing.

The Court notes that Plaintiffs filed this notice of supplemental authority 11 and 14 days after the respective decisions were issued, shortly after the Court resumed normal operations following winter holidays. Although Plaintiffs should have sought leave before making this filing, as a practical matter the Court would have read these two cases regardless. For these reasons, the Court allows the exhibits but strikes any legal argument presented in the memorandum accompanying the exhibits. Therefore, the motion to strike is granted in part.

### III.    Abstention

---

[2] That Rule states in part: "Surreply memoranda shall not be filed except by leave of court. These times for serving memoranda may be modified by the judicial officer to whom the motion is addressed." L. R. Civ. P. 7.1(a)(7).

Defendant Clerks have filed separate motions to dismiss, each arguing that the Court should abstain from exercising jurisdiction in this case. As these arguments substantially overlap, the Court will discuss the arguments from both Clerks concerning abstention in this Section.

Abstention can take many forms, including the "*Burford* abstention doctrine," which is based on the Supreme Court's decision in *Burford v. Sun Oil Company,* 319 U.S. 315 (1943). As explained by the Fourth Circuit, the *Burford* abstention doctrine provides that "[c]ourts should abstain from deciding cases presenting 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' *or* whose adjudication in a federal forum 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *First Penn-Pac. Life Ins. Co. v. Evans*, 304 F.3d 345, 348 (4th Cir. 2002) (emphasis added) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 361 (1989) ("*NOPSI*")). If either one of these two prongs is met, the Court should abstain from exercising jurisdiction in this case. Notably, "abstention is . . . 'the exception, not the rule.'" *Id.* (quoting *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 813 (1976)). Many considerations factor into determining whether *Burford* abstention is appropriate in a given case:

> [W]hether the constitutional challenge is of minimal federal importance, involving only whether a state commission had properly applied the state's own regulations; the "intricacy" and importance of the state's regulatory scheme; whether the state had created a centralized system of judicial review, which permitted state courts to develop expertise in interpreting the scheme and the industry; the speed and adequacy of state court review; and the likelihood of "[d]elay, misunderstanding of local law, and needless federal conflict with the state policy."

*Goodhart v. Bd. of Visitors of Univ. of Va.*, 451 F. Supp. 2d 804, 807-08 (W.D. Va. 2006) (footnote omitted) (quoting *NOPSI*, 491 U.S. at 360).

In this Section, the Court will first discuss whether this case presents "difficult questions of state law." Then the Court will turn to whether adjudication here "would be disruptive of state efforts to establish a coherent policy." Lastly, the Court will analyze the effect that *Baker v. Nelson*, 409 U.S. 810 (1972), has on the issue of abstention, if any effect at all.

## A. Whether the case involves "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"

The Supreme Court discussed *Burford* abstention at length in *Ankenbrandt v. Richards*, 504 U.S. 689 (1992). In that case, a mother acting on behalf of her daughters brought a tort action against the father of her children and the father's girlfriend for child abuse. The Supreme Court examined whether the federal court should abstain from exercising jurisdiction over the case, which was in federal court solely based on diversity jurisdiction. In examining this issue, the Court found that there was a "domestic relations exception" to federal jurisdiction but construed this exception very narrowly. The Court held that "the domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Id.* at 703. However, cases seeking issuance of a decree were distinguished from cases seeking enforcement of a decree. *See id.* at 693-94. The Court explained the rationale behind the exception:

> Issuance of decrees of this type not infrequently involves retention of jurisdiction by the court and deployment of social workers to monitor compliance. As a matter of judicial economy, state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees. Moreover, as a matter of judicial expertise, it makes far more sense to retain the rule that federal courts lack power to issue these types of decrees because of the special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of such decrees.

*Id.* at 703-04.

8

The Court also acknowledged that *Burford* abstention "might be relevant in a case involving elements of the domestic relationship even when the parties do not seek divorce, alimony, or child custody." *Id.* at 705. The Court explained:

> This would be so when a case presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar. Such might well be the case if a federal suit were filed prior to effectuation of a divorce, alimony, or child custody decree, and the suit depended on a determination of the status of the parties.

*Id.* at 705-06 (citation omitted) (internal quotation marks omitted). Applying that logic to the case before it, the Court declined to abstain because "the status of the domestic relationship has been determined as a matter of state law, and in any event has no bearing on the underlying torts alleged." *Id.* at 706 (footnote omitted).

Defendant Clerks point to *Ankenbrandt* to support their argument that the case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," *First Penn-Pac.*, 304 F.3d at 348, thus making abstention appropriate. They argue that the Supreme Court's statement that *Burford* abstention "might be relevant in a case involving elements of the domestic relationship even when the parties do not seek divorce, alimony, or child custody," *Ankenbrandt*, 504 U.S. at 705, supports abstention in the instant case. The Court believes that this reading of the domestic relations exception is too expansive. The example given in *Ankenbrandt* of a case involving "difficult questions of state law" is a "suit depend[ing] on a determination of the status of the parties." *Id.* at 706. This indicates that abstention would be appropriate when disposition of the federal case depends on a state court's decision about how state domestic relations law should be interpreted and applied. The instant case, however, does not present such a situation. Like in *Ankenbrandt*, here "the status of the domestic relationship has [already] been determined as a

9

matter of state law," *id.*,—namely, state law has made it clear that same-sex marriages cannot be entered into or recorded in West Virginia.

