UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

CASIE JO MCGEE and SARAH ELIZABETH
ADKINS; JUSTIN MURDOCK and WILLIAM
GLAVARIS; and NANCY ELIZABETH
MICHAEL and JANE LOUISE FENTON,
individually and as next friends of A.S.M., a minor
child;

        *Plaintiffs,*

        v.

KAREN S. COLE, in her official capacity as
CABEL COUNTY CLERK; and VERA J.
MCCORMICK, in her official capacity as
KANAWHA COUNTY CLERK;

        *Defendants,*

        and

STATE OF WEST VIRGINIA;

        *Defendant-Intervenor.*

No. 3:13-cv-24068
Hon. Robert Chambers

**MEMORANDUM OF LAW IN RESPONSE TO**
**COURT'S ORDER OF JANUARY 29, 2014**

    **COMES NOW** Plaintiffs, Casie Jo McGee and Sarah Elizabeth Adkins, Justin Murdock

and William Glavaris, and Nancy Elizabeth Michael and Jane Louise Fenton (individually and as

next friends of A.S.M.) (collectively, "Plaintiffs"), by counsel, and hereby submit the following

brief in response to this Court's Memorandum Opinion and Order of January 29, 2014 (D.E. 56),

and in further opposition to the Motions to Dismiss filed by Defendant Karen S. Cole, in her

official capacity as Cabell County Clerk (D.E. 31), and Defendant Vera J. McCormick, in her official capacity as Kanawha County Clerk (D.E. 26).

## INTRODUCTION

Plaintiffs are three loving and devoted same-sex couples ("Adult Plaintiffs"), and a child of one of the couples ("Child Plaintiff") (collectively, "Plaintiffs") who have been excluded from marriage by civil law. They seek to overturn West Virginia Code Sections 48-2-104 and 48-2-401, as well as "any other sources of West Virginia law that exclude same-sex couples from marriage" (the state's "marriage ban"). Complaint (D.E. 8) at 28.

The Defendant Clerks separately filed Motions to Dismiss Plaintiffs' Complaint, contending that this Court should abstain from deciding this case under the *Burford* abstention doctrine. *See Burford v. Sun Oil Co.*, 319 US. 315 (1943). On January 29, 2014, this Court issued a Memorandum Order and Opinion ("Opinion") rejecting in large part the Defendant Clerks' contentions.   D.E. 56.   The Court reserved judgment, however, as to whether "adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Opinion at 13-14. Although Defendant McCormick had conceded in her motion that "each and every County Clerk will be impacted by this decision, as well as each and every same-sex couple seeking to marry in this State" (D.E. 27 at 5), the Court noted that it was "not certain that the parties before it in the instant case are sufficient to bind all clerks and state officials in West Virginia should the marriage ban be struck down." Opinion at 13. The Court accordingly instructed Plaintiffs to either seek to amend their complaint or "file a responsive [brief] explaining why the existing Defendants in this lawsuit are sufficient to bind state authorities and all county clerks should a ruling on the merits be made in

favor of Plaintiffs and why joinder of additional parties is not necessary." Opinion at 14. Plaintiffs hereby submit this memorandum as that responsive brief.

**ARGUMENT**

**I.     A Judgment Against the County Clerk Defendants Is Sufficient To Bind All State Authorities and Invalidate the State's Marriage Ban Statewide.**

If the Court grants judgment for Plaintiffs in this case, it will create a ruling that has state-wide effect.  This is so for three reasons.  First, by intervening in this case to defend the constitutionality of West Virginia's marriage ban, the State has become a party and would be precluded by this Court's decision from defending the marriage ban in future cases.  Second, even if the State were not a party, there is privity between the Defendant Clerks and the State, as well as West Virginia's other county clerks, as regards marriage licenses; accordingly, a judgment for the Plaintiffs by this Court would necessarily have preclusive effect that extends statewide.  Third, Plaintiffs present a facial constitutional challenge to West Virginia's marriage ban—not only as to Plaintiffs, but in *all* circumstances in which the government might apply the statute.  The inherent effect of such a facial invalidation is that it extends beyond any individual Plaintiffs at issue—and, here, extends statewide.

