IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CASIE JO MCGEE and SARA ELIZABETH
ADKINS; JUSTIN MURDOCK and WILLIAM
GLAVARIS; and NANCY ELIZABETH
MICHAEL and JANE LOUISE FENTON,
Individually and as next friends of A.S.M.,
minor child,

       Plaintiffs,

v.                                     Civil Action No. 3:13-24068

KAREN S. COLE, in her official capacity as
CABELL COUNTY CLERK; and VERA J.
MCCORMICK, in her official capacity as
KANAWHA COUNTY CLERK,

       Defendants,

and

STATE OF WEST VIRGINIA,

       Defendant-Intervenor.

STATE OF WEST VIRGINIA'S OPPOSITION TO
PLAINTIFFS' FEBRUARY 12 MEMORANDUM OF LAW AND
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
FOR LACK OF SUBJECT-MATTER JURISDICTION

Plaintiffs' memorandum of February 12, 2014, fails to answer a critical question posed

by this Court: "whether the State's inclusion as an Intevenor Defendant—represented by the

Attorney General—is sufficient to support *jurisdiction*."  Doc. 56 at 13 (emphasis added).  As

suggested by this Court's question, Article III requires a plaintiff to demonstrate not only injury-

in-fact but also that he has joined to the case all the defendants who are independently causing

the alleged injury.  This ensures that the court can fully redress the alleged injury by directly

enjoining all the responsible parties.  In a case such as this, "when a plaintiff seeks a declaration that a particular statute is unconstitutional, the proper defendants are the government officials charged with administering and enforcing it." *New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996).

But Plaintiffs' attempt to avoid the question does not change its answer: this Court was correct to question its jurisdiction, and immediate dismissal is warranted.  As shown below, Plaintiffs have failed to sue at least two state officials who are independently responsible for the laws allegedly harming Plaintiffs: the State Registrar and the Secretary of State.  The absence of those officials makes it impossible for this Court to redress Plaintiffs' alleged injuries, leaving this Court no choice under well-settled precedent but to dismiss the Complaint in its entirety.

## BACKGROUND

On October 1, 2013, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief, challenging the constitutionality of West Virginia Code §§ 48-2-104, 48-2-401, and 48-2-603 and "any other sources of West Virginia law that exclude same-sex couples from marriage or from recognition of marriages entered into in another jurisdiction."  Compl. at 28.  According to the Complaint, "Plaintiffs are six lesbian and gay West Virginians who comprise three loving and committed same-sex couples, and a child of one of the couples."  *Id.* ¶ 1.  The adult Plaintiffs claim that they are "legally qualified to marry under the laws of West Virginia"—but for the fact that they are of the same sex—and "wish[] to marry in the State."  *Id.* ¶ 21.  They assert that they have sought marriage licenses from the two Defendant County Clerks and were denied.  *Id.* ¶ 22–24.  Plaintiffs did not name as a defendant the State of West Virginia or any state officer or entity.

2

On December 2, 2013, this Court granted the State's motion to intervene pursuant to 28 U.S.C. § 2403(b).  *See* Doc. 28.  Section 2403(b) permits a State to intervene in any federal case in which the constitutionality of a state statute is "drawn in question" and to which the "State or any agency, officer, or employee thereof is not a party."  As contemplated by the statute, the State sought to intervene "for the sole and limited purpose of defending the constitutionality of the statutes in question" and expressly reserved its sovereign immunity.  Doc. 25 at 2.  The State also noted that "as there are specific state entities that enforce or otherwise execute the statutes in question, [it] d[id] not represent or concede that its presence alone is sufficient to accord Plaintiffs the relief requested should they prevail."  *Id.* at 3.

Three motions to dismiss were filed.  Defendant County Clerks each filed a motion to dismiss on abstention grounds, *see* Docs. 26–27, 31–32, urging in particular that invalidation of the challenged laws would enjoin only "the County Clerks of Kanawha and Cabell County … from enforcing said laws," Doc. 35 at 3.  Separately, because the Complaint included no allegations that Plaintiffs have valid out-of-state marriages or even intend to be married elsewhere, the State moved to dismiss the Complaint to the extent that it challenged West Virginia Code § 48-2-603, which prohibits the recognition of valid out-of-state same-sex marriages.  *See* Doc. 34.

