## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

CASIE JO MCGEE and SARAH ELIZABETH
ADKINS; JUSTIN MURDOCK and WILLIAM
GLAVARIS; and NANCY ELIZABETH
MICHAEL and JANE LOUISE FENTON,
individually and as next friends of A.S.M.,
minor child,

                                Plaintiffs,

v.                                                                CIVIL ACTION NO.   3:13-24068

KAREN S. COLE, in her official capacity as
CABELL COUNTY CLERK; and VERA J.
MCCORMICK, in her official capacity as
KANAWHA COUNTY CLERK,

                                Defendants,
and

STATE OF WEST VIRGINIA

                                Intervenor Defendant.

### MEMORANDUM OPINION AND ORDER

This case is one of many proceeding through the federal courts to challenge same-sex marriage bans in the wake of the United States Supreme Court decision in *Windsor*, decided just over one year ago.   As nearly every decided case has concluded that the marriage bans violate the fundamental right of individuals to marry, the pace of this litigation accelerated dramatically in the past few months and culminated with the Supreme Court's denial of appeals from federal circuit court decisions finding these marriage bans unconstitutional.   This Court explicitly acknowledged the likely binding result of the case which arose in this Circuit, discussed in more

detail below, and stayed the proceedings here pending its resolution.   Now, that binding precedent and the acceptance by key state and county officials of its effect provide a clear blueprint for this Court's ruling.

The right to marry is a fundamental right, giving every individual the opportunity to exercise choice in this important relationship.   As such, the government must not interfere in that choice unless it demonstrates compelling state interests and carefully tailors its restrictions to protect those interests.   While some may continue to hold a religious or moral objection to same-sex marriage, governmental restrictions on individual rights must be justified by more than simply strongly, or even widely, held opinions or traditions.   Use of government power to prohibit the exercise of the right to marry fails to meet this test.

For the reasons stated below, Plaintiff's Motion for Summary Judgment (ECF No. 40) is **GRANTED**.   Defendant Vera J. McCormick's Motion to Dismiss (ECF No. 26), Defendant Karen S. Cole's Motion to Dismiss (ECF No. 31), Defendants' Joint Motion for Summary Judgment (ECF No. 62), the State of West Virginia's Cross-Motion for Summary Judgment (ECF No. 66), and the State of West Virginia's Motion to Dismiss (ECF No. 85) are **DENIED**.   The State of West Virginia's Motion to Continue Merits Stay and to Calendar Oral Argument on Threshold Issues (ECF No. 126) is **DENIED in part** and **DENIED AS MOOT in part**. Plaintiff's Cross-Motion to Lift Stay and Enter Judgment (ECF No. 127) is **DENIED AS MOOT**. Plaintiff's Motion and Amended Motion to Lift Stay and Enter Judgment (ECF No. 131, ECF No. 132) are **GRANTED**

## I.   Statement of Facts

Plaintiffs in this case seek declaratory relief overturning West Virginia Code Sections 48-2-104 and 48-2-401, as well as "any other sources of West Virginia law that exclude same-sex

couples from marriage" (collectively called the "marriage ban").   ECF No. 8.   Plaintiffs also seek an injunction prohibiting Defendant Clerks from enforcing the marriage ban.

West Virginia Code Section 48-2-104 lists the requirements for marriage license applications.   Among other requirements, "[t]he application for a marriage license must contain a statement of the full names of both the female and the male parties" and "must contain the following statement: 'Marriage is designed to be a loving and lifelong union between a woman and a man.'"   W. Va. Code § 48-2-104(a) & (c) (2012).   Section 48-2-401 governs persons authorized to perform marriages and states in part, "Celebration or solemnization of a marriage means the performance of the formal act or ceremony by which a man and woman contract marriage and assume the status of husband and wife."   W. Va. Code § 48-2-401 (2001).

Plaintiffs are six gay and lesbian West Virginians, comprising three same-sex adult couples: Casie Jo McGee and Sarah Elizabeth Adkins; Justin Murdock and William Glavaris; and Nancy Elizabeth Michael and Jane Louise Fenton, and A.S.M., the minor child of Ms. Michael and Ms. Fenton.   Plaintiffs brought this action pursuant to 42 U.S.C. § 1983 against Karen S. Cole, in her official capacity as Cabell County Clerk, and Vera J. McCormick, in her official capacity as Kanawha County Clerk.   ECF No. 8.   Defendant Clerks are responsible for issuing marriage licenses and recording marriages that take place in jurisdictions outside of West Virginia.   Their responsibilities include ensuring that marriage licenses and records comply with West Virginia law, including the marriage ban.   Each of the same-sex couples sought a marriage license from one of the defendant clerks, and each was initially denied.   Plaintiffs contend that Defendants are violating Plaintiffs' due process rights and equal protection rights, as guaranteed by the Fourteenth Amendment to the United States Constitution.   Since the filing of the pending motions, the State of West Virginia ("the State") has directed county clerks to issue marriage licenses to same-sex

couples.  ECF No. 134.  West Virginia's marriage ban, however, remains in place.  Plaintiffs accordingly request that this Court declare the marriage ban unconstitutional and enjoin enforcement of the marriage ban by Defendant Clerks.

