IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

CASIE JO MCGEE and SARA ELIZABETH
ADKINS; JUSTIN MURDOCK and WILLIAM
GLAVARIS; and NANCY ELIZABETH
MICHAEL and JANE LOUISE FENTON,
Individually and as next friends of A.S.M.,
minor child,

       Plaintiffs,

v.                                       Civil Action No. 3:13-24068

KAREN S. COLE, in her official capacity as
CABELL COUNTY CLERK; and VERA J.
MCCORMICK, in her official capacity as
KANAWHA COUNTY CLERK,

       Defendants,

and

STATE OF WEST VIRGINIA,

       Defendant-Intervenor.

## RESPONSE OF DEFENDANTS KAREN S. COLE AND VERA J. MCCORMICK IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND COSTS

Defendant Karen S. Cole, by counsel, Jenkins Fenstermaker, PLLC, Lee Murray Hall and Sarah A. Walling, and Defendant Vera J. McCormick, by counsel, Bailey & Wyant, PLLC, Charles R. Bailey and Michael W. Taylor, respectfully request that this Court enter an Order denying Plaintiffs' Motion for Attorneys' Fees, Expenses, and Costs in its entirety. Plaintiffs' counsel seeks to recover a staggering $350,256.19 in fees, expenses, and costs. The requested amount is grossly excessive in that it includes expenses that Plaintiffs' counsel incurred for locating "suitable" plaintiffs, seeks payment for duplicative work, and attempts to justify hourly

rates that double, triple, or in some cases even <u>quadruple</u> the prevailing West Virginia hourly rate.  In further opposition to Plaintiffs' Motion, Defendants Cole and McCormick state as follows:

## **FACTUAL BACKGROUND**

As Plaintiffs' counsel proudly states in Plaintiffs' Motion for Costs and Fees, Lambda Legal has been "party counsel in numerous challenges to state laws banning same-sex couples from marriage."  On or about June 26, 2013, Lambda Legal decided to challenge the West Virginia marriage statutes as well.  To do so, they needed to find plaintiffs who lived in West Virginia, and attorneys Camilla Taylor, Elizabeth Littrell, and Karen Loewy began to search for clients.

From June 26, 2013 through September 2013, Lambda Legal attorneys traveled to and from their offices in New York, Chicago, and Atlanta to West Virginia to "locate suitable plaintiffs," conferred with potential local counsel, and drafted a complaint.  Based upon Plaintiffs' counsel's billing records, counsel's search for potential plaintiffs and local counsel and most, if not all, of the drafting of the complaint <u>predated</u> Plaintiffs' attempts to obtain applications for marriage licenses on September 18, 19, and 24, 2013.  It appears, therefore, that counsel hand-picked "suitable" Plaintiffs, drafted a complaint, and then directed Plaintiffs to create a cause of action by applying for marriage licenses with county clerks, who were required by their oaths of office to deny marriage licenses to Plaintiffs.   Unfortunately for Karen Cole and Vera McCormick, and eventually for the Cabell County and Kanawha County taxpayers, the most "suitable" plaintiffs lived in Cabell County and Kanawha County.

Despite Lambda Legal's extensive involvement in civil rights litigation nationwide, including *Harris v. Rainey*[1] case, which was pending in Virginia when they filed this action, and their lauded expertise in this area, they added yet another out-of-state law firm, Jenner & Block, out of Washington, D.C. to Plaintiffs' trial team in this case.  A total of eleven (11) attorneys from three (3) law firms, of which only four (4) attorneys and one (1) firm are admitted to practice in West Virginia, ultimately represented Plaintiffs in this matter.

On October 1, 2013, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief, challenging the constitutionality of West Virginia Code §§ 48-2-104, 48-2-401, and 48-2-603 and "any other sources of West Virginia law that exclude same-sex couples from marriage or from recognition of marriages entered into in another jurisdiction." Compl. at 28. Plaintiffs sought a declaration that the laws violate the Due Process and Equal Protection Clause of the U.S. Constitution, an order permanently enjoining enforcement of those laws, and an order requiring the two Clerk Defendants to "accept applications and issue marriage licenses to same-sex couples on the same terms as different-sex couples." *Id.*  Because Plaintiffs did not name as a defendant the State of West Virginia or any state "agency, officer, or employee," the State of West Virginia moved to intervene as of right pursuant to 28 U.S.C. § 2403(b) for the limited purpose of defending the constitutionality of the statutes in question.  *See* Doc. 25.

The parties agreed that discovery was not necessary in this case and commenced briefing on the merits of Plaintiffs' claims.  Defendants filed Motions to Dismiss, which required Plaintiffs' counsel to prepare and file responses.  Additionally, the parties filed cross motions for summary judgment, which also required preparation of responses and/or replies.  This Court convened one very brief Scheduling Conference, which lasted no more than thirty (30) minutes.

[1] The Virginia same-sex marriage challenge consisted of two cases, *Bostic v. Schaefer*, Civil Action No. 2:13-cv-00395 (E.D.Va.)), and *Harris v. Rainey*, Civil Action No. 5:13-cv-00077 (W.D.Va.).  *Bostic* was decided first, and the Fourth Circuit granted the *Harris* plaintiffs leave to intervene in the *Bostic* appeal.

On June 10, 2014, in recognition of the parallel issues presented by *Bostic* and the binding effect of the anticipated Fourth Circuit opinion in that case, this Court entered an Order staying this case pending the Fourth Circuit's decision in *Bostic*. *See* Doc. 125.  The Fourth Circuit ultimately found that the Virginia marriage statutes were unconstitutional, and the United States Supreme Court declined to review that holding.  Plaintiffs subsequently moved this Court on October 6, 2014 to lift the stay and enter judgment in favor of Plaintiffs based upon the *Bostic* decision.  On October 7, 2014, this Court lifted its stay and directed the parties to complete briefing on Plaintiffs' Motion to Lift Stay and Enter Judgment.  *See* Doc. 133.

