IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CASIE JO MCGEE and SARA ELIZABETH
ADKINS; JUSTIN MURDOCK and WILLIAM
GLAVARIS; and NANCY ELIZABETH
MICHAEL and JANE LOUISE FENTON,
Individually and as next friends of A.S.M.,
minor child,

        Plaintiffs,

v.                                     Civil Action No. 3:13-24068

KAREN S. COLE, in her official capacity as
CABELL COUNTY CLERK; and VERA J.
MCCORMICK, in her official capacity as
KANAWHA COUNTY CLERK,

        Defendants,

and

STATE OF WEST VIRGINIA,

        Defendant-Intervenor.

THE STATE OF WEST VIRGINIA'S RESPONSE TO
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

ORAL ARGUMENT REQUESTED

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ................................................................................... iii

TABLE OF EXHIBITS ........................................................................................... vii

INTRODUCTION .................................................................................................... 1

BACKGROUND ...................................................................................................... 2

I.    The State Intervened Under 28 U.S.C. § 2403(b) For The Limited Purpose Of Arguing The Constitutionality Of Its Statutes While Reserving Sovereign Immunity ........................... 2

II.   The Court Dismissed Plaintiffs' Non-Recognition Claim For Lack Of Standing. ............. 3

III.  Plaintiffs Agreed That The State, As A Limited Intervenor, Did "Not Waive" Its Sovereign Immunity And Would Be "Liable Only For Certain Court Costs." .......................... 4

IV.  This Court Entered Judgment Against The Two County Clerks. .................................... 5

V.   Plaintiffs Now Seek A Fee Award. ...................................................................... 6

SUMMARY OF ARGUMENT ............................................................................... 6

ARGUMENT ........................................................................................................... 8

I.    THE STATE IS IMMUNE FROM ANY LIABILITY FOR ATTORNEY'S FEES. ........ 8

    A.   Section 1988 Does Not Abrogate The State's Immunity From Attorney's Fees. ........ 9

    B.   The State Did Not Waive Its Immunity To Fees. ...................................................... 11

    C.   Plaintiffs Did Not Sue Any State Officials. ............................................................... 14

II.   EVEN IF THE STATE IS NOT IMMUNE, NO FEES SHOULD BE RECOVERED FROM THE STATE. ........................................................................................... 19

III.  IF AN AWARD OF FEES IS APPROPRIATE, THIS COURT MUST REDUCE THE AMOUNT. ...................................................................................................... 21

    A.   This Court Must Subtract Hours Unreasonably Expended Due To Overstaffing. ..... 21

        1.   Eleven Attorneys Was Unnecessary Overstaffing. ................................................. 22

        2.   Any Hours Recoverable Should Be Limited To Non-Duplicative Work. ............... 24

        3.   The Hours Billed Were Excessive In Light Of Similar Arguments Researched And Asserted In Other Cases. ............................................................................. 25

        4.   Time Spent On Public Relations Is Non-Recoverable. .......................................... 26

        5.   Certain Billing Entries Are Too Vague To Meet The Burden Of Proof. ................ 26

    B.   Under Section 1988, Plaintiffs' Counsel May Only Be Reimbursed At Local Prevailing Rates. ................................................................................................... 27

    C.   This Court Should Subtract The Fees Attributable To Plaintiffs' Unsuccessful Challenge To The Non-Recognition Statute. ........................................................... 29

    D.   The Requested Fees Are Unreasonable In Light Of The Fees Awarded In Similar Cases Across The Country. ...................................................................................... 29

i

CONCLUSION ....................................................................................................... 30

CERTIFICATE OF SERVICE ............................................................................... 32

# TABLE OF AUTHORITIES

<u>Cases</u>

*A Helping Hand, LLC v. Baltimore Cnty.*, MD,
  515 F.3d 356 (4th Cir. 2008) ............................................................................... 9

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
  421 U.S. 240 (1975) ........................................................................................... 14

*Arizonans for Official English v. Arizona*,
  520 U.S. 43 (1997) ......................................................................................... 3, 12

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
  548 U.S. 291 (2006) ........................................................................................... 14

*B.E. v. Mount Hope High Sch.*,
  No. 2:11-CV-00679, 2012 WL 3580091 (S.D.W. Va. Aug. 17, 2012) ............. 11–12

*Beers v. State*,
  61 U.S. 527 (1857) ............................................................................................. 11

*Blum v. Stenson*,
  465 U.S. 886 (1984) ..................................................................................... 20, 27

*Bockes v. Fields*,
  999 F.2d 788 (4th Cir. 1993) ............................................................................ 18

*Boggs v. Bd. of Ed. of Clay Cnty.*,
  161 W. Va. 471, 244 S.E.2d 799 (1978) ............................................................ 17

*Bourke v. Beshear*,
  No 14-574, 2015 WL 213651 (U.S. Jan. 16, 2015) ........................................... 20

*Clark v. Dunn*,
  195 W. Va. 272, 465 S.E.2d 374 (1995) ............................................................ 11

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
  527 U.S. 666 (1999) ....................................................................................... 8, 11

*Comfort ex rel. Neumyer v. Lynn School Committee*,
  131 F. Supp. 2d 253 (D. Mass. 2001) ............................................................... 13

*Conde-Vidal v. Garcia-Padilla*,
  2014 WL 5361987 (D.P.R. Oct. 21, 2014) ......................................................... 20

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*,
  482 U.S. 437 (1987) ........................................................................................... 14

*Daly v. Hill*,
  790 F.2d 1071 (4th Cir.1986) ............................................................................ 26

*Deboer v. Snyder*,
  772 F.3d 388 (6th Cir. 2014) ............................................................................ 20

*DeBoer v. Snyder*,
  No. 14-571, 2015 WL 213650 (U.S. Jan. 16, 2015) .......................................... 20

*Dellmuth v. Muth*,
  491 U.S. 223 (1989) ............................................................................................. 9

*Echols v. Parker*,
  909 F.2d 795 (5th Cir. 1990) ............................................................................ 18

*Ex parte Young*,
  209 U.S. 123 (1908) ............................................................................................. 8

*Frew ex rel. Frew v. Hawkins*,
  540 U.S. 431 (2004) ................................................................................ 8, 15

*Glosen v. Barnes*,
  724 F.2d 1418 (9th Cir. 1984) ................................................................. 10

Grendel's Den, Inc. v. Larkin,
  749 F.2d 945 (1st Cir. 1984) ................................................................... 17

*H.J. Inc. v. Flygt Corp.*,
  925 F.2d 257 (8th Cir. 1991) ................................................................... 26

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ........................................................................... passim

*Indep. Fed'n of Flight Attendants v. Zipes*,
  491 U.S. 754 (1989) ................................................................................ 19

*Johnson v. City of Aiken*,
  278 F.3d 333 (4th Cir. 2002) ................................................................... 21

*Kentucky v. Graham*,
  473 U.S. 159 (1985) ........................................................................... 10, 19

*Koster v. Perales*,
  903 F.2d 131 (2d Cir. 1990) .................................................................... 18

*Leroy v. City of Houston*,
  831 F.2d 576 (5th Cir. 1987) ................................................................... 27

*Leroy v. City of Houston*,
  906 F.2d 1068 (5th Cir. 1990) ................................................................. 26

*Los Angeles County v. Humphries*,
  562 U.S. 29 (2010) .................................................................................. 18

*McGee v. Cole*,
  993 F. Supp. 2d 639 (S.D. W. Va. 2014) ............................................. 3, 5

*McGee v. Cole*,
  2014 WL 5802665 (S.D. W. Va. Nov. 7, 2014) ................................. passim

*Missouri v. Jenkins by Agei*,
  491 U.S. 274 (1989) ................................................................. 6, 9, 10, 15

*Monell v. New York City Dept. of Social Servs.*,
  436 U.S. 658 (1978) ................................................................................ 18

*Nash v. Chandler*,
  848 F.2d 567 (5th Cir. 1988) ................................................................... 13

*Nat'l Wildlife Fed. v. Hanson*,
  859 F.2d 313 (4th Cir.1988) ............................................................... 27–28

*Obergefell v. Hodges*,
  No. 14-556, 2015 WL 213646 (U.S. Jan. 16, 2015) ............................... 20

*Ohio Valley Contractors v. Bd. of Ed. of Wetzel Cnty.*,
  170 W. Va. 240, 293 S.E.2d 437 (1982) ................................................. 17

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) .................................................................................... 8

*People for Ethical Treatment of Animals v. Doughney*,
  263 F.3d 359 (4th Cir. 2001) ................................................................... 14

*Plyler v. Evatt*,
  902 F.2d 273 (4th Cir. 1990) ................................................................... 28