This conclusion is also supported by *Zablocki v. Redhail*, 434 U.S. 374 (1978), where the plaintiffs challenged a Wisconsin statute prohibiting residents with child support obligations from marrying without first obtaining a court order granting permission to marry. In finding abstention inappropriate, the Supreme Court noted that there were "no ambiguities in the statute for the state courts to resolve." *Id.* at 379 n.5.[3] Like the statute in *Zablocki*, West Virginia's marriage ban is not ambiguous as to its prohibition of same-sex marriages. This case accordingly does not present "difficult questions of state law." Defendant Cole argues that the case at hand presents more complex issues than *Zablocki*, in part because Plaintiffs are attempting to redefine marriage. This argument misses the point, however, that the marriage ban is unambiguous and clear as to its impact on couples; that lack of ambiguity—and not the complexity of the case overall—is the relevant inquiry for determining whether the case presents a difficult question of state law. *See also Colo. River*, 424 U.S. at 815 (finding abstention inappropriate because "[w]hile state claims are involved in the case, the state law to be applied appears to be settled. No questions bearing on state policy are presented for decision.").

Fourth Circuit precedent further supports the finding that this case does not involve difficult questions of state law. In *Johnson v. Collins Entertainment Company*, 199 F.3d 710 (4th Cir. 1999), the Fourth Circuit found that the district court below should have abstained pursuant to *Burford* from exercising jurisdiction over a case alleging violations of South Carolina law and of the Racketeer Influenced Corrupt Organizations ("RICO") Act. In so finding, the Fourth Circuit noted that the parties contested the meaning of state gambling law and that the district

---

[3] The fact that the Court was not specifically discussing *Burford* abstention does not change the relevance of this point.

court "was necessarily trying to predict how the South Carolina Supreme Court would decide" that meaning. *Id.* at 720. Even though the plaintiffs also claimed RICO violations, the "[p]laintiffs' claims depend[ed] ultimately on alleged violations of state law for their predicate acts." *Id.* at 722. The Fourth Circuit came to the opposite conclusion in *Martin v. Stewart*, 499 F.3d 360 (4th Cir. 2007), finding that abstention was not appropriate in a case challenging South Carolina gambling law based on the Fourteenth Amendment's Due Process and Equal Protection Clauses. The Fourth Circuit found that interpretation of the statutes at that time did not present difficult questions of state law. For example, in regards to the claim that a certain statute was unconstitutionally vague, the Fourth Circuit noted:

> [T]he state law component of a vagueness challenge—whether limiting constructions apply to the language—is settled: the State's highest court has expressly held that the statutory text is to be given its ordinary meaning. The remaining question—whether the statute's ordinary meaning is unconstitutionally vague—is a matter of federal law. Thus, because state law is now "clear and certain," *Burford* abstention is inappropriate.

*Id.* at 366 (citation omitted). The Court finds that the instant case is more analogous to *Martin* than *Johnson*. Here, the interpretation of the West Virginia marriage ban is clear as an issue of state law; the only remaining issue is whether the ban violates federal law.

In summary, this case does not present difficult questions of state law, and therefore fails to satisfy the first possible ground for *Burford* abstention. Next, the Court turns to whether this case instead satisfies the second possible ground for abstention under *Burford*.

**B. Whether "adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern"**

Under the second ground for abstention in *Burford*, this Court should abstain from exercising jurisdiction in this case if the case's "adjudication in a federal forum 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *First Penn-Pac.*, 304 F.3d at 348. Although common sense indicates that

11

defining marriage is a matter of substantial public concern, it is a closer question whether this Court's adjudication of the case would be disruptive of state efforts to establish a coherent policy. In *Zablocki*, the Supreme Court found that the Minnesota statute—unambiguous on its face as to who had to obtain a court order before marrying—"does not involve complex issues of state law, resolution of which would be 'disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Zablocki*, 434 U.S. at 379 n.5 (quoting *Colo. River*, 424 U.S. at 814-15). Furthermore, the Supreme Court noted that "there is, of course, no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy." *Id.; see also Martin*, 499 F.3d at 367 (citing *Zablocki* and other cases for this proposition).