**A.     The State's Intervention Under 28 U.S.C. § 2403(b) Binds the State to this Court's Decisions.**

Although Plaintiffs originally named only County Clerks Cole and McCormick as Defendants in this suit, the State elected to intervene under 28 U.S.C. § 2403(b).  That statute provides that when a State is not a party to a suit in which the constitutionality of a law affecting the public interest is challenged, the court "shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of

3

constitutionality." 28 U.S.C. § 2403(b). Moreover, in so doing, the State shall "have all the rights of a party," but shall be liable only for certain court costs. *Id.*

An intervenor "renders itself 'vulnerable to complete adjudication by the federal court of the issues in litigation between the intervenor and the adverse party.'" *Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007, 1017 (D.C. Cir. 1985) (quoting *United States v. Oregon*, 657 F.2d 1009, 1014 (9th Cir. 1981) (Kennedy, J.)). Accordingly, intervenors with a full and fair opportunity to litigate a matter are precluded from re-litigating those matters again. *See, e.g., Rafferty v. City of Youngstown*, 54 F.3d 278, 282 (6th Cir. 1995) (police officers were bound under *res judicata* by a consent decree entered in prior litigation, because the Fraternal Organization of Police had intervened in the prior litigation to assert their interests); *Cook Cnty. v. MidCon Corp.*, 773 F.2d 892, 903-04 (7th Cir. 1985) (intervenors in a prior action had been afforded the "full and fair opportunity" to litigate any issues in a prior action, and thus were bound by the earlier judgment); *Ross v. Alaska*, 189 F.3d 1107, 1112-13 (9th Cir. 1999) (where Alaska Republican Party had intervened in a prior state-court proceeding solely for purposes of appeal, the Party was nevertheless bound by the earlier judgment and could not relitigate the issue because it had a "full and fair opportunity" to litigate it earlier).

The fact that the intervening party is the State is immaterial. In *Maine v. Taylor*, the Supreme Court permitted Maine to appeal a judgment in a case in which it had intervened pursuant to 28 U.S.C. § 2403(b), notwithstanding the fact that the United States, an original party to the case, had not. 477 U.S. 131, 136 (1986). The Court reasoned that "if the judgment of the Court of Appeals is left undisturbed, the State will be bound by the conclusive adjudication that its import ban is unconstitutional." *Id.* at 137; *see also, e.g., Cal. Dep't of Soc. Servs. v. Thompson*, 321 F.3d 835, 846 (9th Cir. 2003) ("[R]es judicata principles would, at present,

prevent the State itself from pursuing a second action against the Secretary"); *Micklus v. Greer*, 705 F.2d 314, 317 (8th Cir. 1983) (*res judicata* bars successive suits against different state officers for acts allegedly "committed by the state").

Moreover, the plain language of Section 2403(b) does not exempt the State from normal rules of preclusion applicable to intervenors. While intervention under Section 2403(b) does not waive a State's sovereign immunity for purposes of damages liability, it *does* render a State a party for other purposes. For example, intervention pursuant to Section 2403 renders the intervening government a party for purposes of determining the time in which to take an appeal under Rule 4(a)(1). *See United Steelworkers of Am. v. Jones & Lamson Mach.Co.*, 854 F.2d 629 (2d Cir. 1988) (per curiam) (holding that the parties had 60 days rather than 30 days because the United States had intervened and was therefore a "party"); *Patten v. Foley's*, 66 F. App'x 188, 190 (10th Cir. 2003) (same). Indeed, Section 2403(b) expressly affords an intervening State "all the rights of a party." *See Taylor*, 477 U.S. at 136 (state has "all the rights of a party," including—to the extent it satisfies standing—the right to pursue an appeal); *see also Ruotolo v. Ruotolo*, 572 F.2d 336, 339 (1st Cir. 1978) (intervention permits government to "play an active role during the pendency of private litigation"). One such right of a party is recourse to the rules of *res judicata*. *See Alabama v. North Carolina*, 560 U.S. 330, 362-63 (2010) (Roberts, C.J., concurring and dissenting) ("As a party, the Commission enjoys legally enforceable rights . . . . It may object to settlement, seek taxation of costs, advance arguments we are obliged to consider, and plead the judgment as res judicata in future litigation."); *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (protecting a defendant's "right to rely upon the plea of *res judicata*" (quotation marks omitted)); *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans' Affairs*, 260 F.3d 1365, 1373 (Fed. Cir. 2001) ("'[a] party [to an action] is . . . entitled

to the benefits of the rules of res judicata with respect to determinations made while he was a party" (quoting Restatement (Second) of Judgments § 34(2) (1982)) (brackets in original)).