On January 29, 2014, this Court issued its order on the motions to dismiss (the "MTD Order").  The Court granted the State's motion in its entirety, "dismiss[ing] from the case all claims that relate to West Virginia Code Section 48-2-603."  Doc. 56 at 27.  As to the Clerks' motions, the Court deferred judgment, finding it uncertain that "the parties before it in the instant case are sufficient to bind all clerks and state officials in West Virginia should the marriage ban be struck down."  *Id.* at 13.  In particular, the Court expressed "concern[] as to whether the

State's inclusion as an Intervenor Defendant—represented by the Attorney General—is sufficient to support jurisdiction." *Id.* Concluding that its concern was "sufficient ground for abstention," the Court nonetheless "decline[d] to so rule at th[at] time." *Id.* at 14. Instead, the Court directed Plaintiffs to either "seek joinder of … additional parties" or "file a responsive pleading explaining … why joinder of additional parties is not necessary." *Id.* The Court permitted "Defendants [to] file a response within seven days of Plaintiffs taking either action." *Id.*

On February 12, 2014, Plaintiffs filed their responsive pleading, choosing to forgo their opportunity to join additional parties. They argued for several reasons that "[i]f the Court grants judgment for Plaintiffs in this case, it will create a ruling that has state-wide effect." Doc. 61 at 3. They failed entirely to address, however, the Court's concern as to whether the defendants present in the case at this time are "sufficient to support jurisdiction." Doc. 56 at 13. Nothing in Plaintiffs' pleading explained whether—consistent with Article III of the Constitution and state sovereign immunity under the Eleventh Amendment—they had joined the defendants necessary to make out a justiciable case or controversy.

That same day, the State filed its consolidated cross-motion for summary judgment and opposition to Plaintiffs' motion for summary judgment. Among other arguments, the State contended that Plaintiffs have failed to join two state officials necessary to remedy Plaintiffs' injury and accord Plaintiffs the relief they seek. Doc. 68 at 16–18. The State highlighted therein its repeated observation—consistently ignored by Plaintiffs—that its presence in this case is not an adequate substitute for the absent state officials. *Id.* at 18 (citing Doc. 25 at 2–3; Doc. 34 at 3–4; Doc. 49 at 3 & n.3).

## ARGUMENT

## I.    PLAINTIFFS HAVE FAILED TO BRING SUIT AGAINST THE PROPER DEFENDANTS.

### A.    Article III Limits the Jurisdiction of Federal Courts to Actual Controversies Between Plaintiffs and the Proper Defendants.

As this Court recognized, its jurisdiction depends on whether Plaintiffs have joined to the lawsuit the proper defendants.  Doc. 56 at 13.   The "threshold question in every federal case" is "whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art[icle] III" of the Constitution.  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  A plaintiff must show that he has sued the specific defendant (or defendants) to whom his injury "fairly can be traced," *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 (1976), and that the injury is not actually the "result[] [of] independent action of some third party not before the court," *id.* at 42.  This is closely related to the additional requirement that a plaintiff demonstrate "a likelihood that the requested relief will redress the alleged injury."  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998).  Absent all the proper defendants, a court's decision is "unlikely to do [the plaintiff] any good" and will amount to little more than an advisory opinion.  *United States v. Carroll*, 667 F.3d 742, 745–46 (6th Cir. 2012); *see also Alabama State Fed'n of Labor, Local Union No. 103, United Bhd. of Carpenters & Joiners of Am. v. McAdory*, 325 U.S. 450, 461 (1945) ("This Court is without power to give advisory opinions.").

Federal courts have thus repeatedly dismissed lawsuits when a plaintiff has sued the wrong defendant.  For example, in *Friends for Ferrell Parkway, LLC v. Stasko*, the Fourth Circuit affirmed the dismissal of a case against two officials of the United States Fish and Wildlife Service because the alleged injuries were more properly ascribed to the independent acts of a private developer and the City of Virginia Beach, neither of which had been named a

defendant.  282 F.3d 315, 323–24 (4th Cir. 2002).  In *Doe v. Pryor*, the Eleventh Circuit found that the Alabama Attorney General was "the wrong defendant" because the plaintiff's alleged injuries "stem[med] from a state court custody proceeding in which the Attorney General played no role" and over which the Attorney General had no control.  344 F.3d 1282, 1285–86 (11th Cir. 2003).  And in *Southern Pacific Transportation Company v. Brown*, the Ninth Circuit affirmed dismissal of a lawsuit against the Oregon Attorney General because he lacked authority to "prosecute a violation of the challenged act or compel the district attorneys to prosecute or refrain from doing so."  651 F.2d 613, 614 (9th Cir. 1980).

Similarly, courts have dismissed cases where the plaintiffs have failed to sue *all* of the actors independently responsible for the alleged harm.  In *Nova Health Systems v. Gandy*, for instance, the Tenth Circuit dismissed a facial challenge to a law that could be enforced through private causes of action.  416 F.3d 1149, 1158–59 (10th Cir. 2005).  Although the plaintiff had named as defendants several people who could enforce the challenged law against it, the court held that "a judgment enjoining only these defendants" would not "redress" the effect of the challenged statute where "there would still be a multitude of other prospective litigants who could potentially sue [the plaintiff] under the act."  *Id.*