The State intervened as a defendant, pursuant to 28 U.S.C. § 2403(b) and Federal Rules of Civil Procedure 5.1(c) and 24(a), to defend the constitutionality of the marriage ban.   ECF No. 25.

The defendant clerks each filed a motion to dismiss.   This Court addressed their motions in part in a previous order, but reserved ruling on their motions as to the second prong of *Burford* abstention.  ECF No. 56.  The State has also filed a motion to dismiss.  Plaintiffs, Defendants, and the State have each filed a motion for summary judgment.   The State has also filed a motion to stay and to schedule oral argument on the threshold issues in this case, to which Plaintiffs responded with a cross-motion to lift the stay and enter judgment.   Plaintiffs later filed another motion and an amended motion to lift the stay and enter judgment.

In Section II, the Court discusses the State's motion to dismiss and the clerks' respective motions to dismiss.   Section III addresses the parties' motions for summary judgment.   Section IV briefly examines the State's motion to stay and schedule oral argument, as well as Plaintiff's responsive cross-motion.   Finally, Section V discusses Plaintiffs' most recent motion and amended motion to lift the stay and enter judgment.

## II.      Motions to Dismiss

### A.  Legal Standard

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it.   Fed. R. Civ. P. 12(b)(1).   It is axiomatic that a court must have subject matter jurisdiction over a controversy before it can render any decision on the merits.  *Adkins v. United*

*States*, 923 F. Supp. 2d 853, 856 (S.D. W. Va. 2013).   If a Court does not have subject matter jurisdiction over a case, the case must be dismissed.   *See id.*

Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: "facial attacks" and "factual attacks."   *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir.1986), rejected on other grounds, *Sheridan v. United States*, 487 U.S. 392 (1988).   A "facial attack" questions whether the allegations in the complaint are sufficient to sustain the court's jurisdiction. *Id.*   If a "facial attack" is made, the court must accept the allegations in the complaint as true and decide if the complaint is sufficient to confer subject matter jurisdiction.   *Id.*

On the other hand, a "factual attack" challenges the truthfulness of the factual allegations in the complaint upon which subject matter jurisdiction is based.   In this situation, a "district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Trentacosta* v. *Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir.1987)).

**B.  The State's Motion to Dismiss**

Here, the State's motion to dismiss raises a facial attack.   The State argues that Plaintiffs do not have Article III standing, and therefore this Court does not have jurisdiction, because Plaintiffs have failed to sue the defendants to whom their injury can be properly traced.   ECF No. 86.   Under Article III of the United States Constitution, a plaintiff has standing only if she can demonstrate that her "injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision."   *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).   Although an injury is not

fairly traceable to the defendant if it is caused exclusively by the acts of some third party, "that does not exclude injury produced by determinative or coercive effect upon the action of someone else." *Id.* at 169.   The party invoking the court's jurisdiction bears the burden of establishing standing.   *Lujan*, 504 U.S. at 561.

The State maintains that Plaintiffs do not have standing because they did not sue the State Registrar and Secretary of State.   ECF No. 86.   The State Registrar is exclusively responsible for creating marriage license applications and, the State claims, is therefore the only official tasked with carrying out West Virginia Code § 48-2-104.   ECF No. 86.   Likewise, the Secretary of State is solely responsible for determining which religious celebrants may solemnize marriages in West Virginia.   ECF No. 86.   County clerks, the State explains, are only responsible for accepting applications for marriage licenses and issuing those licenses.   ECF No. 86.

Plaintiffs here chose to sue the county clerks of Cabell and Kanawha counties because those clerks refused to issue marriage licenses to the same-sex couple plaintiffs.   ECF No. 8.   A marriage license is necessary to legally marry under the laws of West Virginia.   W. Va. Code. § 48-2-101 (2001).   By refusing to issue licenses, the clerks themselves directly took action which the plaintiffs claim violated their rights under the Fourteenth Amendment.   ECF No. 8.   The denial of marriage licenses is the precise injury for which the plaintiffs seek redress in this case. ECF No. 8.   Plaintiffs do not seek an injunction requiring the State Registrar to change the marriage forms in West Virginia, nor do they seek to compel the Secretary of State to change the manner in which religious celebrants are authorized to perform marriages in the State.   ECF No. 8.   What the plaintiffs request is an injunction requiring the county clerks to issue marriage licenses to same-sex couples.   ECF No. 8.   This is an act that can be taken by the county clerks, as they are the officials responsible for issuing licenses in their respective counties.   *See* ECF No.