Although this Court had not yet ruled on the pending dispositive motions, Defendants Cole and McCormick began issuing marriage licenses to same-sex couples on October 9, 2014, within hours of the Governor's and Attorney General's decision to follow the Fourth Circuit's decision in *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014).  Immediately upon receiving notification from State Registrar Gary Thompson, Defendants Cole and McCormick directed their offices to issue marriage licenses to same-sex couples upon request.  In fact, Defendant Cole issued one of the first same-sex marriage licenses in the State of West Virginia to Plaintiffs Murdock and Glavaris.  Defendants Cole and McCormick also issued licenses to Plaintiffs Adkins, McGee, Michael, and Fenton upon receipt of their applications.  As the West Virginia marriage statutes were no longer being enforced, the Defendant Clerks requested that this Court dismiss the case as moot.  Although Defendant Clerks had already issued marriage licenses to Plaintiffs and were issuing licenses to any other same-sex couple that applied, this Court entered summary judgment in favor of Plaintiffs on November 10, 2014. *See* Doc. 139. Plaintiffs'

counsel then filed their Motion for Attorneys' Fees, Expenses, and Costs, which, as previously stated, seeks a jaw dropping $350,256.19.[2]

**ARGUMENT**

I.     **Plaintiffs' Motion For Attorneys' Fees, Expenses And Costs Should Be Denied In Its Entirety.**

     A.     **The Requested Amount Is High Enough To Shock The Conscience Of The Court.**

42 U.S.C. § 1988 provides that "***the court, in its discretion, may*** allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]"  Defendant Clerks recognize that the Fourth Circuit generally finds that "a prevailing plaintiff 'should ordinarily recover an attorney's fee **unless special circumstances would render such an award unjust.**'"  *Lefemine v. Wideman*, 758 F.3d 551 (4th Cir. 2014) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)) (emphasis added).   In this case, special circumstances justify an outright denial of Plaintiffs' Motion, because the fee award sought by Plaintiffs' counsel is outrageous and grossly excessive.

The Fourth Circuit Court of Appeals determined that this Court's discretion extends to an outright denial of attorneys' fees in civil rights cases, even where the plaintiff has prevailed, where the fee application seeks recovery of an amount "so outrageously excessive as to shock the conscience of the court."  *Fair Housing Council of Greater Washington v. Landow*, 999 F.2d 92 (4th Cir. 1993).  Plaintiffs have submitted a staggering fee request in excess of $350,000 – more than ten (10) times the cost of Defendant Cole's defense in this case – which is certainly

---

[2] Plaintiffs' Motion included nine (9) exhibits including affidavits by their counsel describing their experience, justifying their incredibly high hourly rates, and describing the exorbitant amount of time and effort expended in litigating this case.  Plaintiffs also included separate billing and expense records from each attorney and law firm retained to represent them.  For the Court's convenience, Defendant Clerks combined these billing records into one spreadsheet listing all entries in chronological order, which highlights the duplicative billing and excessive time for which Plaintiffs' counsel now seek payment.  *See* Exhibit A, Plaintiffs' Attorneys' Fees Chart.

5

outrageously excessive and shocking to the conscience.  Furthermore, "'[t]he purpose of Section 1988 is to ensure effective access to the judicial process' for persons with civil rights grievances."  Here, Plaintiffs did not lack sufficient access to the judicial process.  Instead, Plaintiffs' counsel "recruited" Plaintiffs and directed them to create a cause of action, so that they could file suit in West Virginia.  Lambda Legal utilized its "considerable expertise" to find "suitable plaintiffs," and counsel now essentially requests a finder's fee.  *See* Docket No. 145, *Memorandum in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses and Costs* at p. 7.

In *Landow*, the Fair Housing Council of Greater Washington ("FHC") sought fees under § 1988 for a claim brought under the Fair Housing Act.  The FHC claimed that it incurred more than $604,113 in attorneys' fees and expenses and sought recovery of $537,113.  In reviewing the FHC's motion, the district court noted that "'if there are motions for attorneys' fees and expenses that should be disallowed in their entirety simply because of the outrageously excessive amount requested, the pending motion would fit the bill.'"  *Id*. at 95.  However, believing that the Fourth Circuit would reverse a denial of the entire fee amount, the court awarded FHC's counsel $20,000.  The FHC appealed the reduction, and the defendant, Nathan Landow, cross-appealed the award.

The Fourth Circuit noted that "other circuits allow a district court to deny a request for attorneys' fees in its entirety when the amount of fees requested by the prevailing party is so outrageously excessive as to shock the conscience of the court."  *Id*.  The Court's opinion included a discussion of the "leading" case on the issue of denial of fees, *Brown v. Stackler*, 612 F.2d 1057 (7th Cir. 1980).  In *Brown*, the plaintiff sought to enjoin enforcement of an Illinois statute.  *Landow*, 999 F.2d at 96.  At the time *Brown* was filed, however, a challenge to a similar Virginia statute was pending before the Supreme Court.  *Id*.  After the Supreme Court's decision,

the district court entered judgment in favor of *Brown* and granted leave to file an attorneys' fees petition.  *Id*.  The fee petition sought payment for more than 800 hours of billable time, and the district court denied the request as "inflated to an intolerable degree."  *Id*.

On appeal, the Seventh Circuit affirmed the denial of fees.  The court held that:

> If, as appellant argues, the court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such conduct would be reduction of their fee to what they should have asked for in the first place.  To discourage such greed a severer reaction is needful[.]