*Port Auth. Trans-Hudson Corp. v. Feeney*,
   495 U.S. 299 (1990) ............................................................................ 9, 11

*Roadway Exp., Inc. v. Piper*,
   447 U.S. 752 (1980) ................................................................................ 14

*Robicheaux v. Caldwell*,
   2 F. Supp. 3d 910 (E.D. La. 2014) ........................................................ 20

*Robinson v. Equifax Info. Servs., LLC*,
   560 F.3d 235 (4th Cir. 2009) ........................................................... 28–29

*Rum Creek Coal Sales, Inc. v. Caperton*,
   31 F.3d 169 (4th Cir. 1994) .................................................. 19, 26–27

*SEC v. Pirate Investor LLC*,
   580 F.3d 233 (4th Cir. 2009) ................................................................... 9

*Sossamon v. Texas*,
   131 S. Ct. 1651 (2011) ........................................................................ 9, 11

*Stevens v. Gay*,
   864 F.2d 113 (11th Cir. 1989) ................................................................ 10

*Supreme Court of Virginia v. Consumers Union of U.S., Inc.*,
   446 U.S. 719 (1980) ......................................................................... 16–18

*Tanco v. Haslam*,
   No. 14-562, 2015 WL 213648 (U.S. Jan. 16, 2015) ............................. 20

*Tennessee v. Garner*,
   471 U.S. 1 (1985) ................................................................................... 13

*Turner v. D.C. Bd. of Elections & Ethics*,
   354 F.3d 890 (D.C. Cir. 2004) ............................................................... 18

*Union Elec. Co. v. Mo. Dep't of Conservation*,
   366 F.3d 655 (8th Cir. 2004) ................................................................. 13

*Va. Office for Prot. & Advocacy v. Stewart*,
   131 S. Ct. 1632 (2011) ............................................................................. 8

*Venuti v. Riordan*,
   702 F.2d 6 (1st Cir. 1983) ...................................................................... 17

*West Virginians for Life, Inc. v. Smith*,
   952 F. Supp. 342 (S.D. W. Va. 1996) .................................................... 16

*Will v. Mich. Dep't of State Police*,
   491 U.S. 58 (1989) ................................................................................. 10

*Wyatt v. Cole*,
   928 F.2d 718 (5th Cir. 1991) ................................................................. 18

<u>Statutes</u>

28 U.S.C. § 1920 .......................................................................................... 14

28 U.S.C. § 2403 ................................................................................... passim

42 U.S.C. § 1988 ................................................................................... passim

W. Va. Const. art. VI, § 35 .......................................................................... 11

W. Va. Const. art. X, § 6 .............................................................................. 17

W. Va. Code § 29-12A-8 .............................................................................. 17

W.Va. Code § 48-2-104(c) ............................................................................ 29

West Virginia Code § 48-2-603 ...................................................................... 3

Rules

Fed. R. Civ. P. 5.1 ................................................................................................ 2

Fed. R. Civ. P. 24 ................................................................................................ 3

Other Authorities

Note, *Federal Intervention in Private Actions Involving the Public Interest*,
   65 Harv. L. Rev. 319 (1951) ......................................................................... 14

## TABLE OF EXHIBITS

Exhibit 1.     Chart Reflecting Duplicate Communications Charges

Exhibit 2.     *Harris* Plaintiffs' Complaint (W.D. Va.)

Exhibit 3.     *Harris* Plaintiffs' Memorandum On Summary Judgment (W.D. Va.)

Exhibit 4.     Chart With Breakdown Of Time Spent On Standing Opposition

Exhibit 5.     Chart Of Other Jurisdictions' Fee Awards

Exhibit 6.     Request For Attorney's Fees In Alaska Federal Same-Sex Marriage Case

Exhibit 7.     Request For Attorney's Fees In Colorado Federal Same-Sex Marriage Case

Exhibit 8.     Request For Attorney's Fees In Idaho Federal Same-Sex Marriage Case

Exhibit 9.     Request For Attorney's Fees In Kentucky Federal Same-Sex Marriage Case

Exhibit 10.    Request For Attorney's Fees In Ohio Federal Same-Sex Marriage Case

Exhibit 11.    Request For Attorney's Fees In Oklahoma Federal Same-Sex Marriage Case

Exhibit 12.    Request For Attorney's Fees In Oregon Federal Same-Sex Marriage Case

Exhibit 13.    Request For Attorney's Fees In South Carolina Federal Same-Sex Marriage Case

Exhibit 14.    Request For Attorney's Fees In Utah Federal Same-Sex Marriage Case

Exhibit 15.    Request For Attorney's Fees In Virginia Federal Same-Sex Marriage Case

Exhibit 16.    Chart Summarizing Fees, Expenses, And Costs Billed For Public Relations And
               Press Efforts

## INTRODUCTION

Plaintiffs' request for an award of attorney's fees and costs—seeking an astounding $350,256.19—is deeply flawed.  It seeks fees on behalf of *eleven* attorneys from *three* different entities (a local law firm, a national law firm, and a national advocacy group) at rates as high as $789 per hour for work that in some cases appears to have been already generated in other contemporaneous lawsuits around the country on these very same issues.  It requests non-recoverable payment for work relating to media and public relations, bills for significantly overlapping work, and fails to subtract fees related to Plaintiffs' unsuccessful challenge to West Virginia's non-recognition statute.

Most important, conspicuously missing from Plaintiffs' request is any discussion of the State's sovereign immunity.  As this Court well knows, a State is immune from any suit (regardless of the relief sought) brought in federal courts by her own citizens as well as by citizens of another state, unless certain exceptions apply.  In this case, even Plaintiffs have conceded that the State of West Virginia has properly and expressly preserved its immunity by intervening in a limited capacity pursuant to 28 U.S.C. § 2403(b).  And yet, their request includes nary a mention of the State's immunity—not a word even attempting to explain why fees against the State could arguably be appropriate.

Plaintiffs' silence is a telling acknowledgment.  The Supreme Court has recognized only three exceptions to a State's immunity from fees, and none applies here.  There is no federal statute that clearly abrogates that immunity, nor is there an unequivocal waiver of immunity by the State.  And the third exception—an award of fees ancillary to a grant of prospective relief against a state official—is unavailable by Plaintiffs' own deliberate choice not to join any state officials.  Even after the State asserted that it was necessary and appropriate to join state officials to this suit, Plaintiffs resisted joinder and this Court agreed.  While there may have been a lawful

basis for shifting fees to the State had the State prevailed on its view of the case, there simply is none now.

## BACKGROUND

### I.    The State Intervened Under 28 U.S.C. § 2403(b) For The Limited Purpose Of Arguing The Constitutionality Of Its Statutes While Reserving Sovereign Immunity.

Plaintiffs, who are several private citizens, brought this action under 42 U.S.C. §§ 1983 and 1988 challenging the constitutionality of certain West Virginia marriage laws and seeking declaratory and injunctive relief against two county officials.  Doc. 8, Compl. at ¶¶ 1, 9, 14–19, 21–22 & at 28–29.  Because Plaintiffs drew into question the constitutionality of state statutes without naming the State of West Virginia or any state "agency, officer, or employee" as defendants, the Court was required to notify the State of this lawsuit.  Fed. R. Civ. P. 5.1(a); Doc. 14.  Once Plaintiffs notified the Court that no state official was present, this Court certified the challenge under 28 U.S.C. § 2403 to the state attorney general.  Doc. 16.

Under 28 U.S.C. § 2403(b), a State may intervene in any federal case in which the constitutionality of a state statute is "drawn in question" and in which the "State or any agency, officer, or employee thereof is *not* a party."  28 U.S.C. § 2403(b) (emphasis added); Fed. R. Civ. P. 5.1.  This intervention is limited to the "presentation of evidence" and "argument on the question of constitutionality."  28 U.S.C. § 2403(b).  Upon intervention, the State shall "have all the rights of a party" but will only "be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality."  *Id.*

On November 22, 2013, the "State of West Virginia, through its Attorney General," moved to intervene as of right under 28 U.S.C. § 2403(b).  Doc. 25 at 1, 3.  Consistent with the

statutory language, the State asserted that it sought to intervene "for the sole and limited purpose of defending the constitutionality of [its] statutes" and expressly reserved its sovereign immunity.  Doc. 25 at 1–2.  As the State noted at the time, "the statute explicitly provides, and the Supreme Court has recognized," that "the State's intervention does not waive its sovereign immunity or subject to it liability for damages as a party defendant."  Doc. 25 at 2 (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 70 n.25 (1997)).  The State also noted that "as there are specific state entities that enforce or otherwise execute the statutes in question, [it] d[id] not represent or concede that its presence alone is sufficient to accord Plaintiffs the relief requested should they prevail."  *Id.* at 3.