Defendant Clerks point to state legislative efforts over the past decade or so concerning same-sex marriage as evidence of "state efforts to establish a coherent policy," including a House of Delegates bill allowing civil unions between same-sex couples and a Senate joint resolution proposing a state constitutional amendment that would prohibit same-sex marriage. They argue that the state legislature—as the elected representatives of the citizens of West Virginia—should be given the opportunity to continue these efforts in the next legislative session. Defendants point to no cases, however, suggesting that legislative efforts to define domestic relations justify federal court abstention, and the Court has not found any. Additionally—although this point is more relevant for *Younger* abstention rather than *Burford* abstention—, there are no pending state court cases in West Virginia on the issue of same-sex marriage.

Defendant McCormick points out that if the marriage ban is struck down, only clerks in Kanawka and Cabell Counties will be impacted, resulting in confusion and the lack of a uniform

policy regarding same-sex marriages across West Virginia. Although it may be true that a state court trial-level case striking down the marriage ban would result in no less confusion and lack of uniformity, the Court is nonetheless troubled with how resolution of this case could create disjointed policy across West Virginia. Review of other cases has illustrated this concern. In *Zablocki*, for example, the plaintiffs brought suit against the County Clerk of Milwaukee County, individually and as representative of a class consisting of all county clerks in Wisconsin. Also, in *Martin v. Stewart*—challenging South Carolina gambling law—suit was brought against the Chief of the State Law Enforcement Division, the Attorney General, and the Solicitor of the Ninth Judicial Circuit. The Fourth Circuit noted that the claims did not "threaten a state interest in uniform regulation" because the plaintiff "launche[d] a *facial* attack on the state statutes *as a whole*—precisely the sort of case federal courts often and expertly entertain." 499 F.3d at 367 (emphasis in original). In *Martin*, there was certainty as to the result if the statutes at issue were ruled unconstitutional because the defendants collectively were deemed to represent the entire authority of the State of South Carolina. In *Kitchen v. Herbert*—striking down the prohibition of same-sex marriage found in Utah's Constitution—, the plaintiffs filed suit against the Governor of Utah, the Attorney General, and the Salt Lake County Clerk.

In contrast, however, the Court is not certain that the parties before it in the instant case are sufficient to bind all clerks and state officials in West Virginia should the marriage ban be struck down. Specifically, while it is generally true that "the intervenor is treated as if the intervenor were an original party and has equal standing with the original parties," 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1920 (3d ed.) (footnote omitted), the Court is concerned as to whether the State's inclusion as an Intervenor Defendant— represented by the Attorney General—is sufficient to support jurisdiction and create certainty as

to this case's effect on *all* clerks across West Virginia's two federal districts. The Court notes that the parties presented relatively little argument on this point. While this concern in creating a coherent policy is sufficient ground for abstention, the Court declines to so rule at this time. Instead, the Court reserves its determination of this factor in the abstention analysis. The Court directs Plaintiffs, by February 12, 2014, to either 1) seek joinder of whatever additional parties they deem necessary to create greater certainty as to the effect of a ruling in this case, or 2) file a responsive pleading explaining why the existing Defendants in this lawsuit are sufficient to bind state authorities and all county clerks should a ruling on the merits be made in favor of Plaintiffs and why joinder of additional parties is not necessary. Defendants may file a response within seven days of Plaintiffs taking either action, and Plaintiffs may file a reply within three days of any response from Defendants.

### C.  Effect of *Baker v. Nelson*

Defendant McCormick also argues that abstention is proper pursuant to *Baker v. Nelson*, 409 U.S. 810 (1972). That case was an appeal from a decision of the Supreme Court of Minnesota, which held below that 1) although a Minnesota statute defining marriage did not expressly prohibit same-sex marriage, neither did that statute authorize same-sex marriage, and 2) the statute did not violate the Fourteenth Amendment to the United States Constitution. *Baker v. Nelson*, 191 N.W.2d 185 (Minn. 1971). On appeal, the Supreme Court of the United States simply stated, "The appeal is dismissed for want of a substantial federal question." 409 U.S. at 810. Defendant McCormick argues that, because the U.S. Supreme Court found a substantial federal question lacking in *Baker*, this Court should likewise decline to exercise jurisdiction.

This Court must determine to what degree it is bound by the *Baker* decision. As explained by the Supreme Court in a subsequent case:

Because a summary affirmance is an affirmance of the judgment only, the rationale of the affirmance may not be gleaned solely from the opinion below.

"When we summarily affirm, without opinion, . . . we affirm the judgment but not necessarily the reasoning by which it was reached. . . ." (Footnote omitted.) Fusari v. Steinberg, 419 U.S. 379, 391-392, 95 S.Ct. 533, 541, 42 L.Ed.2d 521 (1975) (Burger, C. J., concurring).

Summary affirmances and dismissals for want of a substantial federal question without doubt reject the specific challenges presented in the statement of jurisdiction and do leave undisturbed the judgment appealed from. They do prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions.

*Mandel v. Bradley*, 432 U.S. 173, 176 (1977). Although summary affirmance of a specific question is binding on lower courts as a general rule, there are circumstances where that summary affirmance is no longer binding. For example, "[t]he precedential significance of the summary action . . . is to be assessed in the light of all of the facts in that case," with special attention paid to whether "those facts are very different from the facts of [the pending] case." *Id.* at 177.