Accordingly, because the State has intervened as a party under Section 2403(b), and has a full and fair opportunity to litigate the constitutionality of the marriage ban in this Court, a judgment by this Court striking down the marriage ban would prevent the State, and accordingly, all state officials in West Virginia, from taking a contrary position in future cases.

**B.      The State and All County Clerks Would Be Bound by the Preclusive Effect of this Court's Judgment.**

Even if the State were not directly bound as a party in this case, it would be bound due to the participation of the County Clerks as defendants.  The State's mechanism for issuing marriage licenses is a unitary one, in which the County Clerks perform ministerial duties in support of the legislature's state-wide marriage scheme.  Accordingly, the County Clerks and the State are necessarily in privity, and a judgment as to one is preclusive as to them all.

**1.      In Issuing Marriage Licenses, West Virginia's County Clerks Perform a Ministerial Function as Executors of State Law, and under the State's Supervision**

In West Virginia, there is one scheme of marriage, applicable in all of its 55 counties—a scheme governed by state statutes and supervised by the State through the powers vested in the State Registrar.   In issuing marriage licenses, the Clerks in each County therefore act as functionaries of the State, under its direct supervision—an inextricable link between the State and its County Clerks that, as set forth in the following section, gives state-wide effect to any judgment for the Plaintiffs against the County Clerk Defendants in this case.

Under the State's comprehensive statutory scheme governing the issuance of marriage licenses, the County Clerks are the officers granted authority to issue marriage licenses. *See* W. Va. Code § 48-2-102.  Accordingly, they are the officers amenable to suit in federal court under

the *Ex parte Young* exception to the state's sovereign immunity, as they are the individuals "directed to see to [the marriage ban's] enforcement." *See Ex parte Young*, 209 U.S. 123, 157 (1908); *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010).

That said, the County Clerks' function in issuing marriage licenses is purely ministerial. If parties apply and qualify for a marriage license, the relevant statute directs the Clerk to issue them one. W. Va. Code §§ 48-2-102, 48-2-107. Any power possessed by the County Clerks to issue and administer marriage licenses is therefore simply the execution of the state legislature's prerogatives, as expressed in its statutory scheme regulating marriage statewide. *See* W. Va. Code § 48-2-101 *et seq*. Furthermore, the County Clerks possess no discretion or independence. *See Wetzel Cnty. Solid Waste Auth. v. Pub. Serv. Comm'n of W. Va. Lackawanna Transp. Co.*, 219 W. Va. 341, 345-46, 633 S.E.2d 286, 290-91 (2006) (public officials possess no discretion to depart from statutory mandates); *cf. Lockyer v. City and County of S.F.*, 95 P.3d 459, 472-73 (Cal. 2004) ("[T]he duties of the county clerk" in issuing marriage licenses "properly are characterized as *ministerial* rather than discretionary."). Indeed, both Defendant Clerks have acknowledged the ministerial nature of their duties. *See* D.E. 27 at 1-2; D.E. 32 at 2-3.

Where county officials perform ministerial tasks under the direction of a state statutory scheme, they are not acting as independent county officials with sovereign authority; rather, they carry out the purposes of state government, and are subject to the supervision of state authorities. As the West Virginia Supreme Court has recognized, "[T]he state-county relationship . . . is not one of federalism, of co-sovereigns. Fifty-five sovereign entities do not exist within the sovereign state of West Virginia. Rather, 55 geographically-defined governmental organizations exist to *carry out the purpose of state government*." *Killen v. Logan Cnty. Comm'n*, 170 W. Va. 602, 621, 295 S.E.2d 689, 708 (1982) (emphasis added), *overruled in part on other grounds, In*

re Tax Assessment of Foster Found.'s Woodlands Ret. Cmty., 223 W. Va. 14, 27, 672 S.E.2d 150, 163 (2008). Accordingly, as officials tasked with carrying out the functions of state government, county clerks performing functions delegated by the state legislature are necessarily subject to supervision by state officials: "The counties are subdivisions of the state, and county officials and governments are generally subject to supervision by state officials acting for the state government." Killen, 170 W. Va. at 621, 295 S.E.2d at 708. That is, county officials, in carrying out ministerial tasks, are "answerable . . . to the state in the person of" the relevant state official with supervisory authority over the subject matter, here the state Registrar. Id.[1]