Likewise, courts routinely hold that they cannot redress a plaintiff's harm when more than one governmental entity causes the harm and some of those entities are "not a party to the pending lawsuit."  *San Joaquin River Grp. Auth. v. Nat'l Marine Fisheries Serv.*, 819 F. Supp. 2d 1077, 1097 (E.D. Cal. 2011); *see Leu v. Int'l Boundary Comm'n*, 605 F.3d 693, 694–95 (9th Cir. 2010) (holding that a claim is not redressable where relief depends on the independent actions of non-party executive-branch officials); *Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n*, 457 F.3d 941, 955 (9th Cir. 2006) ("We cannot see how an order remanding to NRC

would remedy the asserted injury. . . because [a non-party], DOT[,] would be under no obligation to reconsider its own, identical rule."); *California Dump Truck Owners Ass'n v. Nichols*, 924 F. Supp. 2d 1126, 1147, 1150 (E.D. Cal. 2012) (holding that "the Court cannot grant any practical relief" because "even if Plaintiff succeeds in [its] challenge to [a state regulation], the relief that Plaintiff seeks will still depend on independent decisions by the EPA, which is not a party to this litigation").

The fact that Plaintiffs are seeking a declaratory judgment does not eliminate the proper-defendant requirement, or any other requirements imposed by Article III.  The Declaratory Judgment Act provides that, "[i]n *a case of actual controversy* within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a) (emphasis added).  The Supreme Court has held that "the phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  Thus, "[t]he requirements for a justiciable case or controversy are no less strict in a declaratory judgment proceeding than in any other type of suit."  *McAdory*, 325 U.S. at 461.  Like any other case, a declaratory judgment action is only "a proper judicial resolution of a 'case or controversy' rather than an advisory opinion" when it "settl[es] … some dispute which affects the behavior of the defendant towards the plaintiff."  *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis omitted).

**B.      The State Registrar and the Secretary of State Should Be Defendants in this Case.**

Here, Plaintiffs have failed to sue at least two state officials who are "independent[ly]" responsible for the laws allegedly harming Plaintiffs: the State Registrar and the Secretary of State.  *Simon*, 426 U.S. at 42.  The Complaint names as defendants only the two county clerks

who refused to issue marriage licenses to Plaintiffs.  But as the State has previously explained, Doc. 68 at 2–3, 16–18, and Plaintiffs now apparently concede, Doc. 61 at 6–8, 10, those clerks are not in any way responsible for carrying out the two state statutes that Plaintiffs have specifically challenged as unconstitutional.  Whatever role the clerks might otherwise play in the marriage process, those two laws are "administer[ed] and enforc[ed]" by the State Registrar and the Secretary of State, who are therefore "the proper defendants" in a case "seek[ing] a declaration that [the] particular statute[s] [are] unconstitutional."  *New Hampshire Right to Life*, 99 F.3d at 13.

**1.**  The first statute—West Virginia Code § 48-2-104—sets forth the "[c]ontents of the application for a marriage license."  *Id.*  Among other things, it mandates that "[t]he application for a marriage license … contain a statement of the full names of both the female and the male parties, their social security account numbers, dates of birth, places of birth and residence addresses."  *Id.*  The Legislature also required that "[e]very application for a marriage license … contain the following statement: 'Marriage is designed to be a loving and lifelong union between a woman and a man.'"  *Id.*

As Plaintiffs now admit, the State Registrar has the exclusive authority under state law to create the State's marriage license applications and therefore is the only official responsible for carrying out the dictates of Section 104.  *See* Doc. 61 n.1 (acknowledging "the Registrar's control over the form of the marriage application in West Virginia").  In order to create "an efficient and uniform system of registration of marriage," the Legislature charged the State Registrar with "provid[ing] for the registration of each marriage, divorce and annulment of marriage which occurs in this state."  W. Va. Code § 16-5-34(a).  And as part of those duties, the State Registrar is empowered to "[p]rescribe, furnish, and distribute forms."  *Id.* § 16-5-5(5); *see*

*also* W. Va. Code R. §§ 64-32-2.1.a, 64-32-2.2.a.12 (setting forth State Registrar's exclusive authority over state vital records forms); Doc. 68-1 (Application for Marriage License); Doc. 68-2 (Application for Certified Marriage Certificate); Doc. 68-3 (State Registrar's website).

County clerks have no authority to create or alter state marriage forms. They are responsible only for accepting applications, issuing licenses, and "forward[ing] to the State Registrar a report of all marriage records made by him or her . . . on a form prescribed or furnished by the State Registrar." W. Va. Code § 16-5-35(a); *see also id.* §§ 48-2-102, 48-2-105 to 48-2-107. They are largely "ministerial" actors "subject to the supervision of state authorities." Doc. 61 at 7. Indeed, a clerk who exercised discretion and "knowingly issue[d] a marriage license contrary to law" would be guilty of a misdemeanor. W. Va. Code § 48-2-502.