86.   Furthermore, this is an act that will directly redress the injury complained of in this case, that is, the denial of marriage licenses to same-sex couples.   *See* ECF No. 8.   *See Bostic v. Shaefer*, 760 F.3d 352, 371 (4th Cir. 2014) ("[L]icense denial constitutes an injury for standing purposes . . . [Plaintiffs] can trace this denial to [Clerk's] enforcement of the allegedly unconstitutional Virginia Marriage Laws, and declaring those laws unconstitutional and enjoining their enforcement would redress [Plaintiffs'] injuries.").

The State Registrar may be the only official authorized to alter West Virginia's marriage forms, but other courts have afforded injunctive relief requiring officials to interpret existing laws and forms in a way that is constitutional, rather than requiring the officials to physically change their contents.   *See Califano v. Westcott*, 443 U.S. 76, 89-90 (1979) (affirming district court's decision to extend federal benefits statute to cover previously excluded class because statute, as originally enacted, violated equal protection clauses); *Griego v. Oliver*, 316 P.3d 865, 889 (N.M. 2013) ("[In] New Mexico statutes, rules, regulations, or the common law, whenever reference is made to marriage, husband, wife, spouse, family, immediate family, dependent, next of kin, widow, widower or any other word, which, in context, denotes a marital relationship, the same shall apply to same-gender couples who choose to marry.").   Clearly, the Court here can direct the defendants to issue marriage licenses without directing the State Registrar to issue different forms. Likewise, the plaintiffs here do not challenge the Secretary of State's decisions regarding religious celebrants.   Rather, they challenge the entire ban on same-sex marriage.   ECF No. 8. Accordingly, these parties are not necessary to afford the plaintiffs injunctive relief.

Moreover, the State has not demonstrated that it is necessary to join either the State Registrar or the Secretary of State in order to award declaratory relief.   The State maintains that the doctrine of sovereign immunity under the Eleventh Amendment bars declaratory relief in this

case.   ECF No. 86.   Sovereign immunity protects the State from direct suit and from actions

seeking retrospective, monetary relief.   *See Edelman v. Jordan*, 415 U.S. 651, 676 (1974).   Here,

the plaintiffs did not bring direct action against the State, nor do they seek monetary or injunctive

relief against the State.   Instead, the State chose to intervene in this action specifically to defend

the constitutionality of West Virginia's marriage ban.   By intervening to protect this interest, the

State is subject to any declaration by this Court that the ban is unconstitutional.[1]   Even if

sovereign immunity does shield the State from the immediate effect of the Court's declaration,

Plaintiffs' injury here is directly traceable to the defendants and the Court can thus afford the

plaintiffs full relief with respect to Defendant Clerks.   *See Bennett*, 520 U.S. at 162.

Accordingly, Plaintiffs have standing and this Court has subject-matter jurisdiction over this case.

### C.  Defendants' Motions to Dismiss

Defendant Clerks have each filed a motion to dismiss.   ECF No. 26; ECF No. 31.   They

also raise a facial attack, arguing that the Court should abstain from exercising jurisdiction in this

case under the *Burford* abstention doctrine.   As the Defendants' arguments substantially overlap,

the Court will address their motions to dismiss together.

---

[1] The State's Eleventh Amendment defense may also fail under the exception to state sovereign immunity recognized in *Ex Parte Young*, 209 U.S. 123 (1908).   Under *Ex Parte Young*, a plaintiff may challenge a state law as unconstitutional by suing a state official responsible for administering and enforcing that law.   *See Ex Parte Young*, 209 U.S. at 155-56.   Although the defendants here are county, rather than state, officials, they may be proper defendants in an *Ex Parte Young* suit. In *Bostic*, the Fourth Circuit held that a county clerk was a proper defendant under *Ex Parte Young* because the clerk had "the requisite connection to the enforcement of the Virginia Marriage Laws due to his role in granting and denying applications for marriage licenses."   *Bostic*, 60 F.3d at 371 n. 3; *see also Griffin v. Cnty. School Bd. of Prince Edward Cnty.*, 377 U.S. 218, 228 (1964) (acknowledging that "suits against state and county officials" to enjoin unconstitutional action are permitted under *Ex Parte Young*).   Here, Defendant Clerks are the officials directly responsible for effectuating the marriage ban and causing Plaintiffs' alleged injury.   Accordingly, this action may be a proper *Ex Parte Young* suit, by which Plaintiffs can obtain prospective, equitable relief against the State.