*Id*.  The Fourth Circuit, finding the *Brown* rationale "very persuasive," therefore held that "a district court may, in its discretion, deny a request for attorneys' fees in its entirety when the request, submitted pursuant to 42 U.S.C. § 1988, is so outrageously excessive it 'shocks the conscience of the court.'"  *Id*.  (quoting *Sun Publishing Company, Inc. v. Mecklenburg News, Inc.*, 823 F.2d 818, 819 (4th Cir. 1987)).  Although the plaintiff argued that a total denial of fees would discourage attorneys from representing civil rights claimants, the Fourth Circuit "believed[d] the rule adopted [in *Landow*] d[id] not encroach upon this laudable goal in the slightest.  It simply telegraphs a signal to attorneys . . . to act responsibly when submitting petitions for attorneys' fees."  *Id*.

Here, the fee petition submitted by Plaintiffs' counsel is so outrageously excessive that it shocks the conscience.  Specifically, in this case, just as in *Brown*, a challenge to a similar statute in the same federal circuit was pending at the time Plaintiffs' filed their Complaint.  In fact, Plaintiffs' counsel filed that challenge.  Because Plaintiffs' counsel was also involved in numerous other actions challenging same-sex marriage bans before, during, and after this case was active, the pleadings filed in this case bear a remarkable similarity to pleadings filed by the

same counsel in cases filed *before* this matter.  *Compare* Exhibit B, Complaint, *Harris v. Rainey*, Civil Action No. 5:13-cv-00077, specifically ¶¶ 62-73; 81-end, filed on August 1, 2013, *with* Docket No. 8, the Complaint filed in this action, specifically ¶¶ 37-end.  Despite the remarkable similarities in these pleadings, Plaintiffs' counsel still racked up over $17,000 in fees to draft this Complaint.  *See* Exhibit C, Spreadsheet regarding Time to Draft Complaint.  This certainly is outrageously excessive in light of the striking similarities between the Complaints.[3]

The excessiveness of the fees extends to other pleadings in this action.  Plaintiffs' counsel filed a "Notice of Constitutional Question," which consists of a one (1) page document with the Complaint attached.  Plaintiffs' counsel spent more than fourteen (14) hours preparing this one (1) page document.  *See* Exhibit E, Spreadsheet regarding Notice of Constitutional Question.[4] As the substantive portion[5] of the Notice of Constitutional Question consists of less than 70 words, Plaintiffs' counsel seeks remuneration at a rate of approximately five (5) words an hour. No paying client would ever accept that level of productivity (or lack thereof), no matter the experience of counsel, but Plaintiffs apparently expect the taxpayers to open their wallets and basically hand their counsel a blank check.

Finally, in addition to these specific and egregious examples, counsels' time sheets evidence certain themes or trends, including multiple billings for the same task (for example, seven (7) separate people seek to be paid for reviewing the motion to intervene filed by the State

---

[3] Similarly, Plaintiffs' counsel incurred over 130 hours in billable time preparing the Motion for Summary Judgment.  Much like the Complaint, the Motion for Summary Judgment bears significant similarity to the Motion for Summary Judgment filed on September 30, 2013, in *Harris v. Rainey*, Civil Action no. 5:13-cv-00077, which is three months prior the Motion for Summary Judgment was filed in this action.  *See* Exhibit D, Motion for Summary Judgment, *Harris v. Rainey*, Civil Action No. 5:13-cv-00077.  Specifically, for example, compare the text of the argument under the heading "Virginia's Marriage Bans are Unconstitutional Under Any Standard of Review" in *Harris* with the argument section under the heading "The Marriage Ban is Unconstitutional Under Any Standard of Review" filed in this action.
[4] Because Plaintiffs' counsel blocked billed certain tasks, undersigned cannot specifically determine the amount of time.  However, this spreadsheet includes a calculation of every entry that includes time billed related to preparing the one page "Notice of Constitutional Question."
[5] "Substantive portion" means the actual body of the "Notice" and excludes the case caption and signature blocks of counsel.

of West Virginia); billing for communications between co-counsel, some of which the hours billed do not even match (See, *e.g.*, the Oct. 9, 2013 teleconference between Karen L. Loewy, who billed .5 for the teleconference, while Paul M. Smith (whose hourly rate approaches $800 per hour) billed .75 for the same conference); and billing for press conferences and/or reviewing press in the case, including billing to travel for a press conference that never occurred, such as the September 22, 2013 entry of Elizabeth Littrell.[6]

In sum, Plaintiffs' counsel clearly took a "see what sticks" approach that was "inflated to an intolerable degree" in preparing their fee petition. Based upon *Brown* and *Landow*, Plaintiffs' counsel attorneys' fee request should therefore be denied.

**B.    Special Circumstances Justify Denial Of Plaintiffs' Motion.**

**1.    This Case Presented Issues Of Statutory Interpretation Rather Than Allegations Arising From Defendant Clerks' Individual Conduct.**

Although this Court found that Plaintiffs' injury was traceable to the Defendant Clerks because they or their staff denied Plaintiffs' applications for marriage licenses, neither Plaintiffs' counsel nor this Court have found that Defendant Clerks had the discretion to decline to enforce the laws of the State of West Virginia, or in any manner abused their discretion. This case did not arise from the use of excessive force. It did not involve claims arising from discrimination against a particular individual or violation of a known and well established right. Instead, Defendant Clerks and their staff followed existing and validly enacted law, as they must do without discretion.