This Court granted the State's motion to intervene under 28 U.S.C. § 2403(b) on December 2, 2013.  Doc. 28; Doc. 56 at 4 ("The State of West Virginia filed a motion to intervene as a defendant, pursuant to 28 U.S.C. § 2403(b) and Federal Rules of Civil Procedure 5.1(c) and 24(a), to defend the constitutionality of the marriage ban.  The Court granted this motion, allowing the State to proceed as an Intervenor Defendant.").

## II.    The Court Dismissed Plaintiffs' Non-Recognition Claim For Lack Of Standing.

Because Plaintiffs' complaint included no allegations that supported standing to challenge to the state statute prohibiting the recognition of out-of-state same-sex marriages, the State moved to dismiss the complaint to the extent that it challenged that statute.  Doc. 34.  This Court agreed and "dismisse[d] from the case all claims that relate to West Virginia Code Section 48-2-603."  993 F. Supp. 2d 639, 657 (S.D. W. Va. 2014) (Doc. 56 at 27).

III.    **Plaintiffs Agreed That The State, As A Limited Intervenor, Did "Not Waive" Its Sovereign Immunity And Would Be "Liable Only For Certain Court Costs."**

During the next stages of briefing, the State reiterated its sovereign immunity and emphasized that its presence in this case is not an adequate substitute for absent state officials. Doc. 25 at 2–3; Doc. 34 at 3–4; Doc. 49 at 3 & n.3; Doc. 65 at ¶¶ 12, 51, 60, 83–84, & at 20–21; Doc. 68 at 18; Doc. 86 at 3–4, 11–13; Doc. 92 at 4–6; Doc. 101 at n.1; Doc. 126 at 6–7; Doc. 128 at 2; Doc. 134 at 1, 3–5.  In particular, the State raised as an "affirmative defense" in its Answer that "[s]overeign immunity under the Eleventh Amendment bars any judgment against the State, including injunctive relief, declaratory relief, damages, attorneys' fees, or costs under 42 U.S.C. § 1988."  Doc. 65 at 20.  The State also contended that Plaintiffs failed to join the state officials necessary to accord Plaintiffs the relief they seek.  *E.g.*, Doc. 68 at 16–18.

Plaintiffs agreed that the State intervened not as a full defendant, but solely to defend its laws' constitutionality and with its sovereign immunity intact.   In several filings, Plaintiffs conceded that the State had *not* waived its sovereign immunity and that, accordingly, they did not seek relief against the State.  *See* Doc. 61 at 4 ("intervention under Section 2403(b) does not waive a State's sovereign immunity for purposes of damages liability"); Doc. 88 at 5 (arguing that the State's sovereign immunity is not implicated because they did not seek "an injunction against the State").  Plaintiffs expressly acknowledged that under Section 2403, the State "shall be liable only for certain court costs."  *Id*. at 4.

Plaintiffs nevertheless chose not to add any individual state officials as defendants.  On January 29, 2014, this Court specifically directed Plaintiffs to either "seek joinder of . . . additional parties" or "file a responsive pleading explaining . . . why joinder of additional parties

is not necessary." 993 F. Supp. 2d at 658 (Doc. 56 at 13–14). Plaintiffs responded by filing its explanation for not joining any additional parties. Doc. 61 at 3.

## IV.   This Court Entered Judgment Against The Two County Clerks.

On November 7, 2014, this Court entered judgment against the county clerks. *McGee v. Cole*, 2014 WL 5802665, at *3–4, 10 (S.D. W. Va. Nov. 7, 2014) (Doc. 139). According to this Court, the two clerks "are the officials directly responsible for effectuating the marriage ban and causing Plaintiffs' alleged injury." *Id.* at *4 n.1. "By refusing to issue licenses," this Court explained, "the clerks themselves directly took action" that "violated [Plaintiffs'] rights under the Fourteenth Amendment." *Id.* at *1. The clerks "are the officials responsible for issuing licenses in their respective counties," *id.* at *3, and therefore "what the plaintiffs request is an injunction requiring the county clerks to issue marriage licenses to same-sex couples," *id.* at *2.

At the same time, this Court rejected the State's contention that Plaintiffs should have joined certain state officials to the suit. No state officials, the Court explained, were "necessary to afford the plaintiffs injunctive relief." *Id.* at *4. "Plaintiffs do not seek an injunction requiring the State Registrar to change the marriage forms in West Virginia," it held, "nor do they seek to compel the Secretary of State to change the manner in which religious celebrants are authorized to perform marriages in the State." *Id.* at *3. "Plaintiffs' injury here is directly traceable to the defendants and the Court can thus afford the plaintiffs full relief with respect to Defendant Clerks." *Id.* at *4.

The Court's judgment thus did not mention the State or any state officials, but rather enjoined *only* the two clerks. It first "declare[d] that West Virginia Code § 48–2–104(a) & (c) and West Virginia Code § 48–2–401 are unconstitutional in so far as they prohibit same-sex marriage." Then, the Court "enjoin[ed] Defendant Clerks from enforcing West Virginia Code §

5

48–2–104(a) & (c) and West Virginia Code § 48–2–401 to the extent that these statutes have been declared unconstitutional," and "from refusing to accept applications and issue marriage licenses to same-sex couples on the same terms as opposite-sex couples under West Virginia Code § 48–2–104(a) & (c) and West Virginia Code § 48–2–401." *Id.* at *10. Though it did not enter any judgment directly against the State or any state officials, the Court did note that it believed the "declaratory judgment" would "preclude the State from relitigating the issue in future proceedings." *Id.* at *5.

## V.    Plaintiffs Now Seek A Fee Award.

Plaintiffs have now moved under Section 1988 for an award of $350,256.19 in attorney's fees, costs, and expenses. Doc. 145–46. The proposed fees include the work of eleven attorneys from three different entities: a local law firm, a national advocacy group, and a national law firm. Plaintiffs' motion does not identify against whom they seek the award of fees—the defendant clerks, the State, or both—nor does it address the effect of the State's sovereign immunity on their claim for fees.

## SUMMARY OF ARGUMENT

At the threshold, Plaintiffs' request fails with respect to the State because the State is immune from any liability for attorney's fees. Plaintiffs cannot establish that any of the three recognized exceptions that permit the award of attorney's fees against a State apply here. *First*, there is no federal statute that clearly abrogates the State's immunity to fees. Plaintiffs seek fees under 42 U.S.C. § 1988, but the Supreme Court has held that Section 1988 does not strip a State of its immunity to fees. *See Missouri v. Jenkins by Agei*, 491 U.S. 274, 279 (1989). *Second*, the State has not unequivocally waived its immunity to fees. The West Virginia Constitution does not permit the waiver of sovereign immunity when the State is a defendant. And the federal

statute pursuant to which the State intervened—28 U.S.C. § 2403(b)—cannot be considered a waiver of immunity for anything more than ordinary court costs.  *Third*, although immunity does not bar the recovery of fees from a State when a state official has been successfully sued in his or her official capacity for prospective relief, there are no state officials in this suit.  In fact, even though the State repeatedly asserted that state officials were necessary to this case, this Court rejected that argument and Plaintiffs made the deliberate choice not to join any state officials.

But even if this Court were to conclude that the State lacks immunity against attorney's fees, it still should not impose a fee award against the State.  Section 1988 only creates liability for attorney's fees where a party is liable on the merits, and there has been no finding of merits liability or injunction against the State.  Moreover, Section 1988 authorizes only the award of "reasonable" attorney's fees, and the evolving and still unsettled nature of the law in this area suggests that the most appropriate award would be no award.

To the extent the Court makes an award of fees, however, it must be reduced.  Under settled case law, the court must eliminate from any award duplicative work caused by overstaffing this case with eleven attorneys, as well as reduce the claimed hours to account for many pleadings that reflected briefs drafted and submitted in other cases.  The award should also subtract time spent on media and public relations efforts, exclude vague time entries, and discount time expended by attorneys who failed to provide sufficient affidavits.  This Court should also reduce the claimed hourly rate, and subtract any fees and expenses related to Plaintiffs' unsuccessful challenge to the State's non-recognition provision.  And finally, the Court must evaluate the total award in light of awards in similar cases, which suggest that Plaintiffs' request is well above the norm.