In *Hicks v. Miranda*, 422 U.S. 332 (1975), the Supreme Court discussed other circumstances where a summary decision is no longer binding. The Supreme Court in *Hicks* found that the district court below erroneously disregarded the Supreme Court's summary decision from another case. In so finding, the Supreme Court noted:

The District Court should have followed the Second Circuit's advice, first, in Port Authority Bondholders Protective Committee v. Port of New York Authority, 387 F.2d 259, 263 n. 3 (1967), that ["]unless and until the Supreme Court should instruct otherwise, inferior federal courts had best adhere to the view that if the Court has branded a question as unsubstantial, it remains so except when doctrinal developments indicate otherwise["] and, later, in Doe v. Hodgson, 478 F.2d 537, 539, cert. denied, sub nom. Doe v. Brennan, 414 U.S. 1096, 94 S. Ct. 732, 38 L.Ed.2d 555 (1973), that the lower courts are bound by summary decisions by this Court "until such time as the Court informs (them) that (they) are not."

*Hicks*, 422 U.S. at 344-45.[4]

The Court acknowledges that the questions presented by *Baker* and the instant case are similar in some regards. Both are challenging the constitutionality of a state statute which prohibits same-sex marriage. Both challenge the state statutes on the grounds of due process and equal protection. And the decision of the Supreme Court of Minnesota indeed appears to rest on a finding that the statute presents neither a due process violation nor an equal protection violation. *See Baker*, 191 N.W.2d at 187 ("The equal protection clause of the Fourteenth Amendment, like the due process clause, is not offended by the state's classification of persons authorized to marry."). Plaintiffs argue, however, that vital differences between the cases mean that *Baker* is not binding precedent. For example, the instant case includes claims on behalf of a minor child of the one of the couples. The instant case alleges discrimination based on sexual orientation, sex, and parental status. *Baker*, however, appeared to rest solely on analysis of discrimination based on sex. *Id.* ("[I]n commonsense and in a constitutional sense, there is a clear distinction between a marital restriction based merely upon race and one based upon the fundamental difference in sex."). However, as explained by the Second Circuit, the precise issue presented and decided in *Baker* was "whether same-sex marriage may be constitutionally restricted by the states." *Windsor v. United States,* 699 F.3d 169, 178 (2d Cir. 2012), *aff'd,* 133 S. Ct. 2675 (U.S. 2013). That is the same issue presented here. Therefore, at this time, the Court declines to find that differences in the facts of each case or the issues presented warrant non-application of *Baker* to this case.

---

[4] The fact that this doctrinal developments exception comes from the Second Circuit does not suggest that it is limited to cases involving application of Second Circuit law. After all, the Supreme Court applied that exception in *Hicks*, which was an appeal from a district court within the Ninth Circuit.

Doctrinal developments since *Baker*, however, do justify a finding that *Baker* is nonbinding. As noted by the Second Circuit in *Windsor v. United States*, "[e]ven if *Baker* might have had resonance . . . in 1971, it does not today." 699 F.3d at 178. In *Windsor*, the Second Circuit found that *Baker* did not foreclose jurisdiction over review of the federal Defense of Marriage Act ("DOMA"). Citing *Hicks*'s discussion of doctrinal developments, the Second Circuit found that doctrinal developments in the Supreme Court's equal protection jurisprudence foreclosed the application of *Baker*. Those developments included: the creation of the term "intermediate scrutiny" in *Craig v. Boren*, 429 U.S. 190, 218 (1976) (Rhenquist, J., dissenting); the treatment of classifications based on sex and illegitimacy as quasi-suspect, as seen in *Lalli v. Lalli,* 439 U.S. 259, 264-65 (1978); and the Supreme Court ruling there was no rational basis for "a classification of [homosexuals] undertaken for its own sake," as explained in *Romer v. Evans,* 517 U.S. 620, 635 (1996). *Windsor*, 699 F.3d at 178-79.[5]

In *Kitchen v. Herbert*, the District Court for the District of Utah likewise found that "the [Supreme] Court's summary dismissal in *Baker* has little if any precedential effect today" in light of doctrinal developments in equal protection and due process jurisprudence. 2013 WL 6697874, at *8. Furthermore, the district court found that the Supreme Court's decision in *Windsor* represented yet another "significant doctrinal development," as "the *Windsor* Court foresaw that its ruling would precede a number of lawsuits in state and lower federal courts raising the question of a state's ability to prohibit same-sex marriage, a fact that was noted by two dissenting justices"—Justices Roberts and Scalia. *Id*. In *Bishop v. United States*, the District Court for the Northern District of Oklahoma reached a similar conclusion about doctrinal

---

[5] The Supreme Court's affirmance of the Second Circuit's decision in *Windsor* did not discuss *Baker*, but neither did it critique the Second Circuit's analysis of *Baker*'s applicability. *United States v. Windsor*, 133 S. Ct. 2675 (U.S. 2013).