Thus, when West Virginia's county clerks accept applications and issue marriage licenses, they do not act as officials with discretion or decision-making authority. Rather, they act as individuals under the supervision of the State Registrar, bound by the state legislature's statutory scheme, and performing a ministerial act in furtherance of that scheme.

### 2. The Unitary Nature of the State's Marriage Scheme Means that a Judgment in Plaintiffs' Favor Will Bind the State and All County Clerks.

A judgment as to the County Clerk Defendants here would bind both the State and the absent county clerks through its preclusive (res judicata) effect. This is so even though the State and the absent county clerks are not parties named in the Complaint, because of the privity between them and the named County Clerk Defendants.

The Supreme Court has articulated the doctrine regarding officials-in-privity as follows: "There is privity between officers of the same government so that a judgment in a suit between a

---

[1]     Indeed, the State effectively concedes that it possesses such supervisory authority in its Motion to Dismiss (D.E. 34), noting that "the State Registrar . . . is charged by statute with promulgating marriage forms." D.E. 34 at 3. In other words, the Registrar's control over the form of the marriage application in West Virginia is itself evidence of his supervisory authority over the completion of marriage licenses in the state.

party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government." *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402-03 (1940). The doctrine applies to officials of both federal and state governments. *See, e.g., Cruz Berrios v. Gonzalez-Rosario*, 630 F.3d 7, 14 (1st Cir. 2010) (privity between officers of Puerto Rican government); *Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007) (privity between officers of county government); *Church of the New Song v. Establishment of Religion on Taxpayers' Money in Fed. Bureau of Prisons*, 620 F.2d 648, 654 (7th Cir. 1980) (prison chaplains in Illinois in privity with Georgia and Texas chaplains).

With respect to the State, the Defendant Clerks are in privity with the State because the interests they assert in this case are identical. The Fourth Circuit has made clear that the officials-in-privity doctrine applies under those circumstances even to officers of different governments. In *Nash County Board of Education v. Biltmore Co.*, a North Carolina school board, as plaintiff, was bound by a consent decree entered in a prior case brought by the state against the same defendant. 640 F.2d 484, 494-95 (4th Cir. 1981). The state and the school board were found to be in privity because the interests previously asserted by the State Attorney General were "identical with those stated by the . . . School District." *Id.; see also Grand Traverse Band of Ottawa & Chippewa Indians v. Dir., Mich. Dep't of Natural Res.* 141 F.3d 635, 642 (6th Cir. 1998) (municipalities bound to state treaty as "instrumentalities of the state"); *County of Boyd v. U.S. Ecology, Inc.*, 48 F.3d 359, 361-62 (8th Cir. 1995) (suit brought by county barred under claim preclusion by earlier, unsuccessful suit brought by state: "[T]he County's residents were represented by the state and the governor of Nebraska; in the present action, they are represented by the County, which seeks identical relief.").

In this case, the State has precisely the same legal interests as the county clerks in this suit—*i.e.*, defending the constitutionality of the marriage ban. Indeed, because the role of the county clerks with respect to marriage is merely ministerial, as set forth above, the clerks necessarily have no independent prerogative with regard to the issuance of marriage licenses. Further, the State has been uniquely privileged to advance its legal interests, in that its unopposed motion to intervene was granted, and it has been fully able to participate in briefing dispositive motions. Accordingly, the State—along with all of its officers and officials—is necessarily bound by the results of this proceeding.