**2.** The second statute—West Virginia Code § 48-2-401—expressly limits the solemnization of marriages in West Virginia to different-sex marriages. The law permits only certain individuals, namely religious representatives approved by the Secretary of State and certain state judges, to celebrate or solemnize marriages. The law then defines the "[c]elebration or solemnization of a marriage" as "the performance of the formal act or ceremony by which a man and woman contract marriage and assume the status of husband and wife." *Id.* § 48-2-401.

For religious marriage celebrants, at least, it appears that the Secretary of State is responsible for enforcing this restriction on solemnization. The Legislature has charged the Secretary of State with maintaining "a central registry of persons authorized to celebrate marriages in this state." *Id.* § 48-2-402. And it has granted to the Secretary of State the exclusive power to "make an order authorizing a person who is a religious representative to celebrate the rites of marriage in all the counties of the state." *Id.* It follows that the Secretary of State also has the authority—and duty—to revoke such an order and remove a celebrant from the

9

central database if that individual has exceeded his state-sanctioned powers by solemnizing a same-sex marriage. *See* Doc. 68-5 at 2 ("The West Virginia Secretary of State is responsible for administering several types of licenses and registrations . . . [including] Ministers Authorized to Perform Marriages.").[1]

In contrast, county clerks have no supervisory authority over marriage celebrants. The license issued by a clerk permits a state-authorized celebrant to solemnize a marriage, *id.* § 48-2-201, to endorse the license, and then to "forward the original … to the clerk who issued the license," *id.* § 48-2-202(b). In turn, the clerk must maintain a record of the "endorsement by a minister, priest, rabbi, or judge certifying that the marriage was solemnized," *id.* § 48-2-203(a)(3). If a license "is not solemnized within sixty days from the date of issuance," it is to be treated as "null and void." *Id.* § 48-2-202(c). That is the extent of a county clerk's involvement and interaction with marriage celebrants.[2]

**3.** In sum, this Court cannot redress Plaintiffs' inability to obtain same-sex marriages in West Virginia unless it enters a declaration or injunction against all the government officials who enforce the State's marriage laws against Plaintiffs. Here, that list of direct enforcement officials includes the State Registrar and the Secretary of State, both of whom play a role independent of the Defendant Clerks. A judgment against the named clerks alone is simply not enough to redress Plaintiffs' alleged harm.

---

[1] County prosecutors are charged by statute with the duty to revoke a celebrant's authorization under two specific circumstances—when a celebrant fails to sign and return a license, *see* W. Va. Code § 48-2-504, and when a celebrant solicits the celebration of a marriage, *see id.* § 48-2-505—but no statute gives them either general oversight over state-authorized celebrants or specific enforcement responsibility over the law's prohibition on solemnizing same-sex marriages.

[2] In fact, county clerks used to have authority to authorize celebrants. But the Legislature explicitly transferred that power to the Secretary of State in its 2001 reform of the State's domestic relations laws. W. Va. Code § 48-2-402; Doc. 68 at 11; *see* Doc. 81, 81-1, 81-2.

10

**4.** Plaintiffs suggest that the State (as an intervenor) is a sufficient replacement for the absent state officials, *see* Doc. 61 at 3–6, but that ignores a hundred years of settled precedent on sovereign immunity.  "The Supreme Court has recognized that the doctrine of sovereign immunity under the Eleventh Amendment … prevent[s] a state from being sued by one of its own citizens without its consent," unless "it falls within the exception recognized in *Ex Parte Young*, 209 U.S. 123 (1908), which permits certain suits in federal court against state officers." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 329 (4th Cir. 2001).  Because the State has not given its consent to be sued in this case, *see* Doc. 25 at 1–3 (reserving sovereign immunity), prospective injunctive relief is available only against state officers that have a "special relation" with—that is, "*proximity to* and *responsibility for*"—the "challenged statute[s]." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (internal quotations omitted).  Here, those officers are the State Registrar and the Secretary of State. *Cf. Harris v. McDonnell*, No. 5:13-cv-077, __F. Supp. 2d__, 2013 WL 6835145, at *6 (W.D. Va. Dec. 23, 2013) (holding that "the State Registrar of Vital Records, has [the necessary] proximity and responsibility and is a proper party defendant" even though the State of Virginia intervened to defend the state statute and a county clerk was already a defendant).

Contrary to Plaintiffs' implication, the State's intervention pursuant to 28 U.S.C. § 2403(b) does not constitute a waiver of sovereign immunity.  As the Supreme Court has explained, "[t]he fact that the State appear[s] and offer[s] defenses on the merits does not foreclose consideration of the Eleventh Amendment." *Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 683 n.18 (1982).  Rather, where it is contended that a federal statute waives sovereign immunity, the "State's consent to suit must be 'unequivocally expressed' in the text of the relevant statute." *Sossamon v. Texas*, 131 S. Ct. 1651, 1658 (2011) (quoting *Pennhurst State*

*Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)). This is a "'stringent'" test. *Id.* (quoting *College Savings Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 675 (1999)). The Supreme Court has instructed that "sovereign immunity . . . be strictly construed, in terms of its scope, in favor of the sovereign." *Id.* (internal quotations omitted).