There is only a "narrow range of circumstances in which *Burford* can justify the dismissal of a federal action." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726 (1996). The *Burford* abstention doctrine provides that "[c]ourts should abstain from deciding cases presenting 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' or whose adjudication in a federal forum 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *First Penn-Pac. Life Ins. Co. v. Evans*, 304 F.3d 345, 348 (4th Cir. 2002) (emphasis added) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 361 (1989) ("*NOPSI*")). If either one of these two grounds for abstention is met, the Court should not exercise jurisdiction. As this Court held in its previous order of January 29, 2014, this case does not involve difficult questions of state law, and therefore the first ground for *Burford* abstention is not met. ECF No. 56.

The second ground for *Burford* abstention exists where federal jurisdiction would interrupt the State's interest in regulatory uniformity. *See NOPSI*, 491 U.S. at 362. Whether to abstain under *Burford* is an "equitable decision [that] balances the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court, against the State's interests in maintaining 'uniformity in the treatment of an essentially local problem.'" *Quackenbush*, 517 U.S. at 728 (quoting *NOPSI*, 491 U.S. at 362). *Burford* abstention may apply where the Court determines that "the State's interests are paramount and that a dispute would best be adjudicated in a state forum." *Id.* at 728. Where, as here, the only question involved is one of federal law, *Burford* abstention is generally inappropriate. *See Martin v. Stewart*, 499 F.3d 360, 368 (4th Cir. 2007) (holding that federal courts generally may not abstain from deciding purely federal issues); *Harper v. Pub. Serv. Comm'n of West Virginia*, 396 F.3d 348 (4th Cir. 2005) (holding that federal

jurisdiction would not disrupt state policy because case presented federal question under the Commerce Clause).

Here, Defendants argue that if this court awards Plaintiffs their requested relief, only the clerks of Cabell and Kanawha counties will be enjoined from refusing to issue marriage licenses to same-sex couples.   ECF No. 27; ECF No. 31.   This, Defendants argue, would disrupt uniformity among the counties of West Virginia.   The Court disagrees.   First, Plaintiffs request both injunctive and declaratory relief.   A declaration by this court that the marriage ban is unconstitutional would strike down the ban entirely, not just as applied to the defendant clerks. Even if declaratory relief cannot extend beyond the named defendants, the State has intervened in this case to defend the constitutionality of the marriage ban.   The State has had a full and fair opportunity to litigate the constitutionality of the marriage ban in this case.   Accordingly, under the doctrine of res judicata, a declaratory judgment from this court would preclude the State from relitigating the issue in future proceedings.   *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394 (1981) ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.").   In other words, the ruling would create uniformity because the State would be precluded from defending the constitutionality of the marriage ban in the future.[2]   Second, in light of the ruling from the U.S. Circuit Court of Appeals for the Fourth Circuit in *Bostic v. Shaefer*, 760 F.3d 352 (4th Cir. 2014), the State has discontinued its enforcement and defense of the marriage ban.   ECF No. 134; *see also* Erin Beck, *W. Va. Ends Ban on Gay Marriage: Governor, A.G. Direct Their Staff to Follow*

---

[2] Plaintiffs also contend that any judgment in this case would bind all county clerks in West Virginia because there is privity between the defendant clerks and the remaining county clerks. ECF No. 61.   The Court declines to reach this issue.   The remaining county clerks are not parties in the present case.   Whether they are in privity with the defendant clerks for purposes of preclusion is a thus not an issue properly before the Court at this time.

*Ruling of Appeals Court*, Charleston Gazette (WV), Oct. 10, 2014, *available at* Westlaw, 2014
WLNR 28289127.   Therefore, even if this Court's ruling only applies to the defendant clerks, it
will not disrupt uniformity among the counties because the governor of West Virginia has already
instructed all county clerks to issue marriage licenses to same-sex couples.[3]   *See* ECF No. 134;
Beck, *W. Va. Ends Ban on Gay Marriage*.   Third, defendants cannot require that plaintiffs join
every possible party, when the parties sued are sufficient to award the requested relief.   Plaintiffs
properly sued the two county clerks who refused to issue marriage licenses under to the challenged
marriage ban.   ECF No. 8; *see Wolf v. Walker*, 9 F. Supp. 3d 889, 895 (W.D. Wis. 2014)
(explaining that plaintiffs properly sued clerks who denied them marriage licenses and did not
need to sue every county clerk in Wisconsin).   Finally, Plaintiffs here "have the right under 42
U.S.C. § 1983 to bring a lawsuit to vindicate their own constitutional rights."   *See Wolf*, 9 F. Supp.
3d at 895.   The important constitutional rights at issue in this case outweigh the State's interest in
developing its marriage policy without scrutiny from the federal courts.   *See Zablocki v. Redhail*,
434 U.S. 374, 379 n.5 (1978) ("[T]here is, of course, no doctrine requiring abstention merely
because resolution of a federal question may result in the overturning of a state policy.").   For
these reasons, the Court refuses to abstain under *Burford*.