Ms. Cole and Ms. McCormick denied Plaintiffs' applications for marriage licenses based upon statutes enacted by the West Virginia Legislature, as the duly elected representatives

---

[6] It is curious that Plaintiffs' counsel would travel to West Virginia for a press conference on September 22, 2013, to have a press conference regarding the filing of the Complaint when one couple had not even sought a marriage license yet. *See* Compl., Doc. No. 8 at ¶ 23, stating that on ***September 24, 2013*** Plaintiffs Justin Murdock and William Glavaris sought a marriage license.

of the citizens of the State of West Virginia. As constitutional officers of the State of West Virginia, Defendant Clerks cannot arbitrarily select the laws that they will obey and the ones they will disregard. County clerks simply do not (and should not) have the authority to enforce or refuse to enforce laws based on their personal opinions, or the political climate of the day. Defendant Clerks took an oath of office, pursuant to Article IV, Section V of the West Virginia Constitution which required them to follow West Virginia law as they discharged their duties as the Clerks of the Cabell and Kanawha County Commissions. Failure to do subjects them to penalties of indictment for malfeasance, misfeasance or neglect of official duty. Further, if Defendant Cole or Defendant McCormick knowingly issues a marriage license in violation of West Virginia law, she is guilty of a misdemeanor punishable by fine not exceeding $500 and confinement in the County regional jail for not more than one year, or both. W.Va. Code §48-2-502. Defendants, however, are excellent foot soldiers and, in fact, began issuing marriage licenses to same sex couples within an hour of being directed to do so by the Governor and/or the Registrar.

> **2.** **Filing This Case Was Unnecessary, As The Outcome Of *Bostic v. Rainey* Would Dictate West Virginia's Marriage Laws.**

As previously stated, *Bostic* and *Harris* were well underway by the time this case was filed. In fact, Plaintiffs' counsel filed a substantially similar Complaint on behalf of the plaintiffs in *Harris*. Both the plaintiffs and defendants had filed motions for summary judgment in *Bostic*, and briefing was complete on both motions when this case had been pending less than thirty (30) days. It was therefore clear that *Bostic* would unquestionably be decided and appealed to the Fourth Circuit long before this action progressed past its infancy. Despite the overlapping issues and law involved in *Bostic* and *Harris*, Lambda Legal elected to file a nearly identical action in West Virginia.

Neither Plaintiffs nor Defendants in this case dispute that Fourth Circuit law is binding precedent on this Court and in this case.   In fact, the ultimate outcome in *Bostic* was publicly recognized as binding precedent by West Virginia state officials even before this Court entered judgment in favor of Plaintiffs.   A separate action was unnecessary, and resulted only in enormous taxpayer expense.  This Court should not impose a further burden on the taxpayers by requiring payment of Plaintiffs' attorneys' fees.

        3.      **Manufacturing Of A Lawsuit Is A Special Circumstance That Warrants Outright Denial Of Plaintiffs' Motion For Attorneys' Fees And Expenses.**

Plaintiffs' counsel engineered this litigation and should not be entitled to recover fees for instigating a cause of action.   Specifically, pursuant to Plaintiffs' own brief, Lambda Legal utilized its "considerable expertise" to "locate suitable plaintiffs."   *See* Doc. 146 at pg. 7.   This manufacturing becomes further evident upon review of Lambda Legal's bills.

Lambda Legal started billing for its work on this case in June 2013, at least three months before an *actual* controversy existed, i.e. a denial of a marriage application from one of the plaintiffs in this case.  Lambda Legal incurred over $29,000 of the legal fees for which they now seek recovery prior to even meeting with ***"potential"*** plaintiffs.   *See e.g.* billing entry dated August 20, 2013 for Karen L. Loewy (discussing the travel to meet with "potential plaintiffs"); *see also* Exhibit F, Spreadsheet Regarding Pre-Client Activity.   Further, before there was an actual controversy, the attorneys on this matter were already drafting the Complaint, *see e.g.* billing entry dated August 5, 2013 for Camilla B. Taylor, and had incurred over $43,000 in legal fees.   *See* Exhibit G, Spreadsheet Regarding Time Entries Before First Application For Marriage License.  This clearly and unequivocally demonstrates that Plaintiffs' counsel manufactured this litigation.

Creating a lawsuit and seeking payment of more than $350,000 in attorneys' fees and expenses arguably presents an ethical violation. Pursuant to Rule 7.3 of the *West Virginia Rules of Professional Responsibility*, a lawyer "shall not by in-person or telephone contact solicit professional employment from a prospective client . . . when <u>*a*</u> motive for the lawyer's doing so is the lawyer's pecuniary gain." (emphasis added). Here, Plaintiffs' fee petition does not describe the manner in which Plaintiffs' counsel utilized their "considerable expertise" to locate "suitable" plaintiffs and does not state whether Lambda Legal solicited these "potential" clients by phone or in person. However, Plaintiffs' counsel had clearly started the process of bringing this action well before having "suitable plaintiffs," as evidenced by their billing records. Further, Plaintiffs' counsels' reservation of their right to seek attorneys' fees demonstrates that they sought clients with at least <u>some</u> pecuniary motivation.

Depending upon the method in which Plaintiffs' counsel employed their "considerable expertise" to "locat[e] suitable plaintiffs," they ***may*** have violated the *West Virginia Rules of Professional Conduct*. Whether or not an ethical violation did occur, however, such "plaintiff shopping" justifies outright denial of Plaintiffs' fee petition, as manufacturing a lawsuit does not ensure access to the judicial process within the spirit of 42 U.S.C. § 1988. *See Daly v. Hill*, 790 F.2d 1071, 1076-1077 (4th Cir. 1986) (discussing that purpose of awarding fees is to ensure access to the judicial process, not to create windfalls for the attorneys). Further, refusing fees would not discourage attorneys from representing civil rights claimants, since the attorneys were so eager to file suit that they travelled here to recruit plaintiffs before the plaintiffs had even attempted to obtain a license.