**ARGUMENT**

**I.    THE STATE IS IMMUNE FROM ANY LIABILITY FOR ATTORNEY'S FEES.**

As a general rule, the Eleventh Amendment makes a State "immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  That immunity applies "regardless of the nature of the relief sought," *id.*, though it is often and correctly understood as a bulwark for state treasuries against the imposition of "compensatory damages, attorney's fees, and even punitive damages," *Alden v. Maine*, 527 U.S. 706 at 750 (1999).  The Supreme Court has "recognized only two circumstances in which an individual may sue a State." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).  Congress may abrogate a State's sovereign immunity by exercising "its power to enforce the Fourteenth Amendment," or "a State may waive its sovereign immunity by consenting to suit." *Id.*; *see also Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 & n.2 (2011).  A third exception does not technically permit suits against a State, but it recognizes that the Eleventh Amendment does not bar "suits for prospective injunctive relief against state officials." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex parte Young*, 209 U.S. 123 (1908)).

Plaintiffs have not and cannot establish that any of the three exceptions apply here to permit an award of attorney's fees against the State of West Virginia.  Under 42 U.S.C. § 1988—the provision under which Plaintiffs seek fees—"the fee applicant bears the burden of establishing entitlement to an award." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  But in

their motion, Plaintiffs have made no effort to address the question of sovereign immunity.[1]  Nor could they have, as shown in detail below.

### A.    Section 1988 Does Not Abrogate The State's Immunity From Attorney's Fees.

When Congress abrogates state sovereign immunity under its power to enforce the Fourteenth Amendment, it must do so with clear and unequivocal language in the statute.  The Supreme Court has specifically and repeatedly required a "clear statement in the text of the statute ensur[ing] that Congress has specifically considered state sovereign immunity and has intentionally legislated on the matter."  *Sossamon v. Texas*, 131 S. Ct. 1651, 1661 (2011).  This is "a particularly strict standard."  *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990) (citations omitted).  A statute that "makes no reference whatsoever to either the Eleventh Amendment or the States' sovereign immunity," for example, lacks the requisite clarity.  *Dellmuth v. Muth*, 491 U.S. 223, 231 (1989).

Although indisputably an exercise of Congress's power to enforce the Fourteenth Amendment, Section 1988 does not clearly abrogate state sovereign immunity for fees.  As the Supreme Court has explained, Congress could have set aside the States' immunity under Section 1988 "in the exercise of its enforcement power under § 5 of the Fourteenth Amendment," but "the application of § 1988 to the States *did not depend on congressional abrogation* of the States' immunity."  *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 279 (1989) (emphasis added).  The Supreme Court has concluded that Section 1988 only permits the award of fees against a

---

[1] By failing to address this issue, Plaintiffs have waived any argument that the State should be liable for attorneys' fees.  *See A Helping Hand, LLC v. Baltimore Cnty.*, MD, 515 F.3d 356, 369 (4th Cir. 2008) ("It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned." (citations omitted)); *SEC v. Pirate Investor LLC*, 580 F.3d 233, 255 n.23 (4th Cir. 2009) ("[W]e do not consider arguments raised for the first time in a reply brief").

State in a very limited circumstance where "the Eleventh Amendment d[oes] not apply"—*i.e.*, where the fees are "ancillary to a grant of prospective relief" against a state official. *Id.* at 280; *see infra* Part I.C. Congress did *not*, however, speak "sufficiently clearly to *overcome* Eleventh Amendment immunity in enacting § 1988." *Jenkins by Agyei*, 491 U.S. at 280 (emphasis added).

The lack of congressional intent to assess fees under Section 1988 against a State is particularly apparent in cases arising under Section 1983, as this one does, because States are immune from any liability in such cases. It is well settled that Congress did not abrogate state sovereign immunity under Section 1983 and create a private cause of action against States. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The language of § 1983, the Supreme Court has held, "falls far short" of the requirement that an abrogation of state sovereign immunity be "unmistakably clear." *Id.* at 65 (quotations omitted). But Section 1988 only permits a court to award reasonable attorney's fees against "the losing party—the party legally responsible for relief on the merits." *Kentucky v. Graham*, 473 U.S. 159, 164 (1985). "[L]iability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant." *Id.* at 165. Because a State can never be "prevailed against" on the merits in any case arising under Section 1983, it is especially clear that Congress did not intend to permit fees under Section 1988 against a State here.[2]

---

[2] *See Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989) ("Because the state itself cannot be liable on the merits, and because plaintiff failed to amend his complaint to add the state officials acting in their official capacities, we affirm the district court's dismissal of plaintiff's claim for prospective injunctive relief and denial of plaintiff's petition for attorney's fees."); *Glosen v. Barnes*, 724 F.2d 1418, 1421 (9th Cir. 1984) ("It would be anomalous to require the state to pay attorney's fees when the Eleventh Amendment and [precedent] bar recovery of damages from the state.").

### B.      The State Did Not Waive Its Immunity To Fees.

While a State may waive its sovereign immunity, waiver is "altogether voluntary on the part of the sovereignty," *Beers v. State*, 61 U.S. 527, 529 (1857), and any waiver must be "stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction."  *Port Auth. Trans-Hudson Corp*, 495 U.S. at 305–06.  This is a "stringent" test.  *Coll. Savs. Bank*, 527 U.S. at 675.  A waiver must be "strictly construed, in terms of its scope, in favor of the sovereign."  *Sossamon v. Texas*, 131 S. Ct. 1651, 1658 (2011) (internal quotations omitted).  So, for example, "a waiver of sovereign immunity to other types of relief does not waive immunity to damages: [T]he waiver of sovereign immunity must extend unambiguously to such monetary claims."  *Id.* (internal quotations omitted).  And where it is contended that a federal statute waives sovereign immunity, the "State's consent to suit must be 'unequivocally expressed' in the text of the relevant statute" in a way that provides "notice to the States."  *Id.* at 1658, 1661.  If "a statute is susceptible of multiple plausible interpretations, including one preserving immunity," the Supreme Court has instructed that courts "not consider a State to have waived its sovereign immunity."  *Id.* at 1659.

Here, the West Virginia Constitution makes clear that the State's intervention in this case as a defendant did not (and could not) waive the State's immunity.  Under the West Virginia Constitution, "[t]he state of West Virginia shall never be made defendant in any court of law or equity."  W. Va. Const. art. VI, § 35.  This provision has been interpreted to prohibit the waiver of sovereign immunity where the State acts as a defendant, as was true in this case, where the State brought no claims of its own.  *See, e.g.*, *Clark v. Dunn*, 195 W. Va. 272, 276, 465 S.E.2d 374, 378 (1995); *B.E. v. Mount Hope High Sch.*, No. 2:11-CV-00679, 2012 WL 3580091, at *4 (S.D.W. Va. Aug. 17, 2012).

11

But even if the State could have waived its immunity, it did not.  In its very first filing, the State limited its intervention to "the sole and limited purpose of defending the constitutionality of [its] statutes" and "d[id] not waive its right to sovereign immunity."  Doc. 25 at 1–2.  Similarly, in its Answer, the State raised the "affirmative defense" that "[s]overeign immunity under the Eleventh Amendment bars any judgment against the State, including injunctive relief, declaratory relief, damages, attorneys' fees, or costs under 42 U.S.C. § 1988." Doc. 65 at 20.  And it repeated the reservation of immunity in filing after filing.  *See* Doc. 25 at 2–3; Doc. 34 at 3–4; Doc. 49 at 3 & n.1; Doc. 65 at ¶¶ 12, 51, 60, 83–84, & at 20–21; Doc. 68 at 18; Doc. 86 at 3–4, 11–13; Doc. 92 at 4–6; Doc. 101 at n.1; Doc. 126 at 6–7; Doc. 128 at 2; Doc. 134 at 1, 3–5.

Moreover, the federal statute pursuant to which the State intervened—28 U.S.C. § 2403(b)—cannot be considered a waiver of immunity for anything more than court costs. Section 2403(b) permits a State to intervene in federal lawsuits "to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question."   28 U.S.C. § 2403(b).  Intervention is limited to the purposes of "presentation of evidence" and "argument on the question of constitutionality."  *Id.*   An intervening State is given "all the rights of a party," but is only "subject to all liabilities of a party as to *court costs* to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality."   28 U.S.C. § 2403(b) (emphasis added).