developments since *Baker* and about the effect of the Supreme Court's *Windsor* decision. No. 04-CV-848-TCK-TLW at *32-34 (N.D. Okla. Jan. 14, 2014) (in regards to the latter point, explaining that "statements made by the [Supreme Court] Justices [in *Windsor*] indicate that lower courts should be applying *Windsor* (and not *Baker*) to the logical 'next issue' of state prohibitions of same-sex marriage. . . . If *Baker* is binding, lower courts would have no reason to apply or distinguish *Windsor*, and all this judicial hand-wringing over how lower courts should apply *Windsor* would be superfluous."). Although not binding on this Court, the reasoning in these cases is persuasive, and the Court need not repeat their full discussion of these issues here.

     *Kitchen* acknowledges that some federal courts have recently treated *Baker* as controlling precedent. For example, the First Circuit found *Baker* to be binding precedent because it had not yet been repudiated by the Supreme Court. *Massachusetts v. U.S. Dep't of Health & Human Servs.*, 682 F.3d 1, 8 (1st Cir. 2012), *cert. denied*, 133 S. Ct. 2884 (U.S. 2013) *and* 133 S. Ct. 2887 (U.S. 2013). However, the First Circuit did not even discuss the doctrinal developments exception. The District Court for the District of Nevada also found *Baker* controlling, seeming to suggest that even if doctrinal developments had occurred since a case was handed down, that case was nonetheless binding until the Supreme Court stated otherwise. *Sevcik v. Sandoval*, 911 F. Supp. 2d 996, 1002 (D. Nev. 2012).[6] Both cases preceded the Supreme Court's decision in *Windsor*, a decision which, as explained above, showed additional doctrinal development in relevant jurisprudence. The Court disagrees with the analysis of doctrinal developments conducted in those two cases and accordingly finds that *Baker* is not binding on the current case and does not justify abstention here.

---

[6] However, the district court acknowledged that "the present equal protection claim is precluded by *Baker* insofar as the claim does not rely on the *Romer* line of cases, and Defendants are entitled to dismissal in part, accordingly." *Id.* at 1003. The court, in essence, treated *Romer* as a new doctrinal development.

In summary, the Court reserves ruling on the issue of whether the existing Defendants are sufficient to bind state authorities and all county clerks should a ruling on the merits be made in favor of Plaintiffs. In all other regards, Defendant Clerks' arguments regarding abstention are rejected.

## IV. Failure to State a Claim

Defendant McCormick argues very briefly in her motion to dismiss that Plaintiffs' Complaint should be dismissed for failure to state a claim upon which relief may be granted. She argues that because there is no controlling case law that invalidates West Virginia's marriage ban, Plaintiffs have failed to sufficiently plead a claim for relief. The Court rejects this argument. There is no requirement that a court with controlling jurisdiction have already invalidated a state's same-sex marriage ban in order for a plaintiff to have sufficiently pled that a state's marriage ban is unconstitutional. Defendant McCormick's cursory suggestion that the state ban is rationally related to a legitimate government interest and is presumptively constitutional may be a valid defense, but it does not render Plaintiffs' claims insufficient as a matter of law. Plaintiffs have met their burden at this stage. Defendant Clerks have reserved the right to file subsequent motions to dismiss addressing other grounds for dismissal. Thus, the Court at this time declines to dismiss the case for failure to state a claim.

## V.   Standing to Challenge the Non-Recognition Statute

The State of West Virginia has also filed a motion to dismiss, arguing that Plaintiffs do not have standing to challenge the constitutionality of West Virginia's marriage non-recognition statute, found at West Virginia Code Section 48-2-603.[7] State's Mot. Dismiss, ECF No. 34.[8]

---

[7] As discussed above, this section prohibits a same-sex marriage performed outside of West Virginia from being recognized as a valid marriage within West Virginia:

Because Plaintiffs lack standing, Defendant argues, the Court does not have subject-matter jurisdiction with regard to the claims under Section 48-2-603 and should therefore dismiss those claims.

Standing requires that the following three elements be met: 1) "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" 2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court;" and 3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (alternation in original) (footnote omitted) (citations omitted) (internal quotation marks omitted). In regard to the first prong, the Supreme Court has explained that "[b]y particularized, [it] mean[s] that the injury must affect the plaintiff in a personal and individual way." *Id.* at 560 n.1.

Defendant argues that Plaintiffs have not pled an injury that results from the operation of Section 48-2-603. Plaintiff couples clearly allege a desire to get married in West Virginia and that they are legally qualified to do so if not for the fact they each couple is same-sex. Compl. ¶

---

"A public act, record or judicial proceeding of any other state, territory, possession or tribe respecting a relationship between persons of the same sex that is treated as a marriage under the laws of the other state, territory, possession, or tribe, or a right or claim arising from such relationship, shall not be given effect by this state."