The other 53 county clerks, too, will be bound by this Court's ruling. Addressing an analogous situation, the California Supreme Court found that county clerks, in the issuance of marriage licenses, serve as agents of the state and not of the county, and accordingly have no independent prerogatives with regard to marriage laws. *See Lockyer*, 95 P.3d at 463-64. Any contrary holding, it found, would open the state up to the possibility that marriage laws would not be uniformly applied throughout the state. *Id.* at 471. West Virginia law, too, evinces not only the general principle that county officials delegated ministerial tasks are not free to deviate from the dictates of state officials, *see Killen*, 170 W. Va. at 620-21, 295 S.E.2d at 708, but also an express legislative desire that the state's marriage laws be "uniform," *see* W. Va. Code § 16-5-34(a). As in *Lockyer*, then, the absent county clerks are not entitled, as a matter of right, to assert a prerogative different from that the State (and the Defendant Clerks) assert in this case. Rather, those clerks are in ineluctable privity with the Defendant Clerks and the State as regards the marriage laws, and are as bound by a judgment in this case as is the State.

### C.    The Facial Invalidation Sought by Plaintiffs Inherently Extends Beyond Their Particular Circumstances to All Others Affected by the Marriage Ban.

Plaintiffs' Complaint would have statewide effect for an additional reason: Plaintiffs in this case seek facial invalidation of the state's marriage ban.  In other words, Plaintiffs seek a declaration that the marriage statute "and any sources of West Virginia law that exclude same-sex couples from marriage" are unconstitutional, and ask this Court to permanently enjoin the Defendants from enforcing "any sources of state law that exclude same-sex couples from marriage" and to require that Defendants "accept applications and issue marriage licenses to same-sex couples on the same terms as different-sex couples" Complaint (D.E. 8) at 28.  Such a facial invalidation necessarily involves a legal conclusion extending beyond the particular Plaintiffs and Defendants at issue, to all other plaintiffs and defendants who might be affected by the statute.  This is because, if the Court grants judgment to the Plaintiffs, it will accordingly have found, as a prerequisite for the facial invalidation of the statute, that "no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).  As the Fourth Circuit recently articulated, a determination that a statute is facially invalid is a determination that the statute "always operates in an unconstitutional manner." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 762 (4th Cir. 2013).

It follows that the relief ordered upon a successful facial challenge will extend beyond solely the named Defendants.  The Supreme Court has said so in holding that a facial challenge and "the relief that would follow" will necessarily "reach beyond the particular circumstances of the[] plaintiffs." *Doe v. Reed*, 130 S. Ct. 2811, 2817 (2010).  The Fourth Circuit has similarly stated that success in "a facial attack on the state statutes as a whole" results in "the district court . . . enjoin[ing] all enforcement of the statutes at issue." *Martin v. Stewart*, 499 F.3d 360, 367

(4th Cir. 2007); *see also Blackard v. Memphis Area Med. Ctr. For Women, Inc.*, 262 F.3d 568, 576 (6th Cir. 2001) (in granting injunction upon successful facial challenge, binding non-parties to the suit, because an injunction excluding them "would be meaningless where the purpose of the injunction is to prevent the enforcement of a potentially unconstitutional statute").

There is good reason for the sweeping nature of the relief that follows the facial invalidation of a statute: "In a facial challenge like this one, the claimed constitutional violation inheres in the terms of the statute, not its application . . . . The remedy is necessarily directed at the statute itself and must be injunctive and declaratory; a successful facial attack means the statute is wholly invalid and cannot be applied to anyone." *Ezell v. City of Chi.*, 651 F.3d 684, 698 (7th Cir. 2011). Indeed, the Fourth Circuit has recognized that such sweeping relief is the very mechanism by which a facial challenge helps to protect our constitutional guarantees, by sparing individuals the burden of case-by-case assertion and adjudication of their rights:

> The idea supporting facial challenges derives from the principle that "no one may be judged by an unconstitutional rule of law." Michael C. Dorf, *Facial Challenges to State and Federal Statutes*, 46 Stan. L. Rev. 235, 238 (1994). From that idea evolves the notion that courts can efficiently address constitutional concerns of a large group without engaging in the long and unwieldy process of case-by-case analyses. *See id.* at 277; *see also* David H. Gans, *Strategic Facial Challenges*, 85 B.U. L. Rev. 1333, 1352-53 (2005). And thus facial challenges are justified where as-applied adjudication is thought to be "inadequate to protect constitutional norms." *Gans*, 85 B.U. L. Rev. at 1337.

*Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009).

Plaintiffs are aware of no authority suggesting that, in order to properly bring a facial constitutional challenge, they are required to implead *all* defendants who might be affected by such a law. To the contrary, in case after case, courts have adjudicated facial constitutional challenges brought by individuals even though they did not seek to represent all who might be affected by the statute, or sue all who might wish to enforce it. For example, in *Richmond Medical Center*, the Fourth Circuit addressed a facial challenge to a Virginia statute forbidding

certain late-term abortions in which the only defendants were the local commonwealth attorneys in one city and one county. *Id.* at 174. Similarly, in *MacDonald v. Moose*, the Fourth Circuit addressed a civil habeas challenge to Virginia's sodomy law contending that the law was facially invalid—despite the fact that the petitioner named as a defendant only one warden, and did not implead all others who might enforce or have an interest in the law (including local commonwealth attorneys). 710 F.3d 154, 156, 167 (4th Cir.), *cert. denied*, 134 S. Ct. 2000 (2013). In both *Richmond Medical Center* and *MacDonald*, there was no objection that the courts could not entertain a facial challenge simply because certain defendants were not present or plaintiffs had not chosen to proceed as a class.

A judgment by this Court that the state's marriage ban "always operates in an unconstitutional manner" cannot, by definition, be limited to any particular set of Plaintiffs or Defendants. It therefore follows from the facial nature of Plaintiffs' challenge that any ruling by this Court in Plaintiffs' favor would result in statewide relief—and the inability of any county clerk to treat same-sex couples unequally.

## II.   A Lack of Certainty Regarding the State-Wide Effect of Plaintiffs Claims is Not Sufficient Reason for this Court to Abstain.

Even if Plaintiffs were unable to achieve state-wide relief in this case, that would not be cause for this Court to abstain. As this Court has already held, the first criterion for *Burford* abstention has not been met in this case. Opinion at 11. This case also does not meet the second criterion for *Burford* abstention—that this Court's review would disrupt "state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Martin*, 499 F.3d at 364 (quotations marks omitted). That form of *Burford* abstention exists for cases entirely distinguishable from this one. In those cases, piecemeal federal adjudication of a question could throw off intricate regulatory schemes governing entire industries—as, for example, when a state

has a comprehensive, complicated, and interconnected system of tariffs governing railroads, and the adjudication by a federal court of one aspect of that scheme could not capture the myriad factors the state has taken into account, and thus might upset the balance of competition or exacerbate the burden of the regulatory system on a particular actor. *See, e.g., Ala. Pub. Serv. Comm'n v. S. Ry. Co.*, 341 U.S. 341, 346–48 (1951); *see also* 17A James Wm. Moore et al., *Moore's Federal Practice* ¶ 122.04[2][b], [2][c] (3d ed. Supp. 2013) (recounting the narrow application of *Burford* abstention).[2] In identifying when this vein of *Burford* abstention applies, the Supreme Court specifically excepted—*i.e.*, "put to one side"—those cases in which "the constitutionality of a state statute itself is drawn into question." *Ala. Pub. Serv.*, 341 U.S. at 344.

Further, the Fourth Circuit's holding that "a facial attack on the state statutes as a whole—precisely the sort of case federal courts often and expertly entertain" does not "threaten a state interest in uniform regulation" plainly forecloses the application of *Burford* abstention here. *Martin*, 499 F.3d at 367. As set forth above, Plaintiffs' challenge to the marriage ban is undoubtedly a facial one. *See* Complaint, D.E. 8 at 28-29. There is nothing in either Fourth Circuit case law or that of any other Court of which Plaintiffs are aware to suggest that the particular Defendant who is sued in a facial challenge provides a basis for distinguishing the Fourth Circuit's decision in *Martin*; indeed, as discussed above, the Fourth Circuit has addressed