The text of 28 U.S.C. § 2403(b) does not include an "unequivocally expressed" waiver of sovereign immunity. To the contrary, the statute very clearly limits the scope of an intervening State's exposure to liability. In pertinent part, the law states: "The State shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party *as to court costs* to the extent necessary for a proper presentation of the facts and law *relating to the question of constitutionality*." 28 U.S.C. § 2403(b) (emphases added). Nothing in this statement even remotely suggests a waiver of sovereign immunity for any relief against the State—injunctive or monetary—beyond "court costs . . . relating to the question of constitutionality." *Id.*; *see Arizonans for Official English v. Arizona*, 520 U.S. 43, 70 n.25 (1997) ("Section 2403(b) by its terms subjects an intervenor 'to all liabilities of a party *as to court costs*' required 'for a proper presentation of the facts and law relating to the question of constitutionality.'" (quoting 28 U.S.C. § 2403(b))); *Tennessee v. Garner*, 471 U.S. 1, 22 (1985) ("The State is a party only by virtue of 28 U.S.C. § 2403(b) and is not subject to liability."). Indeed, Plaintiffs themselves admit as much. *See* Doc. 61 at 4 (acknowledging that an intervening State under Section 2403(b) "shall be liable only for certain court costs"). This makes sense, because intervention pursuant to 28 U.S.C. § 2403(b) is limited to defending the constitutionality of a state law and is not an affirmative effort to invoke the jurisdiction of a federal court.

In *Comfort ex rel. Neumyer v. Lynn School Committee*, 131 F. Supp. 2d 253 (D. Mass. 2001), the U.S. District Court for the District of Massachusetts reached this very conclusion. There, the Commonwealth of Massachusetts had "intervened under Section 2403(b) to defend the constitutionality of the Massachusetts Racial Imbalance Act." *Id.* at 254 n.2. The court found the Commonwealth had "[p]lainly" not waived its sovereign immunity because its "focused intervention [under Section 2403(b)] [was] limited to 'presentation of evidence' and 'argument on the questions of constitutionality,' and d[id] not unmistakably evidence an intent by the Commonwealth to subject itself in federal court to the entire gamut of the plaintiffs' state and federal claims." *Id.*

In contrast, no court has ever held that a State's intervention pursuant to 28 U.S.C. § 2403(b) constitutes a waiver of sovereign immunity. Plaintiffs rely on *Maine v. Taylor*, 477 U.S. 131 (1986), but that case did not address the question of sovereign immunity. The Supreme Court decided only that Section 2403(b)'s conferral of "all the rights of a party" includes the right to appeal. *Id.* at 136. It did not discuss immunity or the language in the statute that expressly limits an intervening State's liability.

## II.   NEITHER THE FACIAL NATURE OF THIS CHALLENGE NOR THE DOCTRINE OF CLAIM PRECLUSION ELIMINATES PLAINTIFFS' THRESHOLD OBLIGATION TO JOIN THE PROPER DEFENDANTS.

In defense of their decision not to sue the proper state officials, Plaintiffs offer two arguments. *First*, they note that their case "present[s] a facial constitutional challenge." Doc. 61 at 3. *Second*, they rely on the anticipated preclusive effect of any judgment in this case. *Id.* Neither argument is remotely sufficient to overcome Plaintiffs' failure to join the defendants necessary to invoke the jurisdiction of this Court.

A. **The Facial Nature of Plaintiffs' Challenge Does Not Excuse Their Failure to Join the Proper Defendants.**

As one defense of their decision not to join additional defendants, Plaintiffs point to the fact that they "seek facial invalidation of the state's marriage ban." *Id.* at 11. They contend that "a facial invalidation necessarily involves a legal conclusion extending beyond the particular Plaintiffs and Defendants at issue, to all other plaintiffs and defendants who might be affected by the statute." *Id.*

The problem for Plaintiffs, however, is that the requirements of Article III apply to facial constitutional challenges just as they do to all other cases in federal courts. Regardless of the type of case or the relief requested, the plaintiffs in "every federal case" must "ma[ke] out a 'case or controversy' between himself and the defendant within the meaning of Art[icle] III." *Warth*, 422 U.S. at 498. Indeed, many facial constitutional challenges are actions seeking declaratory judgments, which the Supreme Court has unequivocally held must satisfy the dictates of Article III. As discussed above, this requires a plaintiff to sue all defendants to whom his injury "fairly can be traced," *Simon*, 426 U.S. at 41, and to ensure that his injury is not actually the "result[] [of] independent action of some third party not before the court," *id.* at 42.