Defendant McCormick and the State also maintain that abstention is proper pursuant to
*Baker v. Nelson*, 409 U.S. 810 (1972).   ECF No. 27; ECF No. 68.   As this Court explained in a
previous order, *Baker* is not binding on this case.   ECF No. 56.   Subsequent to that order, the

---

[3]  Defendant Cole cites the governor's decision in support of her argument that the claims against
her be dismissed as moot.   ECF No. 136.   Under *Friends of the Earth, Inc. v. LaidLaw Envt'l
Servs., Inc.*, 528 U.S. 167 (2000), the "voluntary cessation of a challenged practice does not
deprive a federal court of its power to determine the legality of the practice."   *Laidlaw*, 528 U.S. at
169-70.   Where, as here, a government entity voluntarily ceases enforcing a specific policy but
may legally resume its enforcement at a later time, the court retains jurisdiction to rule on the
constitutionality of that policy, and the issue is not moot.   *See id.*; *see also Bell v. City of Boise*,
709 F.3d 890, 900 (9th Cir. 2013).

Fourth Circuit in *Bostic* held: "In light of the Supreme Court's apparent abandonment of *Baker* and the significant doctrinal developments that occurred after the Court issued its summary dismissal in that case, we decline to view *Baker* as binding precedent." *Bostic*, 760 F.3d at 375. Accordingly, *Baker* does not require abstention in this case. The State's motion to dismiss and Defendants' respective motions to dismiss are thus denied.

### III.   Motions for Summary Judgment

#### A.  Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. The facts here are not in dispute. Each party has moved for summary judgment. ECF No. 40; ECF No. 62; ECF No. 66. It is thus the task of this Court to apply the law to the undisputed facts and determine which party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

**B. Defendants' Motion for Summary Judgment**

Defendants filed a joint motion for summary judgment raising five arguments.   ECF No. 62.   First, Defendants argue that West Virginia law and the duties of their office require them to deny marriage licenses to same-sex couples.   ECF No. 62.   This is no defense to a constitutional challenge to that state law, which must yield to the supremacy of constitutional protections.   As the governor of West Virginia has now directed all county clerks to issue marriage licenses to same-sex couples, and Defendants have complied with that directive, this argument is no longer supported.   *See* ECF No. 134.   Moreover, as discussed above, it is precisely because their actions were in compliance with the challenged marriage ban that the county clerks are the proper defendants in this action.   *See id.*   This argument is thus without merit.

Second, Defendants argue that Plaintiffs have failed to join two necessary parties, the State Registrar and Secretary of State.   Although Defendants phrase their arguments in terms of Federal Rule of Civil Procedure 19, rather than Article III, the Court's discussion of the proper defendants in this case, outlined above in response to the State's motion to dismiss, is equally applicable here. The State Registrar and Secretary of State need not be joined for this Court to afford Plaintiffs their requested relief.

Third, Defendants, citing *United States v. Windsor*, 133 S. Ct. 2675 (2013), claim that striking down West Virginia's marriage ban would disrupt the balance between state and federal power by interfering with the State's authority to regulate marriage under the U.S. Constitution. ECF No. 62.   Although this Court agrees that the power to regulate marriage is reserved to the states, Plaintiffs here raise a genuine issue of federal law: whether West Virginia's marriage ban violates the Fourteenth Amendment of the U.S. Constitution.   As the court in *Bostic* explained: "*Windsor* does not teach us that federalism principles can justify depriving individuals of their

-13-

constitutional rights; it reiterates *Loving*'s admonition that the states must exercise their authority without trampling constitutional guarantees.   Virginia's federalism-based interest in defining marriage therefore cannot justify its encroachment on the fundamental right to marry."   *Bostic*, 760 F.3d at 379.   *Bostic*'s logic applies with equal force to West Virginia's marriage ban. Principles of federalism do not outweigh this Court's duty to ensure that West Virginia's laws do not violate Plaintiffs' constitutional rights.

Fourth, Defendants claim that *Baker v. Nelson* controls this case and defeats Plaintiffs' constitutional claims.   As explained above, this Court and the Fourth Circuit have determined that *Baker* is not binding.   Finally, Defendants argue that, should this Court reach the merits, West Virginia's marriage ban does not violate the Due Process or Equal Protection Clauses of the Fourteenth Amendment.   This argument was also raised by the State in its motion for summary judgment and is discussed in the following section.

### C.  Plaintiffs' Motion and the State's Cross-Motion for Summary Judgment

In their motion for summary judgment, Plaintiffs contend that that West Virginia's marriage ban is unconstitutional on its face.   ECF No. 41.   Plaintiffs argue that the ban violates their fundamental rights under the Due Process Clause of the Fourteenth Amendment, and discriminates based on sexual orientation, in violation of the Equal Protection Clause of the Fourteenth Amendment.   ECF No. 41.