**4.      Imposing The Burden Of Plaintiffs' Attorneys' Fees On Two County Clerks And The Taxpayers Of Two Counties Is Inherently Unjust.**

Lambda Legal elected not to sue the Governor, the State Registrar, the Attorney General, the Secretary of State or any of the other 53 County Clerks.  Defendants Cole and McCormick maintained throughout this case that they were not properly named as defendants because they could not make or change the law, did not promulgate the marriage license applications, and did not determine who could solemnize marriages.  Further, they argued that it was patently unfair to require the taxpayers of two counties to bear the expense of defending a statute enacted by the Legislature that would apply equally to all counties.    This Court afforded Plaintiffs the opportunity to name additional defendants including additional clerks, or State Officials.  Plaintiffs refused, electing to accuse only Defendants Cole and McCormick of violating their constitutional rights.  *See* Memorandum Opinion and Order, Doc. 56.

Defendants Cole and McCormick did not choose to be sued, nor did they choose to prohibit same-sex marriage in West Virginia.  Rather, they respected the decision made by the West Virginia Legislature and respected the duties of their office when they followed the law and denied Plaintiffs' marriage license applications.

Defendants Cole and McCormick's Motion for Summary Judgment deferred to the West Virginia Attorney General to defend the constitutionality of the challenged statutes.  They merely defended their lack of discretion and described their sworn and binding oath to uphold West Virginia law.  Neither Defendants nor the taxpayers of Cabell or Kanawha County should be held liable for defending against claims that they discriminated against their constituents.

II.     **Plaintiffs' Requested Attorneys' Fees And Costs Are Not Reasonable.**

    A.     **The Attorneys' Fees Are Not Reasonable Under Applicable Law.**

Attorneys representing plaintiffs in civil rights cases have a duty to minimize costs and expenses. *Trimper v. City of Norfolk, Virginia*, 58 F.3d 68 (4th Cir. 1995).  "The burden of establishing applicability of attorneys' fees and costs remains with the fee applicant throughout the entire proceeding."  *West Virginians for Life, Inc. v. Smith*, 952 F.Supp. 342, 344 (S.D.W.Va. 1996) (citing *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992)).  Plaintiffs must therefore prove that they are entitled to recover the fees requested in their petition.  Furthermore, "the granting of such request lies within the court's broad discretion, provided the court 'demonstrates a carefully reasoned analysis of both the factual circumstances and relevant legal precedents.'" *Id*. (quoting *Cooper v. Dyke*, 814 F.2d 941, 950 (4th Cir. 1987).

The Fourth Circuit has consistently held that "[i]n determining a 'reasonable' attorney's fee under section 1988 . . . a district court's discretion must be guided strictly by the factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express*."  *Trimper v. City of Norfolk, Virginia*, 58 F.3d 68 (4th Cir. 1995) (citing *Johnson*, 488 F.2d 714 (5th Cir. 1974) and *Daly v. Hill*, 790 F.2d 1071, 1077 (4th Cir. 1986).  As stated by the Fourth Circuit in *Trimper*:

> The twelve *Johnson* factors are: 1) the time and labor required to litigate the suit; 2) the novelty and difficulty of the questions presented by the lawsuit; 3) the skill required properly to perform the legal service; 4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; 5) the customary fee for such services; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount in controversy involved and the results obtained; 9) the experience, reputation, and ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the attorney's professional relationship with the client; and 12) awards in similar cases.

*Id*. at 73 (citations omitted).

14

The Court further noted in *Trimper* and in *Daly* "that the underlying purpose of section 1988, which must always guide the awarding of fees, is to ensure effective access to the judicial process for persons with civil rights grievances without simultaneously producing windfalls to the attorneys. *Id.* (citing *Daly*, 790 F.2d at 1076, 1077). To determine the ultimate fee award, "a district court must apply the *Johnson* factors in initially calculating the reasonable hourly rate and the reasonable number of hours expended by the attorney; the resulting 'lodestar' fee, which is based on the reasonable rate and hours calculation, is 'presumed to be fully compensatory without producing a windfall.'" *Id.* (citing *Daly*, 790 F.2d at 1078).

Plaintiffs' motion focuses on the impressive biographies and experience of their counsel. However, Plaintiffs' motion fails to consider the other *Johnson* factors, as this Court must do in assessing their fee request. This Court's opinion in *Smith* provides a detailed analysis of and guidance in the application of the *Johnson* factors to a factually similar case. Applying this analysis to the current case requires a reduction in the rate requested by counsel to a reasonable West Virginia hourly rate and a reduction in the hours allegedly spent on this case to a reasonable amount of time given counsel's involvement in many prior and nearly identical cases.

      **1.**       **<u>Plaintiffs' Counsel Expended An Unreasonable Amount Of Time And Labor In Litigating This Suit.</u>**

This Court noted in *Smith* that "[t]he fee applicant bears the burden of producing detailed time sheets sufficient to justify the amount of hours he claims to have expended." *Smith*, 952 F.Supp. at 345. While Plaintiffs' counsel provided time sheets itemizing and describing the hours spent in litigating this suit, their time sheets consist of improper "block billing," demonstrate grossly excessive staffing and time, particularly considering counsel's expertise, duplicative work and duplicative and unnecessary travel.

For example, Lambda Legal billed over fifty-five (55) hours to "locating suitable plaintiffs."  *See* Exhibit H, Spreadsheet Regarding Location of Suitable Plaintiffs.  Further, as previously discussed, Plaintiffs' counsel incurred over $17,000 and employed ten (10) separate individuals to draft a Complaint that is substantially similar to the *Harris* Complaint.  Likewise, at least nine (9) individuals worked on Plaintiffs' Motion for Summary Judgment, which again is very similar, and in some parts nearly identical, to the motion for summary judgment that they filed in *Harris*.  Finally, when Plaintiffs' counsel denied Defendant McCormick's request for an extension of time to file a responsive pleading, thereby necessitating motion practice, no less than eight individuals billed time to an issue later described by this Court as a routine professional courtesy.  Plaintiffs' counsel expended more than nineteen (19) hours and $5,000 in discourteously denying this simple and routine request, which this Court ultimately granted.  Despite utilizing eight individuals to handle a request for a deadline extension, Plaintiffs' counsel disingenuously argue that they attempted to "avoid unnecessary or duplicative work or the inefficient use of resources . . ." *See* Doc. 146 at pg. 7.