As the Supreme Court and other courts have held, this language does not rise to the level of an unequivocally expressed waiver of sovereign immunity.  *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 70 n.25 (1997) ("Section 2403(b) by its terms subjects an intervener 'to

all liabilities of a party as to *court costs*' required 'for a proper presentation of the facts and law relating to the question of constitutionality.' 28 U.S.C. § 2403(b) (emphasis added).  It does not subject an intervener to liability for damages available against a party defendant."); *Tennessee v. Garner*, 471 U.S. 1, 22 (1985) (**"**The State is a party only by virtue of 28 U.S.C. § 2403(b) and is not subject to liability.**"**); *see also Union Elec. Co. v. Mo. Dep't of Conservation*, 366 F.3d 655, 660 (8th Cir. 2004) ("[T]he Attorney General's application to intervene" did not constitute a "waiver of the State's Eleventh Amendment immunity."); *Nash v. Chandler*, 848 F.2d 567, 573 (5th Cir. 1988) ("The State of Texas, appearing in this action as an intervenor pursuant to 28 U.S.C. § 2403(b), is not subject to liability on the merits and consequently cannot be held jointly and severally liable for attorney's fees."); *Comfort ex rel. Neumyer v. Lynn School Committee*, 131 F. Supp. 2d 253, 254 n.2 (D. Mass. 2001) (holding that the Commonwealth had **"**[p]lainly**"** not waived its sovereign immunity because its **"**focused intervention [under Section 2403(b)] [was] limited to 'presentation of evidence' and 'argument on the questions of constitutionality,' and d[id] not unmistakably evidence an intent by the Commonwealth to subject itself in federal court to the entire gamut of the plaintiffs' state and federal claims.**"**).

Even Plaintiffs agree.  They have expressly conceded that "intervention under Section 2403(b) does not waive a State's sovereign immunity for purposes of damages liability."  Doc. 61 at 5.  Under the statute, they acknowledge, a State "shall be liable only for certain court costs." *Id.* at 4 (emphasis added).

This understanding also comports with the purpose of Section 2403(b) to incentivize state defense of laws.  Before the statute's enactment, courts had allowed the government to intervene in private lawsuits to "introduce evidence and to argue the facts and applicable law," but had not granted the government "the full status of a party since it was thought its sovereign immunity

13

prevented any judgment for or against it from being conclusive."  Note, *Federal Intervention in Private Actions Involving the Public Interest*, 65 Harv. L. Rev. 319, 320 (1951).  This statute was passed in 1937 to codify this precise practice—limited intervention—"in recognition of the inadequate treatment constitutional issues had received in suits between private parties."  *Id*. at 322.  To interpret this statute to entirely waive sovereign immunity would contravene this purpose by discouraging the government to participate out of fear of financial liability.

Accordingly, the State could be liable at most for "court costs," which do not include attorney's fees.  As a "general statutory rule," when Congress uses the word "costs," it refers only to the costs listed in 28 U.S.C. § 1920.  *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 254–55, 260 (1975).[3]  That provision includes a list of ordinary court costs, such as docket fees and transcript fees, but does not include attorney's fees.  Courts are not to include attorney's fees within costs unless the statute in question provides some affirmative "evidence that Congress intended to incorporate [] attorney's fee[s]."  *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 761 (1980).  For example, Section 1988 expressly permits an award of "a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  Because there is no such "specific provision for attorneys' fees" in Section 2403(b), *Alyeska Pipeline Serv. Co.*, 421 U.S. at 254, the reference to court costs cannot be read to include such fees.

## C.    Plaintiffs Did Not Sue Any State Officials.

The third possible exception to State immunity from fees—beyond abrogation and waiver—is where state officials are successfully sued in their official capacity for prospective

---

[3] *See, e.g.*, *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 757 (1980); *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297-98 (2006); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987); *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 371 (4th Cir. 2001).

relief.  Under *Ex parte Young*, the Eleventh Amendment does not bar "suits for prospective injunctive relief against state officials" in their official capacities.  *Hawkins*, 540 U.S. at 437.  It also does not bar, the Supreme Court has further concluded, an award of attorney's fees against the State itself for the successful prosecution of such a suit.  *Jenkins by Agyei*, 491 U.S. at 284 (1989) (holding that in an official-capacity suit, "the Eleventh Amendment has no application to an award of attorney's fees, ancillary to a grant of prospective relief, against a State").  That is because the award of fees "reimburses [the plaintiff] for a portion of the expenses he incurred in seeking prospective relief."  *Id.* at 278.

As this Court has made quite clear, however, Plaintiffs have not sought or obtained prospective relief in this case against state officials sued in their official capacities.  The State sought dismissal for that very reason—arguing that there is no jurisdiction because Plaintiffs failed to sue any state officials—and this Court rejected the argument.  The state officials, this Court determined, "are not necessary to afford the plaintiffs injunctive relief" or "declaratory relief."  *McGee v. Cole*, 2014 WL 5802665, at *4 (S.D. W. Va. Nov. 7, 2014) (Doc. 139). Rather, in this Court's view, Plaintiffs properly sought relief solely against the two named county clerks for acts "taken by the county clerks" for which the clerks themselves were "responsible"—specifically, "issuing licenses in their respective counties."  *Id.* at *3.  According to this Court, the clerks themselves could and did "directly t[ake] action" that "violated [Plaintiffs'] rights under the Fourteenth Amendment."  *Id.*  As such, this Court entered an injunction only against the defendant clerks.  *Id.* at *10.

The consequence of this Court's decision and Plaintiffs' litigation choices, unfortunately, is that the county governments of the two defendant clerks must solely bear any award of attorney's fees.  As explained further below, the State contends that this Court should not, in its

discretion, award any attorney's fees. *See infra* Part II.  But if this Court chooses to award fees, the clerks are the only parties available from which to recover the fees, and there is no basis in the law to shift that recovery to the State.

Had Plaintiffs voluntarily joined a state official (or been required by this Court to do so), there would be no immunity and the fee award could be directed in part or in whole against the State in this Court's discretion.  That is what happened in *West Virginians for Life, Inc. v. Smith*, 952 F. Supp. 342 (S.D. W. Va. 1996), a successful constitutional challenge to a state law that had been brought against both county and state officials.  Noting that "[p]assage of the statute involved in this case was the work of the West Virginia Legislature," the court determined that it would be "patently unfair to require West Virginia's fifty-five county governments to shoulder a share of the cost of the State's unconstitutional action."  Accordingly, the court exercised its discretion to assess the entirety of the fee award against the defendant state official and thereby against the state treasury.  *Id.* at 348 & n.4.

The refusal by Plaintiffs and this Court to join a state official prevents this Court from circumventing the State's immunity, however, so any award of fees may only be assessed against the defendant clerks, even though they merely enforced and did not create the challenged state laws.  That is the lesson of *Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719 (1980).  There, the Virginia State Bar was responsible for enforcing certain challenged rules.  Noting that the rules were in fact promulgated by the Supreme Court of Virginia and that the State Bar had actually recommended changes to the rules, the lower court "considered it unjust to require the State Bar defendants to pay attorney's fees" and instead assessed the fees against the Virginia Court.  *Id.* at 738.  The United States Supreme Court reversed, finding the

16

Virginia Court immune and suggesting that the State Bar instead be held liable for the fees, even though the State Bar merely enforced and did not create the rules. *Id.* at 739.

This Court has suggested that the defendant clerks might be deemed state officials because of their role in enforcing state law. *See McGee*, 2014 WL 5802665, at *4 n.1. But this view cannot be squared with West Virginia law. In West Virginia, counties "are fundamentally independent of the State, and accordingly, . . . cannot be considered arms of the State." *Boggs v. Bd. of Ed. of Clay Cnty.*, 161 W. Va. 471, 476, 244 S.E.2d 799, 802 (1978); *see also* W. Va. Const. art. X, § 6 ("The credit of the state shall not be granted to, or in aid of any county, city, township, corporation or person; nor shall the state ever assume, or become responsible for the debts or liabilities of any county, city, township, corporation or person."). Moreover, while the West Virginia Constitution prohibits waiving the immunity of the State or its agencies, *see Ohio Valley Contractors v. Bd. of Ed. of Wetzel Cnty.*, 170 W. Va. 240, 241, 293 S.E.2d 437, 438 (1982), counties have no such immunity, *see* W. Va. Code § 29-12A-8 (waiving immunity for suits against counties).[4]

Several courts have also broadly rejected the notion of "exempting a local entity from liability [for fees] on the theory that it is nothing more than an agent of the state and has no status as a separate entity." *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 959 (1st Cir. 1984). While on the First Circuit, then-Judge Breyer observed that "civil rights action costs (including attorney's fees) are often assessed against defendants who enforce the laws instead of those who enact them" and refused to "carv[e] out a special legal rule excepting cities from cost liability when they seek to enforce state statutes." *Venuti v. Riordan*, 702 F.2d 6, 8 (1st Cir. 1983) (Breyer, J)

---

[4] Indeed, if the county clerks were state officers, this Court should not have certified the absence of state officials as grounds for permitting the State to intervene under Section 2403(b). Doc. 16, 25 at 1, 3.