W. Va. Code § 48-2-603.

[8] This argument is the only one raised in the State's Motion to Dismiss. The State does not otherwise join in the grounds for dismissal discussed in the other two motions to dismiss. Neither does the State claim that Plaintiffs lack standing to challenge the other components of the West Virginia marriage ban.

21 ("But for the fact that they are of the same sex, each Plaintiff couple is legally qualified to marry under the laws of West Virginia and wishes to marry in the State."). The Complaint also states that each couple attempted to obtain a marriage license in West Virginia but that their requests were denied. *Id.* ¶¶ 22, 23, 24. However, Defendant argues that allegations regarding marriage *outside* of West Virginia are missing from the Complaint:

> Plaintiffs do not allege that they have valid marriages from other jurisdictions, that they have taken any steps to obtain valid marriages from other jurisdictions, that they intend to be married in other jurisdictions, or that they would have obtained a valid marriage from another jurisdiction if West Virginia recognized out-of-state same-sex marriages. Indeed, they do not even allege that they meet the qualifications to be married in any other jurisdiction.

State's Mot. Dismiss 5.

In reviewing the Complaint, the Court is led to the same conclusion. Plaintiffs do not allege an intent or desire to marry elsewhere if that marriage would be recognized in West Virginia. Neither do they allege that they legally are qualified to do so. The closest that the Complaint comes to such an allegation is the statement that "the adult Plaintiffs and other same-sex couples . . . are also denied the ability to have a valid marriage from another jurisdiction recorded or recognized in West Virginia." Compl. ¶ 26.

Attached to Plaintiffs' response to the State's motion to dismiss are declarations from the adult Plaintiffs, some of whom explain that they would marry in another state if they knew that West Virginia would recognize that out-of-state marriage. *See, e.g.,* Decl. Casie McGee ¶ 15, ECF No. 39-1 ("[W]e would marry in another state if we thought we could have our marriage respected and recognized here at home [in West Virginia]."). The Court must determine whether it can consider these declarations for purposes of ruling on the State's motion to dismiss. The Supreme Court has explained in which situations additional evidence can be considered on a challenge to subject-matter jurisdiction:

[A] defendant may challenge subject matter jurisdiction in one of two ways. *See Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982). First, the defendant may contend "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Id.* When a defendant makes a facial challenge to subject matter jurisdiction, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.* In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.

In the alternative, the defendant can contend . . . "that the jurisdictional allegations of the complaint [are] not true." *Adams,* 697 F.2d at 1219. The plaintiff in this latter situation is afforded less procedural protection: If the defendant challenges the factual predicate of subject matter jurisdiction, "[a] trial court may then go beyond the allegations of the complaint *and in an evidentiary hearing* determine if there are facts to support the jurisdictional allegations," without converting the motion to a summary judgment proceeding. *Id.* (emphasis added). In that situation, the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.

*Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (emphasis in original).

Defendant is not arguing that Plaintiffs' allegations in the Complaint are not true. Rather, Defendant argues that Plaintiffs have not sufficiently alleged an injury caused by Section 48-2-603. Therefore, Defendant's attack falls into the first sort of challenge noted above. Accordingly, while the allegations in the Complaint will be taken as true, the declarations attached to Plaintiffs' response will not be considered at this point. The Court will only rely on the allegations in the Complaint when deciding the State's motion to dismiss.

Having determined what evidence will be considered, the Court now examines whether standing is met here. The Ninth Circuit addressed the issue of standing in *Smelt v. County of Orange*, 447 F.3d 673 (9th Cir. 2006). In that case, a California same-sex couple challenged Section 2 of DOMA, under which no state was required to recognize any same-sex marriage

entered into in another state.[9] The Ninth Circuit found that the couple lacked standing because "[n]o state has determined that Smelt and Hammer are married." *Id.* at 683. It elaborated that "[w]ere they to change their residence to Massachusetts [the only state at that time which allowed same-sex marriage], their situation might change, but they have placed nothing before us to suggest that they have gone, or intend to go, to that state." *Id.* (footnote omitted). Therefore, "while Section 2 may affect someone who has been declared married in some state, Smelt and Hammer do not come within that category of people." *Id.*; *see also Walker v. Barbour*, No. CIV.A. 3:08CV96TSLJC, 2009 WL 691972, at *2 (S.D. Miss. Mar. 12, 2009) (finding no standing to challenge Section 2 of DOMA for same reason).

Plaintiffs' attempts to re-cast the reasoning of *Smelt* are unpersuasive. They argue that the couple in *Smelt* lacked standing because marriage for that couple was an impossibility unless they moved to Massachusetts. The Court disagrees. The Ninth Circuit made it clear that the couple lacked standing because they neither were married nor alleged an *intent* to marry elsewhere. Plaintiffs point out that Section 2 of DOMA was permissive—simply providing that a state could not be forced to recognize same-sex marriages—but that point does not change *Smelt*'s parallel to the instant case.[10]

_____

[9] Section 2 of DOMA states:

> "No State, territory, or possession of the United States, or Indian tribe, shall be required to give effect to any public act, record, or judicial proceeding of any other State, territory, possession, or tribe respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State, territory, possession, or tribe, or a right or claim arising from such relationship."