---

[2]     In analyzing whether to apply *Burford* abstention based on "potential disruptions" to state law, courts' "fundamental concern" is "to prevent federal courts from bypassing a state administrative scheme and resolving issues of state law and policy that are committed in the first instance to expert administrative resolution." *Adrian Energy Assocs. v. Mich. PSC*, 481 F.3d 414, 423 (6th Cir. 2007) (citing *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361-64, (1989)); *accord Sevigny v. Emplrs. Ins. of Wausau*, 411 F.3d 24, 26 (1st Cir. 2005)("*Burford* ...requires in certain circumstances a federal court to abstain in favor of state processes where federal litigation would interfere with a state administrative scheme and where adequate state judicial review exists."). There is no state administrative resolution available to Plaintiffs here, and Defendant Clerks admit as much in suggesting that Plaintiffs should instead have to wait out a purely hypothetical state legislative resolution. Under such circumstances, abstention based on *Burford* is both inappropriate and unprecedented.

facial challenges brought against local officers, and has not expressed any concern regarding the ability of such challenges to bind all state officials. *See Richmond Med. Ctr.*, 570 F.3d at 174; *MacDonald*, 710 F.3d at 167.

Indeed, the need to exercise jurisdiction is particularly urgent in cases presenting federal constitutional claims, in that such cases present "vital federal question[s]." *Harper v. Pub. Serv. Comm'n of W. Va.*, 396 F.3d 348, 358 (4th Cir. 2005) (finding *Burford* abstention inappropriate); *see also McNeese v. Bd. of Educ. for Cmty. Unit Sch. Dist. 187*, 373 U.S. 668, 674 (1963) (finding *Burford* abstention inappropriate when "petitioners assert that respondents have been and are depriving them of rights protected by the Fourteenth Amendment" because "[s]uch claims are entitled to be adjudicated in the federal courts"). This is illustrated by the long line of federal constitutional challenges that the Supreme Court has addressed, even though the relief Plaintiffs sought would not necessarily have state-wide effect. In *Roe v. Wade*, for example, the Defendant Wade was not a state-wide official, but rather the local district attorney for Dallas County. 410 U.S. 113, 120 (1973). The Supreme Court did not contend that the district court should have abstained from hearing the case, out of respect for the state's interest in uniform adjudication of its laws; rather, it proceeded to directly address Roe's constitutional challenge to the state criminal statute. Similarly, in *Plyler v. Doe*, the Court addressed a federal challenge to a Texas statute preventing undocumented immigrant children from attending public schools, notwithstanding the fact that Plyler was merely a superintendant of one of the state's school districts. 457 U.S. 202, 206 (1982). Accordingly, the Fourth Circuit has recognized that facial challenges are an invaluable mechanism to protect constitutional rights, because they "efficiently address constitutional concerns of a large group" while sparing individuals the "long and unwieldy process of case-by-case analyses." *Richmond Med. Ctr.*, 570 F.3d at 172. A holding

that this Court must abstain from adjudicating a constitutional case when plaintiffs do not proceed as a class action and against a state official would effectively blunt this mechanism for federal adjudication.

Finally, to the extent that Defendants contend that *Burford* abstention is appropriate because of any limits on the reach of this Court's ruling to the Southern District of West Virginia, they err, for a number of reasons. First, the remedial power of this Court is not strictly limited to the Southern District of West Virginia; this Court is empowered to enter statewide relief if necessary, as long as it has personal jurisdiction over the defendants before it. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ("[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" (quotation marks omitted)). Second, and more fundamentally, it would be anomalous for the application of *Burford* abstention to certain statewide questions to depend on whether a state is divided into one or more judicial districts—as it would if this Court took into account the fact that there are both Southern and Northern Districts of West Virginia. Such a rule would unfairly disadvantage individuals from more populous or geographically expansive states in obtaining federal adjudication—a result that would be especially prejudicial in a case such as this, which presents a *federal* constitutional challenge to a state law. The federal courts are especially well-positioned to adjudicate such challenges, *see Steffel v. Thompson*, 415 U.S. 452, 472-73 (1974) (noting "the paramount role Congress has assigned to the federal courts to protect constitutional rights"), and such cases present even greater cause to heed the admonition that abstention should be "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy

properly before it." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).  Third, even if this Court's decision were somehow limited only to the Southern District, the likelihood of a subsequent appeal to the Fourth Circuit nullifies concerns about a long-term disparity within the State of West Virginia.  Such an appeal seems likely given the State's voluntary intervention to defend its marriage laws and the Plaintiffs' determination to vindicate their constitutional rights.  Additionally, should Plaintiffs prevail, and this Court declare West Virginia's marriage ban unconstitutional and order the issuance of marriage licenses to same-sex couples, Plaintiffs would not oppose an order staying this Court's ruling pending an appeal by either the State or one or both of the County Clerk Defendants.  And a ruling by the Fourth Circuit would have a precedential effect binding throughout not only West Virginia but perhaps every state in the Fourth Circuit.  Any concern about the statewide application of this Court's ruling is therefore academic, and in any event, not cause for this Court to abstain under *Burford*.

## CONCLUSION

Accordingly, Plaintiffs respectfully pray that this Court deny in full Defendants Cole and McCormick's Motions to Dismiss.

Dated: February 12, 2014

Respectfully submitted,

**CASIE JO MCGEE and SARAH ELIZABETH ADKINS, et al.**

By Counsel:

_____/s/ John H. Tinney Jr._____
THE TINNEY LAW FIRM, PLLC
John H. Tinney, Jr. (WVSB #6970)
Heather Foster Kittredge (WVSB #8543)
P.O. Box 3752
Charleston, West Virginia 25337-3752
Phone: (304) 720-3310
Fax: (304) 720-3315

JackTinney@tinneylawfirm.com
HKittredge@tinneylawfirm.com


LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.

Elizabeth L. Littrell (*pro hac vice*)
730 Peachtree Street, N.E.
Suite 1070
Atlanta, Georgia 30308-1210
Phone: (404) 897-1880
Fax: (404) 897-1884
blittrell@lambdalegal.org

Karen L. Loewy (*pro hac vice*)
120 Wall Street, 19th Floor
New York, New York 10005-3904
Phone: (212) 809-8585
Fax: (212) 809-0055
kloewy@lambdalegal.org

Camilla B. Taylor (*pro hac vice*)
105 West Adams, 26th Floor
Chicago, Illinois 60603-6208
Phone: (312) 663-4413
Fax: (312) 663-4307
ctaylor@lambdalegal.org


JENNER & BLOCK LLP

Paul M. Smith (*pro hac vice*)
Lindsay C. Harrison (*pro hac vice*)
Luke C. Platzer (*pro hac vice*)
R. Trent McCotter (*pro hac vice*)
1099 New York Avenue, NW Suite 900
Washington, D.C. 20001-4412
Phone: (202) 639-6000
Fax: (202) 639-6006
psmith@jenner.com
lharrison@jenner.com
lplatzer@jenner.com
rmccotter@jenner.com

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

CASIE JO MCGEE and SARAH ELIZABETH
ADKINS; JUSTIN MURDOCK and WILLIAM
GLAVARIS; and NANCY ELIZABETH
MICHAEL and JANE LOUISE FENTON,
individually and as next friends of A.S.M., a minor
child;

         *Plaintiffs,*

         v.

KAREN S. COLE, in her official capacity as
CABEL COUNTY CLERK; and VERA J.
MCCORMICK, in her official capacity as
KANAWHA COUNTY CLERK;

         *Defendants,*

     and

STATE OF WEST VIRGINIA;

         *Defendant-Intervenor.*

No. 3:13-cv-24068
Hon. Robert Chambers

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of February, 2014, I electronically filed the foregoing

*"Memorandum of Law in Response to Court's Order of January 29, 2014"* with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to the following

CM/ECF participants:

Elbert Lin, Esquire
Julie Ann Warren, Esquire
Office of the Attorney General
State Capitol Building 1, Room E-26
Charleston, WV  25305
*Counsel for the State of West Virginia*

Charles R. Bailey, Esquire
Michael W. Taylor, Esquire
Bailey & Wyant, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, WV  25337-3710
*Counsel for Defendant Vera J. McCormick*


Lee Murray Hall, Esquire
Sarah A. Walling, Esquire
Jenkins Fenstermaker, PLLC
325 Eight Street
Huntington, WV  25701-2225
*Counsel for Defendant Karen S. Cole*


_____ /s/ John H. Tinney, Jr. _____
John H. Tinney, Jr.