If Plaintiffs were correct and there were no proper-defendant requirement for facial constitutional challenges, any individual impacted by a statute could avail himself of the courts by bringing such a challenge against anyone, including persons with no connection whatsoever to the administration or enforcement of the law. Under their theory, Plaintiffs could have sued the mayor of the City of Huntington or even each other, so long as they alleged a facial constitutional challenge. That cannot be correct. Like every other constitutional principle of standing, the proper-defendant requirement is critical to ensuring that federal courts hear only

14

actual controversies "between parties having adverse legal interests, of sufficient immediacy and reality." *MedImmune*, 549 U.S. at 127.

Plaintiffs unsurprisingly offer little to contradict this principle. They are unable to cite a single case that holds that a facial constitutional challenge relieves a plaintiff of his Article III obligation to join all proper defendants. Instead, Plaintiffs assert that "no authority suggest[s] that, in order to properly bring a facial constitutional challenge, they are required to implead *all* defendants who might be affected by such a law." Doc. 61 at 12. But this is a red herring. The issue is not whether Plaintiffs have failed to join any and all defendants that might have an interest in the case; rather, it is whether they have named all the defendants who are independently contributing to *their* injury. They have not.

Plaintiffs also imply that some courts have found that a facial constitutional challenge permits extending an injunction "beyond solely the named Defendants," Doc. 61 at 11, but a review of those cases suggests otherwise. In *Doe v. Reed*, the Supreme Court merely explained that an injunction on the named defendant—the Washington Secretary of State—would prohibit him from applying the challenged statute to anyone. 130 S. Ct. 2811, 2817 (2010). The Court did not attempt to enjoin a non-party. Similarly, in *Martin v. Stewart*, 499 F.3d 360 (4th Cir. 2007), the Fourth Circuit did not attempt to enjoin a non-party. Rather, the named "defendants collectively were deemed to represent the entire authority of the State of South Carolina." Doc. 56 at 13. And in *Blackard v. Memphis Area Medical Center for Women, Inc.*, the Sixth Circuit extended an injunction to non-parties, but it did so pursuant to Rule 65 of the Federal Rules of Civil Procedure, not because the case involved a facial constitutional challenge. 262 F.3d 568, 574 (6th Cir. 2001).

Finally, Plaintiffs seem to suggest that the mere act of declaring a statute facially constitutional can—for purposes of standing analysis—redress all of a plaintiff's injuries and control the actions of officials everywhere.  Doc. 61 at 11–13, 17.  But they confuse the precedential or persuasive effect of a decision on non-parties with a court's power to redress an injury by enjoining a named defendant on pain of contempt.  When a court finds a statute facially unconstitutional, non-parties within the court's jurisdiction would certainly be well-advised to take heed, but courts do not "assume that everyone (including those who are not proper parties to an action) will honor the legal rationales that underlie their decrees."  *Nova Health*, 416 F.3d at 1159; *see also Von Aulock v. Smith*, 720 F.2d 176, 185 (D.C. Cir. 1983) (noting that "the court's judgment is not binding on nonparties" but that it has "*stare decisis* and precedential effect").  More is needed, however, to satisfy the redressability requirement of Article III.  "Redressability requires that the court be able to afford relief through the exercise of its power, not through the persuasive or even awe-inspiring effect of the opinion explaining the exercise of its power."  *Nova Health*, 416 F.3d at 1159 (internal quotations omitted).  That is why all proper defendants must be joined to an action—and thereby subject to the court's direct authority—regardless of whether the case involves a facial constitutional challenge.

**B.    The Doctrine of Claim Preclusion Does Not Excuse Plaintiffs' Failure to Join the Proper Defendants.**

As a second defense of their decision not to join additional defendants, Plaintiffs rely on the preclusive effect of any judgment in this case.  They argue first that the State's intervention in this case precludes "the State[] and . . . all state officials" from relitigating any judgment reached in this case.  Doc. 61 at 6.  They also contend, in the alternative, that "[a] judgment as to the County Clerk Defendants here would bind both the State and the absent county clerks

through its preclusive (*res judicata*) effect" because of "the privity between them and the named County Clerk Defendants."  *Id.* at 8.

This argument is simply nonresponsive.  The issue here is whether Plaintiffs have joined all the defendants necessary to invoke this Court's jurisdiction and thus whether this Court may even proceed to the merits.  In contrast, claim preclusion arises only after a court's jurisdiction has been determined and judgment on the merits has been entered.  *See Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315, 326 (4th Cir. 2007) (noting preclusion requires that "the judgment in the prior action was final and on the merits").  The former concerns whether a defendant must be a part of this case for the case to even go forward; the latter concerns the degree to which a defendant in this case will be bound by the eventual judgment, if any.  The issues are completely unrelated.