The State responded and filed a cross-motion for summary judgment, arguing that it is entitled to judgment as a matter of law on three grounds.   First, the State argues that Plaintiffs' failure to join the State Registrar and Secretary of State precludes this Court from granting them full relief under Federal Rule of Civil Procedure 19.   ECF No. 68.   Second, the State contends that *Baker v. Nelson* controls this case.   ECF No. 68.   Third, the State maintains that West

-14-

Virginia's marriage ban is constitutional.   ECF No. 68.   As explained in the preceding sections, the first two arguments are without merit.

The State's third argument, that West Virginia's marriage ban does not violate the Fourteenth Amendment, is unavailing in light of the Fourth Circuit's decision in *Bostic v. Shaefer*. In *Bostic*, two same-sex couples challenged Virginia's marriage ban.   *Bostic*, 760 F.3d at 367. Like West Virginia's ban, Virginia law defined marriage as between one man and one woman, and refused to recognize as valid any marriage between persons of the same sex.   *See id.* at 368.   The plaintiffs in *Bostic* argued that Virginia's marriage ban violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment.   *Id.* at 369.   The court began its analysis by determining the applicable standard of scrutiny, noting that "[u]nder both the Due Process and Equal Protection Clauses, interference with a fundamental right warrants the application of strict scrutiny."   *Id.* at 375.   The court held that marriage is a fundamental right and that "the fundamental right to marry encompasses the right to same-sex marriage."   *Id.* at 376. Accordingly, the court held that strict scrutiny applies whenever a law "significantly interfere[s]" with the right of same-sex couples to marry.   *Id.* at 377.   Virginia's ban on same-sex marriage "unquestionably" met this test, thus the court applied strict scrutiny to determine whether the ban violated the Fourteenth Amendment.   *Id.*

Under strict scrutiny, a law can survive only if it is justified by a compelling state interest and is narrowly drawn to achieve that interest.   *Id.* (citing *Carey v. Population Servs. Int'l*, 431 U.S. 678, 686 (1977)).   The defendants in *Bostic* raised five state interests that they argued could satisfy strict scrutiny: "(1) Virginia's federalism-based interest in maintaining control over the definition of marriage within its borders, (2) the history and tradition of opposite-sex marriage, (3) protecting the institution of marriage, (4) encouraging responsible procreation, and (5) promoting

the optimal childrearing environment." *Id.* at 378.   The Court held that neither federalism nor Virginia's history and tradition were compelling state interests sufficient to overcome the fundamental right to marriage.   *Id.* at 379-80.   Furthermore, the Court held that Virginia's marriage ban was not narrowly tailored to protect the institution of marriage, encourage responsible procreation, or promote an optimal environment for children.   *Id.* at 380-84.   The court thus concluded that Virginia's laws "violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the extent that they prevent same-sex couples from marrying."   *Id.* at 384.

The holding in *Bostic* controls this case.[4]   Like Virginia's marriage ban, West Virginia law defines marriage as a "union between a woman and a man" and does not recognize same-sex marriage.   W. Va. Code § 48-2-104(c).   Plaintiffs here raise the same constitutional challenges to West Virginia's marriage ban that were raised by the plaintiffs in *Bostic.*   ECF No. 8.   Thus, following *Bostic*, this Court must apply strict scrutiny to West Virginia's marriage ban and determine whether the ban is narrowly tailored to achieve a compelling interest.   *Bostic*, 760 F.3d at 377.

West Virginia asserts two interests in banning same-sex marriage: (1) an "interest in expanding gay rights incrementally to avoid disruptive or unforeseen consequences from an abrupt change" and (2) "ameliorating a unique consequence of opposite-sex intercourse," that is, the conception of children.   ECF No. 68.   The State also notes that the West Virginia legislature "was not motivated by a bare desire to harm homosexuals" when it enacted the marriage ban. ECF No. 68.   The State's asserted interests fail for several reasons.[5]   First, the State does not