Plaintiffs' counsel spent a substantial portion of their fee petition touting their impressive legal expertise in litigating the issue of same-sex marriage.  Yet they want this Court to believe that Plaintiffs required the services of eleven (11) separate lawyers to handle this in the most efficient manner.  They offer no reduction in hours or the number of attorneys necessary in exchange for their expertise.  Normally, in exchange for the cost of an experienced attorney, the client receives efficiency and avoids duplication.  Here, highly experienced attorneys who specialize in defending the civil rights of the gay and lesbian community, and who have handled eight virtually identical suits still spent over 430 hours on this case.

The Fourth Circuit has upheld exclusion of fees for multiple attorneys working on a case. *Trimper v. City of Norfolk, Virginia*, 58 F.3d 68 (4th Cir. 1995).  When seeking attorneys' fees under §1988, "attorneys are under a duty to minimize expenses."  *Id*. at 76.  Thus, "the district court's decision [to exclude fees for two attorneys in *Trimper*] was wholly appropriate because the court found that the use of the two additional lawyers ran contrary to their duty to minimize expenses."  *Id*.  Furthermore, the district court "specifically found that the request for three attorneys was excessive because section 1988 does not authorize an award for more than one qualified attorney where the issues are simple.  Properly reducing allowable hours because of overstaffing of attorneys is not an abuse of discretion[.]"

**2.   For Plaintiffs' Counsel, This Suit Did Not Present Novel And Difficult Questions By The Time It Was Filed.**

In *Smith*, this Court noted the plaintiffs' lead counsel's involvement in similar cases in other states.  Therefore, "[w]hile the West Virginia statute in question may contain some unique characteristics," the Court concluded that the *Smith* case "did not involve novel or difficult questions of law and the result was controlled by similar decisions of the courts."

In this case, Lambda Legal was directly involved in eight (8) other cases challenging same-sex marriage bans before filing this case.  As previously stated, Lambda Legal and Jenner & Block were party counsel in *Harris*, which, although it challenged Virginia's same-sex marriage ban, also relied upon Fourth Circuit law.  Further, as argued throughout, the pleadings in *Harris* are substantially similar to those filed subsequently in this matter.  Therefore, this case did not involve novel or difficult questions of law – in fact, it presented issues well-known to Plaintiffs' counsel and already briefed repeatedly by the time they filed this suit.

17

### 3.     Counsel Was Not Precluded From Accepting Other Opportunities.

Plaintiffs' Motion and the attached billing records indicate that Lambda Legal performed most of the work on this case.  According to their website, Lambda Legal has offices in New York, Los Angeles, Chicago, Dallas, and Atlanta.  It employs nearly one hundred (100) people and describes itself as the nation's largest legal organization dedicated to achieving full rights for lesbians, gay men, bisexuals, transgender people and those with HIV. Lambda Legal certainly took on other cases during this time, as they unquestionably handled other pending challenges to same-sex marriage.  The firm's mission is to file challenges to marriage law, as evidenced by the fact that they recruited plaintiffs so that they could file this case.  Needless to say, they did not forego other opportunities to pursue this case.

Likewise, Jenner & Block has offices in New York, Chicago, Los Angeles, and Washington, D.C. and is comprised of approximately 450 attorneys.  Only four (4) of Jenner & Block's hundreds of attorneys worked on this case, which clearly did not preclude the firm from accepting any other opportunities.

The Tinney Law Firm spent 258.50 hours on this case.  Although smaller than Lambda Legal or Jenner & Block, the attorneys from the Tinney Law Firm have not claimed that they missed any other opportunities because they were acting as local counsel in this case.

### 4.     Counsel Seeks A Rate That Far Exceeds The Customary Fee For Legal Services.

Plaintiffs' attorneys claim entitlement to hourly rates of $771-789 for Paul M. Smith, $567-655 for Lindsay C. Harrison, and $320-328 for R. Trent McCotter and Nicholas W. Tarasen.  They cannot show that these rates are even remotely reasonable in West Virginia, but argue instead that the Laffey Matrix should govern their rates because it is commonly accepted in Washington, D.C.  As stated in Plaintiffs' Motion, "[i]n circumstances where it is reasonable

to retain attorneys from other communities . . . the rates in those communities may be considered." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994).

      Plaintiffs simply cannot show that it was reasonable for them to retain the Tinney Law Firm, Lambda Legal, and Jenner & Block to represent them in this case. Lambda Legal has an extraordinary amount of experience litigating the civil rights of lesbians and gay men. While Attorney Smith undoubtedly has a great deal of legal experience, Plaintiffs cite only two cases as his "important victories" – one of which involved the "rights of those who produce and sell video games." Based upon the biography included in Plaintiffs' Motion, Attorney Harrison has significant experience litigating similar cases. However, despite the credentials of Attorneys Smith and Harrison, along with the other attorneys and the Jenner & Block firm itself, Plaintiffs have not explained why Lambda Legal's experience and expertise were insufficient to achieve the same result.

      Plaintiffs also seek hourly rates in excess of $300 for all Lambda Legal attorneys and $300 per hour for John H. Tinney, Jr. This court has noted that $325.00 per hour is on the "high end" for this jurisdiction, but permitted it where there was no objection to the rate, and because the counsel, a partner with years of experience, had performed all of the work herself. *Stiltner v. Cabell Count Comm'n*, 2014 WL 1330206 (S.D.W.Va. 2014). Here, every attorney in every law firm assigned to this case is charging more than is customary in this jurisdiction on every single task.