17

(citing several cases holding school districts and counties liable for fees when they "sought to enforce state statutes").  And more recently, the D.C. Circuit has similarly noted that "'[m]ere' enforcers of unconstitutional laws may be held liable for attorneys' fees" because the point of Section 1988 is not to identify who was at "fault" for the underlying law.  *Turner v. D.C. Bd. of Elections & Ethics*, 354 F.3d 890, 897–98 (D.C. Cir. 2004).    As the D.C. Circuit noted, "[t]he Supreme Court has acknowledged that '[f]ee awards against enforcement officials are run-of-the-mill-occurrences.'"  *Id.* at 898 (citing *Supreme Court of Va.*, 446 U.S. at 739); *see also Koster v. Perales*, 903 F.2d 131, 137 (2d Cir. 1990) (rejecting county official's "agent of the State" argument).

Where local governments or officials truly have no discretion under a state law or policy, they simply should not have been sued in the first place.  The Supreme Court has held that local governments and officials can be sued under Section 1983—whether the suit is brought for money damages or just for prospective relief, as here—only for a policy or custom of the local government.  *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978); *Los Angeles County v. Humphries*, 562 U.S. 29 (2010).    Accordingly, the Fourth Circuit has held that a local government or official is not subject to suit under Section 1983 for carrying out policies set and determined solely by a State.  *Bockes v. Fields*, 999 F.2d 788, 791 (4th Cir. 1993).  The proper response to a suit against a local official acting as an agent of the State is thus to dismiss and require the presence of the appropriate state officials, not to impose liability on the local officials and then shift responsibility for the payment of fees.[5]

---

[5] Two Fifth Circuit cases from nearly two decades ago—*Wyatt v. Cole*, 928 F.2d 718 (5th Cir. 1991), and *Echols v. Parker*, 909 F.2d 795 (5th Cir. 1990)—reached the opposite conclusion but should not be followed.  Unlike the decisions of the First, Second, and D.C. Circuits, the Fifth

From the outset, the State has consistently and repeatedly contended that state officials were necessary and appropriate defendants in this suit, but was rebuffed.  Plaintiffs strongly resisted joining any state officials, and this Court affirmed that decision.  As a result, while there may have been a lawful basis for shifting fees to the State had the State prevailed on its view of the case, there simply is none now.

## II.   EVEN IF THE STATE IS NOT IMMUNE, NO FEES SHOULD BE RECOVERED FROM THE STATE.

**A.**   Should this Court conclude that the State lacks immunity against attorney's fees, it still should not impose a fee award against the State because Section 1988 only permits awards against a liable party.  As discussed above, "Section 1988 simply does not create fee liability where merits liability is non-existent."  *Graham*, 473 U.S. at 168.  Where an intervenor has lost but suffered no liability, the Supreme Court has held that courts may award "attorney's fees . . . only where the intervenors' action was frivolous, unreasonable, or without foundation."  *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989); *see also Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 176 (4th Cir. 1994).("In *Zipes*, the Court held that a prevailing plaintiff in a civil rights case can recover from an intervening party only when the intervening party's action is 'frivolous, unreasonable or without foundation.'").

This Court should award no fee against the State because the State is not liable under the judgment.  The order includes no finding of liability or injunction against the State.  To the contrary, it states specifically that "Defendant Clerks are the officials directly responsible for effectuating the marriage ban and causing Plaintiffs' alleged injury" and enjoins *only* the clerks.  *McGee*, 2014 WL 5802665, at *4 n. 1.  The most this Court held was that, by virtue of

---

Circuit cases cannot be squared with the reasoning of the Supreme Court in either *Supreme Court of Virginia* or *Monell*.

intervention, "the State is subject to any declaration by this Court that the ban is unconstitutional" as "res judicata," such that "the State would be precluded from defending the constitutionality of the marriage ban *in the future*." *Id*. at *4–5 (emphasis added).

  **B.**  Separately, this Court should also award no fees because that would constitute the appropriate fee under the circumstances. Section 1988 authorizes "a reasonable attorney's fee as part of the costs," 42 U.S.C. § 1988, which is "one that is 'adequate to attract competent counsel,' but" that does "not produce windfalls to attorneys.'" *Blum v. Stenson*, 465 U.S. 886, 897 (1984) (quoting S.Rep. No. 94–1011, 94th Cong., 2d Sess., 6 (1976)).

  Here, the most appropriate award is no award. Same-sex marriage is a changing area of law in which a new constitutional rule was announced by the Fourth Circuit, and which is yet to be finally resolved. There was no question of constitutionality when the West Virginia's challenged marriage laws were passed, and in at least five states and one territory, similar laws have been held to be constitutional. *See Deboer v. Snyder*, 772 F.3d 388 (6th Cir. 2014); *Robicheaux v. Caldwell*, 2 F. Supp. 3d 910 (E.D. La. 2014); *Conde-Vidal v. Garcia-Padilla*, 2014 WL 5361987 (D.P.R. Oct. 21, 2014). The Supreme Court has also just agreed to decide the very merits issue Plaintiffs raised. *See Obergefell v. Hodges*, No. 14-556, 2015 WL 213646 (U.S. Jan. 16, 2015), *Tanco v. Haslam*, No. 14-562, 2015 WL 213648 (U.S. Jan. 16, 2015), *DeBoer v. Snyder*, No. 14-571, 2015 WL 213650 (U.S. Jan. 16, 2015), *Bourke v. Beshear*, No 14-574, 2015 WL 213651 (U.S. Jan. 16, 2015) (granting certiorari and consolidating cases to examine whether "the Fourteenth Amendment require[s] a state to license a marriage between two people of the same sex"). In a time of declining government revenues, and many worthwhile claims on public funds, it would be unfair and unjust to require payment of fees by state and county officials acting in good faith in a case like this.

### III.   IF AN AWARD OF FEES IS APPROPRIATE, THIS COURT MUST REDUCE THE AMOUNT.

Under Section 1988, a fee award "should reimburse the plaintiff for work 'expended in pursuit of' the success achieved." *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002). "To determine the appropriate amount, a district court should first identify the number of hours reasonably expended on the litigation and multiply that number by a reasonable rate," which creates a lodestar amount. *Id*. "The court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Id*. "Once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id*.

Here, application of these standards yields an award dramatically lower than the $350,256.19 in fees that Plaintiffs request.  As such, even if an award were appropriate, this Court must still reduce the amount requested in several ways.[6]

### A.   This Court Must Subtract Hours Unreasonably Expended Due To Overstaffing.

Under Section 1988, the court "should exclude from this initial fee calculation hours that were not reasonably expended," and take into consideration that "cases may be overstaffed, and the skill and experience of lawyers vary widely." *Hensley v. Eckerhart*, 461 U.S. at 434 (1983). The court should exclude "hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id*.  After all, "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Id*.

---

[6] This brief outlines several reasons why Plaintiffs' fee request merits reduction, but this list is not to the exclusion of the many other troubling aspects of the request that the defendant county clerks highlight in their response.  Doc. 153.

### 1.    Eleven Attorneys Was Unnecessary Overstaffing.

The court should reduce Plaintiffs' request for reimbursement because this case did not reasonably require the work of eleven separate attorneys, *plus* support staff.

*First*, Plaintiffs' local counsel (the Tinney Law Firm and John Tinney) possessed the basic expertise and staff necessary for general litigation of a case like this.  Doc. 146, at 12–13.  Lead local counsel on this case, John Tinney, is well qualified for federal litigation of this stature: he served a clerkship on the Fourth Circuit Court of Appeals and had a tenure "of almost three years" as an Assistant United States Attorney in the United States Attorney's Office for the Southern District of West Virginia, during which he represented the United States before the Fourth Circuit Court of Appeals.  Doc. 146 at 13.  Now, in private practice, Mr. Tinney regularly represents "diverse clients in both state and federal courts" in complex constitutional cases."  *Id*.  It is no surprise that according to the billing entries, local counsel made a significant contribution this case, including, but not limited to, researching case law, drafting and reviewing pleadings, and participating in internal strategy conferences.  Doc. 146-2.  This is reflected in: local counsel's assignment of four attorneys, plus one paralegal; its expenditure of 170.9 attorney hours and 66.6 paralegal hours; and its individual request for $51,856.00 in fees.  Doc. 146 at 16.  All of this indicates that local counsel could very have handled this case on their own.