28 U.S.C. § 1738C.

[10] The Court relies on *Smelt* solely for the Ninth Circuit's discussion that standing was lacking because the plaintiffs were not married in another state nor pled their intent to marry in another state. The Court is not adopting the reasoning found in other portions of the opinion.

Plaintiffs argue that they are not required to marry outside of West Virginia and then seek to have that marriage recognized in West Virginia in order to have standing because those efforts would be futile. It is clear that were Plaintiffs to attempt to have an out-of-state marriage recognized in West Virginia, that request would be denied, and Defendants do not argue otherwise. The Supreme Court discussed futility in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), noting that the touchstone for determining whether a threatened plaintiff has standing to challenge actions by the government or private parties—without first exposing himself or herself to liability by engaging in certain behavior—is coercion. For example:

> [W]here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced. The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction.

*Id.* at 128-29 (emphasis in original). In other words, where "the plaintiff had eliminated the imminent threat of harm by simply not doing what he claimed the right to do . . . [t]hat did not preclude subject-matter jurisdiction because the threat-eliminating behavior was effectively coerced." *Id.* at 129. Thus, a court will not require a plaintiff to engage in behavior that could risk criminal sanctions or great personal or business loss before challenging the constitutionality of a statute or the legality of certain actions. *Id.* at 134 ("The rule that a plaintiff must destroy a large building, bet the farm, or (as here) risk treble damages and the loss of 80 percent of its business before seeking a declaration of its actively contested legal rights finds no support in Article III." (footnote omitted)).

Plaintiffs cite this case in support of their futility argument, but the Court does not find *MedImmune* to be supportive. Here, Plaintiffs do not risk criminal sanctions or personal ruination if they are married in another state and then seek to have that marriage recognized here.

Although obtaining an out-of-state marriage will entail some time and personal cost and a West Virginia clerk's refusal to recognize the marriage may result in embarrassment, sadness, or anger, these are not the sorts of risks that suggest that Plaintiffs are "coerced" into not seeking a marriage out-of-state.

The Supreme Court also discussed the issue of futility in *Babbitt v. United Farm Workers National Union*, where a farmworkers' union sought to challenge Arizona's statutory procedures for agricultural workers to elect bargaining representatives, arguing "that the statutory election procedures frustrate rather than facilitate democratic selection of bargaining representatives." 442 U.S. 289, 300 (1979). Although the union "declined to pursue those procedures [before filing suit] . . . due to the procedures' asserted futility," the Supreme Court nonetheless found that the union had standing to challenge the procedures. *Id.* The Court noted that the union "has in the past sought to represent Arizona farmworkers and has asserted in its complaint a desire to organize such workers and to represent them in collective bargaining." *Id.* This indicates that the standing analysis rested at least in part on the union's pleading in the complaint of a desire to engage in election activities should the barriers creating futility be eliminated.

Plaintiffs also point to the Supreme Court's discrimination jurisprudence. In employment discrimination cases, for example, a plaintiff is not necessarily required to actually apply for a job with a discriminatory employer in order to recover for discrimination because "[w]hen a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365-66 (1977). However, "[b]ecause he is necessarily claiming that he was deterred from applying for the job by the employer's discriminatory practices, his is the not

always easy burden of proving that he would have applied for the job had it not been for those practices." *Id.* at 367-68.

The Court finds that even if a certain activity is futile, a plaintiff must nonetheless demonstrate willingness to engage in the activity were it not for a barrier in place that makes the activity futile. Just as a plaintiff alleging employment discrimination must allege that he or she would have applied for the job but for the discrimination, and just as a union must allege that it would invoke electoral procedures were those procedures not ineffective, so too must Plaintiffs here allege that they would indeed get married in another state but for the fact that West Virginia does not recognize those out-of-state same-sex marriages. Plaintiffs have failed to so allege. Therefore, the Court finds that Plaintiffs lack constitutional standing to challenge West Virginia Code Section 48-2-603.

Having found that standing is lacking, the Court need not reach the State's arguments about prudential standing. However, it is necessary to address a few other arguments that Plaintiffs bring up in support of their alleged standing. Plaintiffs argue that allowing them to only challenge the statute prohibiting in-state same-sex marriages—but not the non-recognition statute—would subject same-sex couples to an impermissible burden should the Court in fact strike down the in-state same-sex marriage ban. In that situation, it may be that if Plaintiffs wanted to be recognized as married in West Virginia, they would have to be married in the state itself rather than alternatively going outside of the state and then having the marriage recorded here—a burden which different-sex couples do not face. Plaintiffs point to no authority, and the Court has not found any, showing that this argument confers standing which otherwise would not lie, however. Plaintiffs also argue that if the non-recognition statute stands while the other components of the marriage ban are struck down, they will constantly be forced to provide proof

that they were married within the state, as opposed to another state, in order to have their marriage given its due respect within West Virginia. However, this injury is too conjectural and speculative to create an injury. There is no evidence that somebody inquiring into Plaintiffs' marital status—for example, a hospital administrator inquiring into spousal health insurance coverage—would actually ask for this proof.