This is not the first time that Plaintiffs have conflated two wholly unrelated legal issues.  In briefing on the State's previous motion to dismiss, Plaintiffs similarly muddled the *ex ante* issue of standing with the *ex post* issue of severability.  *See* Doc. 39 at 4, 9–13; Doc. 49 at 6–7.  As here, one issue had to be resolved before the merits, and the other was a question that arose after the merits.  This Court agreed there that the issues had no bearing on each other, *see* Doc. 56 at 27, and it should reach the same conclusion here.[3]

---

[3] Though they are not relevant, it bears noting that Plaintiffs' preclusion arguments are legally suspect.  Doc. 61 at 6–8.  Under Plaintiffs' theory, they could sue two county clerks over the constitutionality of state laws that the clerks do not enforce, deliberately fail to name any state official or entity, and then preclude the State or any state official or entity from relitigating that issue in a subsequent case.  None of Plaintiffs' cases support this remarkable assertion or support the proposition that county officials can "act[] for or stand[] in the place of" state officials, especially where the constitutionality of several state statutes exclusively administered by state officials is at issue.  *Cruz Berrios v. Gonzalez-Rosario*, 630 F.3d 7, 14 (1st Cir. 2010).  In fact, "the very existence of § 2403(b) reflects a recognition that the interests of the State and its localities do not fully overlap where the constitutionality of a state statute is at issue."  *Blair v. Shanahan*, 919 F.Supp. 1361, 1366 (N.D. Cal. 1996).  It is, moreover, highly questionable

### III.   THIS CASE MUST BE DISMISSED.

**A.** As this Court suggested, Plaintiffs' failure to join the proper defendants is a jurisdictional defect, which requires immediate dismissal of this case.  It is well settled that "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *see also Crosby v. City of Gastonia*, 635 F.3d 634, 644 (4th Cir. 2011) (citing *Arbaugh* and noting the "warning klaxon sounded by the Court" regarding immediate dismissal at any time).  Thus, the Federal Rules clearly state that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

This Court cannot attempt to correct Plaintiffs' error, as it lacks the authority to do anything further.  "Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Bochese v Town of Ponce Inlet*, 405 F.3d 964, 974–75 (11th Cir. 2005) (internal quotations omitted).  Where a plaintiff has failed to sue the proper defendant and therefore lacks standing, dismissal is a court's only option. *Top Victory Electronics v. Hitachi Ltd.*, C 10-01579, 2010 WL 4722482 (N.D. Cal. Nov. 15, 2010).  The "lack of standing cannot be cured by adding a party with standing." *Id.* at *4.  After all, "'the plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue,'" and it is his burden to have established jurisdiction. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91 (2005) (citation omitted); *see also Bishop v. Bartlett*, 575 F.3d 419, 424 (4th Cir. 2009) ("[T]he party invoking the jurisdiction of the court must include the

---

whether claim or issue preclusion even applies to the State or its agencies in subsequent federal cases against different plaintiffs. *E.g.*, *United States v. Mendoza*, 464 U.S. 154, 162-63 (1984); *Jones v. S.E.C.*, 115 F.3d 1173, 1181 (4th Cir. 1997) (noting that this doctrine "allow[s] relitigation by a state agency of issues already lost by another agency of the same state") (citation omitted).

necessary factual allegations in the pleading, or else the case must be dismissed for lack of standing.").

Moreover, Plaintiffs here were given the opportunity to join additional defendants, and they deliberately chose not to do so. In its MTD Order, this Court clearly directed Plaintiffs "to *either* 1) seek joinder of whatever additional parties they deem necessary to create greater certainty as to the effect of a ruling in this case, *or* 2) file a responsive pleading explaining why the existing Defendants in this lawsuit are sufficient to bind state authorities and all county clerks should a ruling on the merits be made in favor of Plaintiffs and why joinder of additional parties is not necessary." Doc. 56 at 14 (emphasis added). Given that choice, Plaintiffs decided to forgo their opportunity to join additional parties and gamble on the merits of their responsive pleading. Plaintiffs knew full well that if their pleading did not satisfy this Court's concerns about jurisdiction, dismissal would result. Even if this Court did have authority to allow an amendment of the complaint, Plaintiffs should not be given a *third* bite at the apple.

Recognizing that these arguments for dismissal differ from the Defendant Clerks' arguments on abstention, and that no party has formally moved this Court to dismiss on these grounds, the State has separately filed with this memorandum a motion to dismiss for lack of subject-matter jurisdiction. This Court, of course, has the power to address a question of jurisdiction *sua sponte* and at any time in a case. *See Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) (noting that "questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised *sua sponte* by the court"); Fed. R. Civ. P. 12(h)(3). The State has filed the motion merely out of an abundance of caution, to ensure that the record clearly reflects that the issue has been raised. *Grupo Dataflux v. Atlast Global Grp., L.P.*, 541 U.S. 567, 571 (2004)

("Challenges to subject-matter jurisdiction can of course be raised at any time prior to final judgment.").