---

[4] The State concedes that *Bostic* "is binding precedent on the merits of this case."   ECF No. 134.
[5] The Sixth Circuit in *DeBoer v. Snyder*, Nos. 14-1341; 14-3057; 14-3464; 14-5291; 14-5297; 14-5818 (6th Cir. Nov. 6, 2014), reached the opposite result.   The majority there noted two

contend that these interests were the actual motivations underlying the marriage ban.   Instead, the State calls them "conceivable" interests that the legislature "could reasonably have believed" would benefit the State.   ECF No. 68.   Unlike rational basis review, under which the courts may consider any plausible grounds for a challenged law, strict scrutiny limits the Court's analysis to the State's actual purpose for enacting the challenged law.   *See Shaw v. Hunt*, 517 U.S. 899, 908 n. 4 (1996) ("[A] racial classification cannot withstand strict scrutiny based upon speculation about what 'may have motivated' the legislature.   To be a compelling interest, the State must show that the alleged objective was the legislature's 'actual purpose' for the discriminatory classification." (quoting *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 730, n. 16 (1982))); *F.C.C. v. Beach Commc'n*s, *Inc.*, 508 U.S. 307 (1993) (explaining that under rational basis review, a statute stands "if there is any reasonably conceivable state of facts that could provide a rational basis" for the law).   The State has not cited any legislative history or other evidence indicating that the "conceivable" interests it proffers actually motivated the legislature to enact the marriage ban.   The State does contend that the ban was not motivated by animus, but that alone does not demonstrate that the State has a compelling interest in banning same-sex marriage.

---

rationales in support of the marriage bans.   *DeBoer v. Snyder*, Nos. 14-1341; 14-3057; 14-3464; 14-5291; 14-5297; 14-5818, at 21.   First, the court found the marriage bans in Kentucky, Michigan, Ohio, and Tennessee to be rooted in the States' interest in regulating procreation by providing incentives for parents to remain together.   *Id.*   But the opinion then conceded that this view of marriage can no longer be sustained, that marriage now serves "another value—to solemnize relationships characterized by love, affection, and commitment."   *Id.* at 20.   Denying marital status and its benefits to a couple that cannot procreate does nothing to further the original interest of regulating procreation and irrationally excludes the couple from the latter purpose of marriage.   Second, the majority in *DeBoer* implores opponents of the marriage bans to proceed slowly, through the legislative process, and justifies the bans by asserting the States' right to take a "wait and see" approach.   *Id.* at 21.   This approach, however, fails to recognize the role of courts in the democratic process.   It is the duty of the judiciary to examine government action through the lens of the Constitution's protection of individual freedom.   Courts cannot avoid or deny this duty just because it arises during the contentious public debate that often accompanies the evolution of policy making throughout the states.   Judges may not simultaneously find a right violated yet defer to an uncertain future remedy voluntarily undertaken by the violators.

Even if the asserted interests do represent the actual objectives that the State sought to achieve by enacting the marriage ban, these interests cannot survive strict scrutiny. The State's first interest is avoiding an "abrupt" change to state policy. This interest is not compelling under *Bostic*. In *Bostic*, the court held that "[p]reserving the historical and traditional status quo" is not a compelling state interest. *Bostic*, 760 F.3d at 380. Furthermore, the court explained that legalizing same-sex marriage will not destabilize the institution of marriage. *Id.* at 381.

To the extent that West Virginia's interest goes beyond preserving tradition and the institution of marriage, it is still not compelling. The State's laws directly violate the due process and equal protection rights of same-sex couples. The fact that overturning these laws may cause an "abrupt" change does not mean that the laws must not be overturned. Watershed decisions under the equal protection and due process clauses have often brought sudden change. In *Loving v. Virginia*, 388 U.S. 1 (1967), for example, the Supreme Court struck down Virginia's anti-miscegenation statute. *Loving*, 388 U.S. at 12. At the time, sixteen other states had similar laws, and penalties for miscegenation had been "common in Virginia since the colonial period." *Id.* at 6. The Court's decision had the potential to abruptly change the regulation of marriage in Virginia and fifteen other states. *See id.* at 12. Nevertheless, the Court invalidated the law, concluding that it could not stand because "restricting the freedom to marry solely because of racial classifications violates the central meaning of the Equal Protection Clause" and because "[t]he freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men." *Id.* Likewise, restricting the freedom to marry based on sexual orientation violates the Equal Protection and Due Process Clauses. *Bostic*, 760 F.3d at 384. That change may come to West Virginia more immediately than the legislature had hoped is not a compelling reason to allow an unconstitutional ban to stand. Moreover, as explained above,

-18-

West Virginia has already implemented changes to its policy on same-sex marriage and has begun to issue marriage licenses to same-sex couples.  ECF No. 134.  It is therefore unlikely that this Court's decision will cause an abrupt change to current state policy.  The State's first asserted interest thus cannot survive strict scrutiny.