      Civil rights attorney Cy A. Hill, the Managing Partner of the West Virginia offices of Mannion & Gray, practices almost exclusively in the area of civil rights, defending governmental entities and law enforcement agencies in West Virginia. He confirms that hourly rates for this type of work in Huntington, West Virginia range from $200-250 per hour for partners and $125-

175 per hour for associates.  *See* Exhibit I, <u>Affidavit of Cy A. Hill</u>.  Consistent with Attorney

Hill's Affidavit, the District Court for the Southern District of West Virginia has awarded $250

per hour in a sexual harassment claim brought under 42 U.S.C. § 1983 to an attorney with

twenty-six (26) years of civil rights litigation experience.  *See* Exhibit J, <u>Memorandum Opinion</u>

<u>and Order</u>, *Bratcher v. Dolphin*, Civil Action No. 5:10-cv-01100 (N.D.W.Va. 2013).

**5.     The Risk Of Fee Recovery Was Greatly Reduced When Counsel Chose to
       Begin Pursuing This Case.**

The sixth *Johnson* factor, which considers the nature of the fee sought, considers the risk

assumed by the plaintiffs' law firms.  *Smith*, 952 F.Supp. at 347.  Lambda Legal does not charge

its clients for representation and therefore assumed no risk in representing Plaintiffs in this

matter.  *See* www.lambdalegal.org.  Jenner & Block and the Tinney Law Firm are for-profit law

firms and do charge for representation, whether hourly or by contingency.  However, Plaintiffs

had an incredibly high chance of success given that states' same-sex marriage bans were

overturned in droves following the United States Supreme Court's decision in *United States v.*

*Windsor*, 133 S.Ct. 2675 (2013), and the Tinney Law Firm and Jenner & Block did not take on

substantial risk in representing Plaintiffs in this case.

**6.     This Case Was Not "Undesirable" When Counsel Chose To Take It On.**

Again, at the time this case was filed, Plaintiffs were not "undesirable" clients within the

meaning of *Johnson*, as no statute prohibiting same-sex marriage had survived a challenge.  Even

today, only the Sixth Circuit has found a similar statute constitutional.  While there are certainly

some West Virginia residents, lawmakers, and other elected officials who likely believe that

same-sex marriage should not be permitted, neither Plaintiffs nor their counsel have claimed that

they experienced any backlash after this suit was filed.  Finally, Lambda Legal sought out and

found these clients "suitable."  Clearly, the Court should defer to Lambda Legal's "considerable expertise" in finding "suitable" plaintiffs and find these Plaintiffs' were not "undesirable".

      **7.**    **<u>The Amount Sought By Counsel Is Five (5) Times An Award In A Similar Case And More Than Twice The Amount Sought In Similar Cases.</u>**

Lambda Legal and Jenner & Block, who were both counsel to parties in the *Harris* case in Virginia, asserted in that action that they incurred over $1 million in attorneys' fees and expenses.  However, despite incurring such substantial fees in that matter, they have apparently agreed to accept a mere $60,000.  *See* Exhibit K, <u>Joint Status Report by Defendant Rainey and the *Harris* Class Respecting Entry of Consent Order</u>, Civil Action No. 2:12-cv-00395.  Thus, they agreed to accept $60,000 in a case that required substantially more work because it was briefed and argued at the Fourth Circuit, and the United States Supreme Court.

Further, to Defendants' knowledge, fees have only been awarded in one other case that challenged a same-sex marriage ban.  *Love v. Beshear*, 2014 WL 1922928 (W.D.Ky. 2014).  In *Beshear*, the plaintiffs' counsel received an award of $70,325.00 in attorneys' fees and $453.00 for costs.  In *Geiger v. Kitzhaber*, Civil Action No. 6:13-cv-01834, pending in the Eugene District of the Oregon District Court, the plaintiffs' attorneys seek $184,090 in attorneys' fees.  In *Condon v. Wilson*, Civil Action No. 2:14-cv-04010, pending in the Charleston District of the South Carolina District Court, the plaintiffs' counsel seek $148,044 in attorneys' fees.

Plaintiffs' counsel in this case seek <u>five times</u> the award in the Kentucky case, **nearly six times the amount accepted in *Bostic***, and more than twice the amount sought in similar cases in larger markets with higher hourly rates. Plaintiffs' $350,000 demand is clearly not consistent with amounts received in similar cases.

**B.**     **Plaintiffs' Attorneys Seek Reimbursement For Excessive Travel and for Non Legal Matters.**

Based upon the expenses chart submitted by Lambda Legal attorneys, Plaintiffs seek reimbursement for a total of five (5) flights to and from West Virginia for attorneys Camilla Taylor and Elizabeth Littrell and paralegal Graciela Gonzales.  Of the requested $7,679.94 in costs, $5,428.22 relates to travel costs to and from West Virginia for Lambda Legal attorneys, none of whom ever appeared before this Court.  Of this travel, $3,730.49 was incurred before the Complaint was even filed.  Further, Plaintiffs seek reimbursement for more than 30 hours and $8,000 in expenses counsel spent preparing press releases and/or attending press conferences.