*Second*, even if this Court were to find that it was reasonable for this qualified team of four local attorneys to seek the assistance of outside counsel, it is far from clear that they required two additional teams of lawyers: one from a national advocacy group and another from a large national law firm.  The first team from the national advocacy group, Lambda Legal, became involved from the beginning and appears to have provided necessary subject-matter expertise.  Doc. 146-3 at 8.  Lambda Legal describes itself as "the nation's oldest and largest

legal organization dedicated to achieving full recognition of the civil rights of lesbian, gay, bisexual and transgender people"; asserts that "it has been party counsel to in numerous challenges to state laws banning same-sex couples from marriage"; and claims that its role in this litigation was essential given its unique and highly specialized expertise in constitutional advocacy on behalf of lesbian and gay persons.  Doc. 146-3, -4, -5.  Even accepting that it was reasonable to include an outside specialist in this area, however, it is not clear that more than one attorney from Lambda Legal was necessary.

The necessity of the second team from the large national law firm, Jenner & Block, is particularly suspect.  Jenner became involved some months after the national advocacy group, Doc. 146-3, -4, -5, though it is unclear what Jenner added to this case that the advocacy group and local counsel did not.  Counsel asserts that appellate counsel at "Jenner became involved in this litigation in September 2013 to provide Jenner's unique expertise in litigation advancing the rights of gay and lesbian individuals."  Doc. 146, 146-1.  But local counsel possessed federal appellate expertise—to the extent any was necessary in this case, which never even proceeded to argument—and the advocacy group possessed unique subject-matter expertise.

This lack of necessity is born out, for example, in the records for Plaintiffs' summary judgment filings.  The national firm states that it was the "primary drafter of almost all pleadings and submissions, including Plaintiffs' Motion for Summary Judgment."  Doc. 146-1 at 3.  In particular, its junior associates "were primarily responsible for researching and drafting the briefs and motions in this case, with oversight from Lindsay Harrison."  Doc. 146-1 at 3.  Nicholas Tarasen and R. Trent McCotter, the junior associates, did bill a significant amount of time for on the plaintiffs' Motion for Summary Judgment and Reply—but their entries also indicate that their work was performed in concert with Lambda Legal's counsel, and that they relied upon

ideas and research provided by Lambda Legal.  Doc. 146-1.  Lambda Legal's billing entries likewise show that Camilla Taylor, Karen Loewy and Elizabeth Littrell expended significant amounts of time researching, drafting, revising, and reviewing each filing: Lambda Legal's attorneys spent 17.7 hours drafting and revising Plaintiffs' Complaint, as well as 42.2 hours drafting and revising Plaintiffs' Motion for Summary Judgment and 53.1 hours drafting and revising the Reply.  Doc. 146-3 at 8-10; Doc. 146-4 at 8-10; Doc. 146-5 at 10.

The addition of this apparently duplicative national law firm is especially troubling because its requested rates are significantly higher than co-counsel and because it billed a substantial number of hours.  Their attorneys' fees alone account for $150,707.75 of the total $350,256.19 in fees request.  Doc. 146-1, -3, -4, -5.  Plaintiffs simply do not explain why this law firm was a prudent addition to the case, or that a reasonable, cost-conscious client would have paid for its work.

### 2.    Any Hours Recoverable Should Be Limited To Non-Duplicative Work.

Even if the participation of all eleven attorneys were reasonable, their actual hours recoverable should be limited to non-duplicative work.  Despite counsel's assertions that they exercised billing judgment to reduce duplicate expense, their billing records do not reveal any cooperative effort to reduce duplicative time entries between the three teams of counsel.  Doc. 146-1 at 3-4; Doc. 146-1 at 4; Doc. 146-2 at 3; Doc. 146-3 at 5; Doc. 146-4 at 6; Doc. 146-5 at 4.

Nearly every one of the eleven attorneys, for example, claims to have researched and drafted every substantive filing.  A side by side comparison of the billing entries from each firm reveals that each attorney billed for drafting, researching, reviewing, editing, discussing, summarizing, or reading an email about Plaintiffs' response to motions to dismiss filed by the

24

State and the clerks.  Doc. 146-1 at 12; Doc. 146-2 at 10-11; Doc. 146-3 at 9; Doc. 146-4 at 9; Doc. 146-5 at 7.  Similar records exist for every other filing, showing that the plaintiffs' counsel did not in fact de-duplicate their records—or, if they did, that their case was grossly overstaffed.

Similarly, there are numerous examples of duplicate bills for travel and conference calls. Doc. 146 at 9.  The chart below reflects that many attorneys conducted the same travel and conference calls, and billed for them, to the tune of $40,800.  *See* Exh. 1 (Chart reflecting duplicate communications charges).  Given how much work product was produced jointly among three firms and eleven attorneys, this court should proportionately reduce all hours billed by a factor reflecting the number of attorneys actually necessary to work on this case.

### 3. The Hours Billed Were Excessive In Light Of Similar Arguments Researched And Asserted In Other Cases.

Contrary to Plaintiffs' assertion that the challenge to West Virginia's marriage laws "certainly was not a 'relatively straightforward procedural analysis,'" the arguments and substance of Plaintiffs' case are not novel.  Doc. 146, pp. 9.  The merits issues were being briefed and litigated in dozens of cases contemporaneously, nearly all of whose filings were publicly available online.  Nor were the national law firm or the advocacy group new to this subject matter.  In fact, Plaintiffs' counsel borrowed heavily from the legal arguments raised in *Harris v. McDonnell*, where the same attorneys represented other plaintiffs' in their challenge to the Virginia marriage laws, filed in the Western District of Virginia.  Exh. 1 & 2 (*Harris* Complaint and Motion for Summary Judgment).  Any award should also proportionately reduce fees in light of this factor.

### 4.    Time Spent On Public Relations Is Non-Recoverable.

This Court should also reduce the total hours to subtract fees, costs, and expenses related to public relations or media outreach.  In *Rum Creek Coal Sales, Inc.*, the Fourth Circuit affirmed the lower court's disallowance of $11,008.75 in attorney's fees/costs related to "media communications and public relations," finding that "[t]he legitimate goals of litigation are almost always attained in the courtroom, not in the media."  31 F.3d at 176.  Here, the billing entries from both the Tinney Firm and Lambda Legal billing combine for $7,452 in attorneys' fees for media and public relations.  Doc.146-2 at 6-37; Doc. 146-5 at 9; Exh. 16.  These hours should be subtracted from the award.

### 5.    Certain Billing Entries Are Too Vague To Meet The Burden Of Proof.

Because Plaintiffs have the burden to provide this Court with the documentation necessary to prove that their rate and the hours worked are reasonable, "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly."  *Hensley*, 461 U.S. at 433.  The Fourth Circuit has "frequently exhorted counsel to describe specifically the tasks performed, a practice which is especially necessary when we review an award in a case where the plaintiff has not prevailed on all the claims." *Rum Creek*, 31 F.3d at 180 (citing *Daly v. Hill*, 790 F.2d 1071 (4th Cir.1986)).  Entries limited to "'legal research,' 'revise,' 'draft,' 'discovery,' 'email,' and 'preparation,'" are an inadequate account of an attorney's time.  (2013)*Koontz v. Wells Fargo N.A.*, 2013 WL 1337260 at 20 (2013) (imposing a 10% reduction of the total hours billed to address "the impermissibly vague time entries."); *see also H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991) (reducing hours for vague entries including "legal research," "trial preparation," and "met with client"); *Leroy v. City of Houston*, 906 F.2d 1068, 1080 (5th Cir. 1990) (reducing fee award based on hours "not illuminating as to

the subject matter" or "vague as to precisely what was done"); *Leroy v. City of Houston*, 831 F.2d 576, 585 (5th Cir. 1987) (reducing hours for "after-the-fact summaries" and entries "lack[ing] explanatory detail").

Here, many hours are simply too vague or abbreviated to permit a reasonable person to understand their necessity to the case.   In particular, Ms. Littrell's Communication Log only provides vague descriptions for several communications for which she seeks $8,800 in fees.  For example, her entry dated September 20, 2013 reflects .4 hours billed for "emails," the topic of which she describes as "complaint."  Doc. 146-5 at 7.  On entries dated October 7 & 9, 2014, she billed 1.3 hours and 1.1 hours respectively, for "emails" the topic for which she simply describes as "settlement."  Doc. 146-5 at 8.  A further reduction is therefore appropriate to account for these entries.

### B. Under Section 1988, Plaintiffs' Counsel May Only Be Reimbursed At Local Prevailing Rates.

As a general rule, "'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel."   *Blum v. Stenson*, 465 U.S. 886, 895 (1984).   "[T]his determination is fact-intensive and is best guided by what attorneys earn from paying clients for similar services in similar circumstances." *Rum Creek Coal Sales*, 31 F.3d at 175.  It is only reasonable to go beyond this community when "the complexity and specialized nature of a case . . . mean that no attorney, with the required skills, is available locally."  *Nat'l Wildlife Fed. v. Hanson*, 859 F.2d 313, 317 (4th Cir.1988) (internal cites and quotations omitted).