Additionally, Plaintiffs argue that their claims as to the non-recognition statute should continue because all of the statutes comprising the marriage ban together harm Plaintiffs' dignitary interests. This point is not sufficient to confer standing where it is otherwise lacking. Lastly, Plaintiffs argue that the statutes comprising the marriage ban were all passed with the same discriminatory animus and therefore the entire marriage ban must proceed to adjudication on the merits. This consideration, however, does not factor into the standing analysis. Furthermore, even if the non-recognition statute remained in place, it would not prevent Plaintiffs from receiving relief with regards to the other portions of the West Virginia marriage ban—namely, if the other portions of the marriage ban were struck down, Plaintiffs would be able to get married in West Virginia even if the non-recognition statute remained.

The Court acknowledges that it would be preferable to adjudicate the constitutionality of the entire same-sex marriage ban in one case as opposed to two, in terms of efficiency and because of the overlap in the analysis that would surely occur. Those considerations, however, do not excuse Plaintiffs from the requirement to demonstrate standing. Accordingly, the Court grants the State of West Virginia's motion to dismiss, and dismisses from the case all claims that relate to West Virginia Code Section 48-2-603. Plaintiffs may proceed in challenging other portions of the marriage ban.[11]

---

[11] The Court clarifies that this dismissal is without prejudice. Should Plaintiffs desire to amend

### VI.     Motion to Amend Deadline

In an Order dated January 17, 2014, the Court directed that Defendants' responses to Plaintiffs' motion for summary judgment would be due seven days after the entry of a Memorandum Opinion and Order resolving the motions to dismiss. ECF No. 52. The State has filed a motion to amend that deadline, asking that all Defendants have until February 7, 2014, or seven days after resolution of the motions to dismiss, whichever is later, to respond to Plaintiffs' motion for summary judgment. ECF No. 53. The State noted that Plaintiffs would not agree to this amendment unless Defendants entered into a compressed schedule for remaining filings.

Although Plaintiffs have the opportunity to amend the Complaint and/or join additional parties as outlined in this Memorandum Opinion and Order, the Court is inclined to nonetheless allow briefing to proceed regarding Plaintiffs' motion for summary judgment. For reasons appearing to the Court, the Court directs that Defendants shall have 14 days from entry of this Memorandum Opinion and Order to file any responses to Plaintiffs' motion for summary judgment. The State's motion to amend the deadline is accordingly denied as moot. At the same time, however, the Court notes that short extensions like that requested by the State are routinely granted, as they do not create unnecessary or extraordinary delay. All parties are advised to be mindful of professional courtesy should requests for extensions arise in the future.

### VII.     Conclusion

For the reasons stated above, the motion to strike (ECF No. 45) is **GRANTED in part**; the Court will consider the two exhibits attached to Plaintiffs' notice of supplemental authority but will not consider legal argument presented in the memorandum accompanying those exhibits. The Court **DENIES in part** Defendant Clerks' motions to dismiss (ECF Nos. 26, 31) and

---

the Complaint to reassert their claims regarding the non-recognition statute, they must do so by the same date outlined in the discussion of abstention, that is, by February 12, 2014.

28

**RESERVES** ruling as to abstention arising from the issue of whether the existing Defendants are sufficient to bind state authorities and all county clerks, should a ruling on the merits be made in favor of Plaintiffs. The Court **DIRECTS** Plaintiffs, by **February 12, 2014**, to either 1) seek joinder of whatever additional parties they deem necessary to create greater certainty as to the effect of a ruling in this case, or 2) file a responsive pleading explaining why the existing Defendants in this lawsuit are sufficient to bind state authorities and all county clerks should a ruling on the merits be made in favor of Plaintiffs and why joinder of additional parties is not necessary. Defendants may file a response within seven days of Plaintiffs taking either action, and Plaintiffs may file a reply within three days of any response from Defendants.

The Court **GRANTS** the State's motion to dismiss (ECF No. 34) and accordingly **DISMISSES** Plaintiffs' claims pertaining to West Virginia Code Section 48-2-603 (the non-recognition provision); Plaintiffs' claims as to the other portions of the marriage ban may proceed. However, the Court **ORDERS** that Plaintiffs may amend their Complaint by **February 12, 2014**. Lastly, the Court **ORDERS** that Defendants shall have 14 days from entry of this Memorandum Opinion and Order to file any responses to Plaintiffs' motion for summary judgment. The Court accordingly **DENIES** as moot the State's motion to amend the deadline (ECF No. 53).

Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        January 29, 2014

ROBERT C. CHAMBERS, CHIEF JUDGE

29