**B.** Alternatively, as the State has previously explained, this Court should grant summary judgment to Defendants because the absence of the two state officials precludes Plaintiffs' desired relief. Doc. 68 at 16–18. Under Rule 19 of the Federal Rules of Civil Procedure, a ruling against Plaintiffs is appropriate if they have failed to join defendants necessary for the Court to "accord complete relief" to Plaintiffs, *i.e.*, if judgment in favor of Plaintiffs would prejudice those absent defendants or be inadequate in some way. *See* Fed. R. Civ. P. 19(a)–(b). Here, the State Registrar and the Secretary of State are necessary for complete relief.

## CONCLUSION

This Court should dismiss the Complaint for lack of jurisdiction.

Respectfully submitted,

PATRICK MORRISEY
ATTORNEY GENERAL

_____*s/ Elbert Lin*_____
Elbert Lin (WV Bar Number: 12171)
  *Solicitor General*
Julie Ann Warren (WV Bar Number: 9789)
Julie Marie Blake (WV Bar Number: 12271)
  *Assistant Attorneys General*
Office of the Attorney General
State Capitol Building 1, Room E-26
Charleston, WV 25305
Telephone: (304) 558-2021
Fax: (304) 558-0140
E-mail: elbert.lin@wvago.gov

*Counsel for the State of West Virginia*

Dated: February 19, 2014

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

CASIE JO MCGEE and SARA ELIZABETH
ADKINS; JUSTIN MURDOCK and WILLIAM
GLAVARIS; and NANCY ELIZABETH
MICHAEL and JANE LOUISE FENTON,
Individually and as next friends of A.S.M.,
minor child,

                         **Plaintiffs,**

v.                                             **Civil Action No. 3:13-24068**

KAREN S. COLE, in her official capacity as
CABELL COUNTY CLERK; and VERA J.
MCCORMICK, in her official capacity as
KANAWHA COUNTY CLERK,

                         **Defendants**

and

STATE OF WEST VIRGINIA,

            **Defendant-Intervenor.**

### CERTIFICATE OF SERVICE

I, Elbert Lin, counsel for Defendant-Intervenor, hereby certify that on February 19, 2014,

I electronically filed the foregoing *State Of West Virginia's Opposition To Plaintiffs' February*

*12 Memorandum Of Law And Memorandum In Support Of Its Motion To Dismiss For Lack Of*

*Subject-Matter Jurisdiction* with the Clerk of the Court using the CM/ECF system, which will

send notification of such filing to:

Camilla B. Taylor                          Elizabeth L. Littrell
LAMBDA LEGAL DEFENSE &          LAMBA LEGAL DEFENSE &
EDUCATION FUND, INC.               EDUCATION FUND, INC.
Suite 2600                                 Suite 1070
105 West Adams                        730 Peachtree Street, NE
Chicago, IL 60603                   Atlanta, GA 30308-1210
Email: ctaylor@lambdalegal.org      Email: blittrell@lambdalegal.org

Heather Foster Kittredge
THE TINNEY LAW FIRM
P. O. Box 3752
Charleston, WV 25337-3752
Email: heather@tinneylawfirm.com

Karen L. Loewy
LAMBDA LEGAL DEFENSE &
EDUCATION FUND, INC.
19th Floor
120 Wall Street
New York, NY 10005-3904
Email: kloewy@lambdalegal.org

Lindsay C. Harrison
JENNER & BLOCK
Suite 900
1099 New York Avenue, NW
Washington, DC 20001-4412

Luke C. Platzer
JENNER & BLOCK
Suite 900
1099 New York Avenue, NW
Washington, DC 20001-4412
Email: lplatzer@jenner.com

Paul M. Smith
JENNER & BLOCK
Suite 900
1099 New York Avenue, NW
Washington, DC 20001-4412
Email: psmith@jenner.com

R. Trent McCotter
JENNER & BLOCK
Suite 900
1099 New York Avenue, NW
Washington, DC 20001-4412

Email: rmccotter@jenner.com

John H. Tinney , Jr.
THE TINNEY LAW FIRM
P. O. Box 3752
Charleston, WV 25337-3752
Email: jacktinney@tinneylawfirm.com

Lee Murray Hall
JENKINS FENSTERMAKER
P. O. BOX 2688
Huntington, WV 25726-2688
Email: lmh@jenkinsfenstermaker.com

Sarah A. Walling
JENKINS FENSTERMAKER
P. O. Box 2688
Huntington, WV 25726-2688
Email: saw@jenkinsfenstermaker.com

Charles R. Bailey
BAILEY & WYANT
P. O. Box 3710
Charleston, WV 25337-3710
Email: cbailey@baileywyant.com

Michael W. Taylor
BAILEY & WYANT
P. O. Box 3710
Charleston, WV 25337-3710
Email: mtaylor@baileywyant.com

*s/ Elbert Lin*
Elbert Lin