The State's second proffered interest is in "ameliorating" the issues that arise "[w]hen opposite-sex couples conceive an unplanned child and then shirk responsibility."  ECF No. 68. The State argues that opposite-sex and same-sex couples are not similarly situated with respect to marriage because "[o]nly one group can have unplanned pregnancies."  ECF No. 68.  That characteristic, the State concludes, "is a conceivable explanation for the Legislature's decision to create only for that group an incentive under the law to stay together."  ECF No. 68.  Although the State may have a compelling interest in promoting opposite-sex marriage and preventing parents from abandoning their responsibilities, the marriage ban is not narrowly tailored to achieve this goal.  In *Bostic*, the defendants asserted a similar interest, arguing that Virginia sought to provide stability to opposite-sex relationships because they can result in unplanned pregnancies. *See Bostic*, 760 F.3d at 381.  The Fourth Circuit held that if this was the marriage ban's purpose, the law was "woefully underinclusive," pointing out that "[s]ame-sex couples are not the only category of couples who cannot reproduce accidentally."  *Id.*  The court continued: "Because same-sex couples and infertile opposite-sex couples are similarly situated, the Equal Protection Clause counsels against treating these groups differently."  *Id.*  Moreover, the Court explained that "[p]rohibiting same-sex couples from marrying . . . does not serve Virginia's goal of preventing out-of-wedlock births."  *Id.* at 382.  West Virginia's ban is equally underinclusive, making no distinction between opposite-sex couples who can conceive children and those who cannot.  *See* W. Va. Code §§ 48-2-104(a) & (c), 48-2-401.  Furthermore, prohibiting same-sex

marriage does not, in any manner, prevent opposite-sex couples from having unwanted children and then abandoning their responsibilities with respect to those children.   *See Bostic*, 760 F.3d at 382.   The ban is thus not narrowly drawn to achieve the State's asserted interest.   As West Virginia's marriage ban is not narrowly tailored to achieve a compelling state interest, it cannot survive strict scrutiny.

For the foregoing reasons, Plaintiffs' motion for summary judgment is **GRANTED** and the State's cross-motion for summary judgment and Defendant's joint motion for summary judgment are **DENIED**.   The Court grants the Plaintiffs' requested relief and hereby declares that West Virginia Code § 48-2-104(a) & (c) and West Virginia Code § 48-2-401 are unconstitutional in so far as they prohibit same-sex marriage.   Moreover, the Court enjoins Defendant Clerks from enforcing West Virginia Code § 48-2-104(a) & (c) and West Virginia Code § 48-2-401 to the extent that these statutes have been declared unconstitutional.   Finally, the Court enjoins Defendant Clerks from refusing to accept applications and issue marriage licenses to same-sex couples on the same terms as opposite-sex couples under West Virginia Code § 48-2-104(a) & (c) and West Virginia Code § 48-2-401.

### IV.     Motion to Continue Stay and Calendar Oral Argument and Cross-Motion to Lift Stay and Enter Judgment

The State previously filed a motion requesting that the Court continue its stay on the merits until after the U.S. Court of Appeals for the Fourth Circuit issued its mandate in *Bostic* and that the Court schedule oral argument on the threshold issues in this case.   ECF No. 126.   Plaintiff's responded to the State's motion with a cross-motion to lift the stay and enter judgment.   ECF No. 127.   This Court *sua sponte* continued the stay on the merits pending the Supreme Court's decision on the Petition for a Writ of Certiorari in *Bostic*.   ECF No. 130.   Accordingly, the State's motion to continue the stay, and Plaintiffs' cross-motion to lift the stay and enter judgment,

are **DENIED AS MOOT**.   Furthermore, the Court finds that oral argument on the threshold issues in this case is not necessary and would not aid the Court in rendering its opinion.   Thus, the motion to calendar oral argument is **DENIED**.

### V.      Motion and Amended Motion to Lift Stay and Enter Judgment

Following the Supreme Court's decision to deny the Petition for a Writ of Certiorari in *Bostic*, Plaintiffs moved this court to lift the stay and enter judgment.   The Court previously lifted the stay (ECF No. 133) and now enters judgment in this case in favor of Plaintiffs.   Accordingly, Plaintiffs' motion is **GRANTED.**

### Conclusion

For the reasons state above, Plaintiff's Motion for Summary Judgment (ECF No. 40) is **GRANTED**.   Defendant Vera J. McCormick's Motion to Dismiss (ECF No. 26), Defendant Karen S. Cole's Motion to Dismiss (ECF No. 31), Defendants' Joint Motion for Summary Judgment (ECF No. 62), the State of West Virginia's Cross-Motion for Summary Judgment (ECF No. 66), and the State of West Virginia's Motion to Dismiss (ECF No. 85) are **DENIED**.   The State of West Virginia's Motion to Continue Merits Stay and to Calendar Oral Argument on Threshold Issues (ECF No. 126) is **DENIED in part** and **DENIED AS MOOT in part**. Plaintiff's Cross-Motion to Lift Stay and Enter Judgment (ECF No. 127) is **DENIED AS MOOT**. Plaintiff's Motion and Amended Motion to Lift Stay and Enter Judgment (ECF No. 131, ECF No. 132) are **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        November 7, 2014

ROBERT C. CHAMBERS, CHIEF JUDGE

-21-