**C.**     **This Court Should Subtract The Fees Attributable To Plaintiff's Unsuccessful Challenge To The Non-Recognition Statute.**

When considering a petition for attorneys' fees under §1988, "the district court must consider 'the degree of the plaintiff's overall success.'"  *Landow*, 999 F.2d at 97 (quoting *Farrar v. Hobby*, 506 U.S. 103 (1992)).  If a plaintiff only succeeds on a portion of his or her claims, which are separate and distinct from unsuccessful claims, "'work on [the] unsuccessful claim[s] cannot be deemed to have been expended in pursuit of the ultimate result achieved.'"  *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  This ensures that "where the plaintiff achieved only limited success," the court awards not an "excessive" amount but "only that amount of fees that is reasonable in relation to the results obtained."  *Hensley v. Eckerhart*, 461 U.S. 424, 434, 440 (1983); *see also Robinson,* 560 F.3d at 244 ("After determining the lodestar figure, the court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones.") (internal quotations and citations omitted).

In this case, Plaintiffs did not "succeed on every significant issue."  Doc. 146 at p. 4. Their Complaint also challenged W.Va. Code § 48-2-104(c) (the "non-recognition statute"), which precluded recognition within West Virginia of same-sex marriages performed outside the

state.  As none of the Plaintiffs had been married elsewhere and sought only to be married in West Virginia, this Court dismissed their claims pertaining to the non-recognition statute. Plaintiffs thus did not prevail on that portion of their claims.

The time sheets submitted by Plaintiffs reflect 58.5 hours and $21,111.25 in fees incurred in challenging the non-recognition statute.  At a minimum, this Court should subtract those fees from any award to Plaintiffs.

**III.   To The Extent Plaintiffs' Counsel Recover Fees And Costs, The State Of West Virginia Is Responsible For Payment Of Any Award.**

As this Court held in *West Virginians for Life, Inc. v. Smith*, 952 F.Supp. 342, 348 (S.D.W.Va. 1996), "[a] § 1988 fee award against a state officer sued in his official capacity imposes liability on the state."  (citing *Brandon v. Holt*, 469 U.S. 464, 471-73 (1985).  Plaintiffs sued Karen Cole in her official capacity as Cabell County Clerk and Vera McCormick in her official capacity as Kanawha County Clerk.  Therefore, any fee award against Defendants Cole and/or McCormick imposes liability upon the State of West Virginia and should be satisfied from the State's budget.

In *Smith*, the plaintiffs sued the Mercer County Prosecuting Attorney in his official capacity and as a representative of the class of Prosecuting Attorneys across the state.  They also sued then-Secretary of State Ken Hechler in his official capacity and as an ex-officio member of the West Virginia Election Commission.  The plaintiffs alleged that a campaign finance law amendment violated their free speech rights.  After this Court entered an Order granting summary judgment in favor of the plaintiffs and permanently enjoined enforcement of the statute, counsel for the plaintiffs sought fees and expenses under § 1988.

Noting again the Fourth Circuit's confirmation that "the purpose of § 1988 'is to ensure effective access to the judicial process for persons with civil rights grievances without

simultaneously producing windfalls to the attorneys," this Court performed the *Johnson* analysis discussed in detail below and calculated a reasonable fee award to the plaintiff's counsel.  This Court also considered the plaintiff's argument that the entire award should be paid by Secretary Hechler.  Secretary Hechler contended that the award should instead be divided equally between him and the 55 prosecuting attorneys who constituted the defendant class.  *Id*. at 348.

This Court discussed the United States Supreme Court's ruling "that the real party in interest in a civil rights case against state officials in their official capacity is the state."  *Id*. (citing *Hutto v. Finney*, 437 U.S. 678, 700 (1978)).  Furthermore, this Court cited two Fifth Circuit cases, *Wyatt v. Cole*, 928 F.2d 718 (5th Cir. 1991), and *Echols v. Parker*, 909 F.2d 795 (5th Cir. 1990), that found the state liable "for § 1988 fees attributable to litigation against county officials who acted as state agents in enforcing unconstitutional statutes."  *Id*.

Like *Smith*, the statutes at issue in this case were passed by the Legislature.  The State Registrar promulgated the marriage license forms.  Defendants Cole and McCormick, as required by their Oaths of Office and under threat of penalty of fine and/or imprisonment, implemented the laws as enacted by the Legislature without discretion to do otherwise.  Therefore, pursuant to *Smith*, any fee award in this case should be the responsibility of the State of West Virginia, and Defendant Cole respectfully requests that this Court order the State to pay the entirety of such an award, if any.

## CONCLUSION

Again, Plaintiffs' counsel seeks to $350,256.19 in fees, expenses, and costs.  This outrageous and grossly excessive request should be denied in its entirety, as it is so inflated as to shock the conscience of the Court and the taxpayers.  Should this Court nevertheless require the Cabell and Kanawha County taxpayers to absorb the cost of Plaintiffs' attorneys' fees and

litigation expenses, Plaintiffs' counsels' unreasonable hourly rates and hours should be appropriately reduced to reflect prevailing West Virginia market rates and to take into consideration the nearly identical pleadings filed by Plaintiffs' counsel in prior similar cases.

Respectfully submitted,


**KAREN S. COLE**

**By Counsel,**

/s/ Lee Murray Hall
Lee Murray Hall, Esquire (WVSB #6447)
Sarah A. Walling, Esquire (WVSB #11407)
JENKINS FENSTERMAKER, PLLC
Post Office Box 2688
Huntington, West Virginia 25726
T:  304.523.2100
F:  304.523.2347
lmh@jenkinsfenstermaker.com
saw@jenkinsfenstermaker.com
*Counsel for Defendant Karen S. Cole*

**VERA J. MCCORMICK,**

**By Counsel,**

 /s/ Charles R. Bailey
Charles R. Bailey (WV Bar #0202)
Michael W. Taylor (WV Bar #11715)
Bailey & Wyant, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia  25337-3710
T: 304.345.4222
F: 304.343.3133
cbailey@baileywyant.com
mtaylor@baileywyant.com
*Counsel for Defendant Vera J. McCormick*