Here, not only was it questionable to add a national law firm with the same expertise as local counsel and the national advocacy group, that firm charged rates out of line with both sets

27

of co-counsel.  Paul Smith seeks a rate of $771 to $789 per hour, and Lindsay Harrison seeks $567 to $655 per hour.  Doc. 146, 146-1.  In contrast, the rates sought by local counsel and the national advocacy group are half that, ranging from $300 to $350 per hour.  Doc. 146, 146-2, -3, -4 -5.  Those rates show that $300 to $350 hour is *at most* the proper rate, whether viewed as the prevailing local rate or the rate appropriate for lawyers recognized as national advocates in this area.  Plaintiffs assert that the Jenner attorneys brought appellate expertise and subject-matter experience, but they have not shown that such expertise and experience was worth twice as much as the contributions of their well-qualified co-counsel.  There is no evidence in the record suggesting that the "complexity and specialized nature of [this] case" put it beyond the capabilities of local counsel and the national advocacy group."  *Hanson*, 859 F.2d at 317.

Moreover, even if it were appropriate to hire attorneys from Washington, D.C. when similarly experienced attorneys were available and used in this case locally and at lower rates, Plaintiffs have failed to provide this Court with satisfactory specific evidence of the prevailing market rates in Washington, D.C.  "In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award."  *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990).  The Jenner attorneys have relied only on the Laffey Matrix and Paul Smith's declaration.  Lindsay Harrison, R. Trent McCotter, and Nicholas Tarasen did not submit *any* affidavits of their own with supporting evidence to support their requested rates or certify their records and qualifications.  Doc. 146-1, -6.  In similar circumstances, the Fourth Circuit has required more.  *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 245 (4th Cir. 2009).  The record lacked "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community."  *Id.*

**C.      This Court Should Subtract The Fees Attributable To Plaintiffs'
Unsuccessful Challenge To The Non-Recognition Statute.**

After identifying the lodestar fee, "the hours spent on the unsuccessful claim should be

excluded." *Hensley*, 461 U.S. at 440.   This ensures that "where the plaintiff achieved only

limited success," the court awards not an "excessive" amount but "only that amount of fees that

is reasonable in relation to the results obtained."   *Hensley v. Eckerhart*, 461 U.S. 424, 434, 440

(1983); *see also Robinson,* 560 F.3d at 244 ("After determining the lodestar figure, the court then

should subtract fees for hours spent on unsuccessful claims unrelated to successful ones.")

(internal quotations and citations omitted).   Here, this Court should subtract at least $21,111.25

from any award for time spent on Plaintiffs' unsuccessful challenge to West Virginia's non-

recognition statute.   *See* Exh. 3 (chart listing billing entries related to State's motion to dismiss

and compiling the amount requested due to this claim).   Contrary to Plaintiffs' assertion that they

"succeeded on every significant issue in this litigation," Doc. 146 at. 4, this Court dismissed for

lack of standing their challenge to the non-recognition provision, W.Va. Code § 48-2-104(c).

*See* Doc. 56.   Plaintiffs are thus not a prevailing party on that claim and any fees, costs, or

expenses associated with that challenge are not recoverable.   According to their time sheets,

Plaintiffs' counsel dedicated 58.5 hours to defending this claim from dismissal and seek

$21,111.25 in compensation.   Exh. 3. Any award should therefore be reduced by at least that

amount.

**D.      The Requested Fees Are Unreasonable In Light Of The Fees Awarded In
Similar Cases Across The Country.**

Finally, any award should be reasonable in light of similar efforts in other cases, but as

shown in the attached chart those cases' fees are much lower than the sum requested here,

despite the fact that many of those cases required considerably more work.   Exh. 4 (chart

reflecting comparative fee requests in other same-sex marriage cases by number of hours and hourly rate).   The highest billable rate was $425 per hour, as opposed to the $789 per hour requested here.   These cases were staffed with three to seven attorneys, not the eleven attorneys used here.   The final fees in these cases have ranged from $60,000 to $133,657.50, as opposed to the $350,256.19 Plaintiffs request here.   And, unlike this case, the work in many of these cases involved oral argument, appeals, petitions for certiorari, and motions to appeals courts or the Supreme Court for stays.   In fact, the total fees requested in a case that involved trial court briefing, an appeal, *and* a petition for certiorari totaled $371,769.87—just about what Plaintiffs request here just for trial court briefing alone.

## CONCLUSION

The Court should hold oral argument on this motion and decline to enter any award against the State or other parties.

Respectfully submitted,

**ATTORNEYS FOR DEFENDANT-
INTERVENOR STATE OF WEST VIRGINIA**

PATRICK MORRISEY
ATTORNEY GENERAL


/s/ Elbert Lin
Elbert Lin (WV Bar #12171)
  *Solicitor General*
Julie A. Warren (WV Bar #9789)
Julie M. Blake (WV Bar #12271)
  *Assistant Attorneys General*
OFFICE OF THE WEST VIRGINIA
ATTORNEY GENERAL
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25305
Telephone: (304) 558-2021
Fax: (304) 558-0140
E-mail: elbert.lin@wvago.gov

Dated: January 16, 2015

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

CASIE JO MCGEE and SARA ELIZABETH
ADKINS; JUSTIN MURDOCK and WILLIAM
GLAVARIS; and NANCY ELIZABETH
MICHAEL and JANE LOUISE FENTON,
Individually and as next friends of A.S.M.,
minor child,

        Plaintiffs,

v.                                           Civil Action No. 3:13-24068

KAREN S. COLE, in her official capacity as
CABELL COUNTY CLERK; and VERA J.
MCCORMICK, in her official capacity as
KANAWHA COUNTY CLERK,

        Defendants,

and

STATE OF WEST VIRGINIA,

        Defendant-Intervenor.

**CERTIFICATE OF SERVICE**

      I, Elbert Lin, counsel for Defendant-Intervenor, hereby certify that on January 16, 2015, I

electronically filed the foregoing The State Of West Virginia's Response To Plaintiffs' Motion

for Attorney's Fees, Expenses, and Costs with the Clerk of the Court using the CM/ECF system,

which will send notification of such filing to:

Camilla B. Taylor
LAMBDA LEGAL DEFENSE & EDUCATION FUND, INC.
Suite 2600
105 West Adams
Chicago, IL 60603
Email: ctaylor@lambdalegal.org

Elizabeth L. Littrell
LAMBA LEGAL DEFENSE & EDUCATION FUND, INC.
Suite 1070
730 Peachtree Street, NE
Atlanta, GA 30308-1210
Email: blittrell@lambdalegal.org

Heather Foster Kittredge
THE TINNEY LAW FIRM
P. O. Box 3752
Charleston, WV 25337-3752
Email: heather@tinneylawfirm.com

Karen L. Loewy
LAMBDA LEGAL DEFENSE & EDUCATION FUND, INC.
19th Floor
120 Wall Street
New York, NY 10005-3904
Email: kloewy@lambdalegal.org

Lindsay C. Harrison
JENNER & BLOCK
Suite 900
1099 New York Avenue, NW
Washington, DC 20001-4412

Luke C. Platzer
JENNER & BLOCK
Suite 900
1099 New York Avenue, NW
Washington, DC 20001-4412
Email: lplatzer@jenner.com

Paul M. Smith
JENNER & BLOCK
Suite 900
1099 New York Avenue, NW
Washington, DC 20001-4412
Email: psmith@jenner.com

R. Trent McCotter
JENNER & BLOCK
Suite 900
1099 New York Avenue, NW
Washington, DC 20001-4412
Email: rmccotter@jenner.com

John H. Tinney , Jr.
THE TINNEY LAW FIRM
P. O. Box 3752
Charleston, WV 25337-3752
Email: jacktinney@tinneylawfirm.com

Lee Murray Hall
JENKINS FENSTERMAKER
P. O. BOX 2688
Huntington, WV 25726-2688
Email: lmh@jenkinsfenstermaker.com

Sarah A. Walling
JENKINS FENSTERMAKER
P. O. Box 2688
Huntington, WV 25726-2688
Email: saw@jenkinsfenstermaker.com

Charles R. Bailey
BAILEY & WYANT
P. O. Box 3710
Charleston, WV 25337-3710
Email: cbailey@baileywyant.com

Michael W. Taylor
BAILEY & WYANT
P. O. Box 3710
Charleston, WV 25337-3710
Email: mtaylor@baileywyant.com


s/ Elbert Lin_____
Elbert Lin

34